# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re* <br> **PATRIOT NATIONAL, INC., *et al.*,**[1] <br> **Debtors.** | Chapter 11 <br> Case No. 18-10189 (KG) <br> (Jointly Administered) <br> Hearing Date: February 28, 2018 at 10:00 a.m. (ET) <br> Objection Deadline: February 21, 2018 at 4:00 p.m. (ET) |

**DEBTORS' MOTION TO (I) COMPEL MEDIATION OF CLAIMS AGAINST THE DEBTORS' DIRECTORS AND OFFICERS AND (II) TEMPORARILY STAY RELATED LITIGATION PENDING THE OUTCOME OF MEDIATION**

The debtors and debtors-in-possession in the above-captioned cases (the "Debtors"), hereby move (the "Motion") for entry of an order pursuant to sections 105(a) and 362 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 9019-3 and 9019-5 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") in the form attached hereto as **Exhibit "A"** (i) compelling parties to mediate certain claims asserted by the Debtors' shareholders and creditors prior to the commencement of these chapter 11 cases and (ii) temporarily stay related litigation for ninety (90) days pending the outcome of mediation. In support of the Motion, the Debtors respectfully submit as follows:

---

1. The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtors' federal tax identification number, are: Patriot National, Inc. (1376), Patriot Services, LLC (1695); TriGen Insurance Solutions, Inc. (2501); Patriot Captive Management, LLC (2341); Patriot Underwriters, Inc. (0045); TriGen Hospitality Group, Inc. (6557); Patriot Risk Consultants, LLC (0844); Patriot Audit Services, LLC (5793); Patriot Claim Services, Inc. (9147); Patriot Risk Services, Inc. (7189); Corporate Claims Management, Inc. (6760); CWIBenefits, Inc. (0204); Forza Lien, LLC (7153); Contego Investigative Services, Inc. (0330); Contego Services Group, LLC (0012); Patriot Care Management, LLC (2808); Radar Post-Closing Holding Company, Inc. (2049); Patriot Technology Solutions, LLC (6855); and Decision UR, LLC (1826). The Debtors' headquarters are located at 401 East Las Olas Boulevard, Suite 1650, Fort Lauderdale, Florida 33301.

**PRELIMINARY STATEMENT**

1.     The Debtors are bringing this Motion in an attempt to preserve the value of the Debtors' directors and officers insurance policies (the "D&O Policies") for all stakeholders and to bring order to what was, as of the Petition Date, a relatively chaotic litigation landscape. Before these cases were filed, the Debtors' shareholders and other parties filed seven lawsuits, in multiple jurisdictions, asserting claims, many of which are derivative in nature, arising out of the Debtors' prepetition activities. These cases were filed against the Debtors, their current and former directors and officers (the "D&O Defendants"), and other entities involved in the Debtors' prepetition activities (together with the D&O Defendants, the "Non-Debtor Parties").[2] In addition, Cerberus Business Finance, LLC, the administrative agent under the Debtors' prepetition secured financing facility (the "Prepetition Agent") has provided notice to the Debtors' insurers under the D&O Policies (the "Insurers") of a claim based on alleged prepetition wrongful acts of the D&O Defendants (the "Secured Lender Claims"). The Debtors' claims against certain of the Non-Debtor Parties also serve as a critical component of the Debtors' proposed plan of reorganization filed at the commencement of these chapter 11 cases (the "Plan of Reorganization"), which provides for the assignment of all unsettled claims held by the Debtors' estates (the "Proposed Claims") to a litigation trust, which will pursue actions against the Non-Debtor Parties, among others, and distribute any proceeds from the settlement or successful prosecution of such actions to the Debtors' creditors pursuant to the terms of the Plan of Reorganization.

---

2. A list of the pending lawsuits (the "Actions") against the Debtors and Non-Debtor Parties is attached to the proposed order as Exhibit 1.

2. The Actions, Secured Lender Claims, and Proposed Claims (together, the "Claims") are now stayed with respect to the Debtors and derivative claims pursuant to section 362 of the Bankruptcy Code (the "Automatic Stay"). However, absent the relief sought in this Motion, prosecution of certain of the Claims could continue with respect to the Non-Debtor Parties. The relief sought in this motion addresses the Debtors' concern that continued prosecution of the Claims would quickly deplete the available proceeds of the D&O Policies through payment of defense costs and expose the estates to potential indemnification or estoppel risks. Such a result would not be in the best interests of the Debtors' creditors or the investor litigants vying to recover from the same finite pool of insurance coverage, as the Non-Debtor Parties may not have sufficient resources to satisfy any judgment. By this Motion, the Debtors seek a Court-ordered mediation to seek to resolve all Claims covered by the D&O Policies at once in the best interest of all stakeholders and the estates. The Debtors have been informed that the Insurers and the Prepetition Agent support mediation of the Claims.

3. The Debtors have approximately $60 million and $70 million of D&O insurance coverage for 2016 and 2017, respectively, and the proceeds of those policies may provide meaningful recoveries to the Debtors' creditors and other stakeholders. On information and belief, in excess of $20 million of the proceeds of the Debtors' prepetition D&O Policies, has already been advanced in the less than two years since the first Action was filed. There is a significant risk that the remaining proceeds will be largely, if not completely, exhausted by defense costs if an early settlement of the Claims is not reached. A successful mediation could resolve these disputes in a manner that would save the parties—and the courts—time, money and resources, while preserving the bulk of the D&O Policies' proceeds for the benefit of the creditors in the chapter 11 cases and the plaintiffs in the Actions.

4. The relief sought herein promotes fairness by allowing litigants to participate in a collective process to try to resolve these matters and ensures that no litigant has an unfair advantage to proceed in a piecemeal fashion against a finite pool of assets, which constitutes property of the Debtors' estates. Importantly, the targeted relief only seeks to impose a temporary ninety (90) day stay of the Claims, which is designed to focus parties' efforts in participating in an organized mediation process for the benefit of all stakeholders. Accordingly, the Debtors respectfully request that the Court enter the proposed order compelling the parties to proceed to mediation and temporarily staying prosecution of the Claims.

## JURISDICTION AND VENUE

5. The Court has jurisdiction over this Motion under 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference of the United States District Court for the District of Delaware*, dated as February 29, 2012. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors confirm their consent pursuant to Local Rule 9013-1(f) to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution. Venue of this proceeding and this Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

6. The statutory and rule bases for the relief requested herein are sections 105 and 362 of the Bankruptcy Code and Local Rules 9019-3 and 9019-5.

## BACKGROUND

### A. The Debtors' Chapter 11 Cases

7. Patriot National, Inc. ("Patriot National"), through its subsidiaries, provides comprehensive services to its insurance carrier clients, primarily in the workers'

4

compensation sector. On January 30, 2018 (the "Petition Date"), the Debtors commenced their bankruptcy cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases"). No trustee, examiner or creditors' committee has been appointed in the Chapter 11 Cases. The Debtors are operating their business as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

8. The events leading up to the Petition Date and the facts and circumstances supporting the relief requested herein are set forth in the *Declaration of James S. Feltman, Chief Restructuring Officer of Patriot National, Inc., in Support of First Day Relief*, filed on January 30, 2018 (the "Feltman Declaration") (D.I. 4), and incorporated herein by reference.

### B. The Actions

9. The Actions can be broadly broken down into two categories: (i) state law claims brought by hedge funds (the "Hedge Fund Actions") against Patriot National and its current and former officers and directors in connection with the Debtors' 2015 prepetition private investment in public equity ("PIPE") transaction that is more fully described in the Feltman Declaration, and (ii) securities law and state law claims brought by Patriot National shareholders (the "Shareholder Actions") against Patriot National, the D&O Defendants, and other entities involved in Patriot National's prepetition business, including underwriters and auditors, alleging, among other things, violations of the Securities Act of 1933 ("Securities Act") and the Securities Exchange Act of 1934 ("Exchange Act"). It is clear that at least some of the Actions overlap with derivative claims that belong to the Debtors' estates. The Debtors intend to investigate and, where appropriate, bring, claims against certain of the Non-Debtor Parties in connection with the same transactions at issue in the Actions.

10. The Hedge Fund Actions include:

a. ***Hudson Bay Master Fund Ltd. v. Patriot Nat'l, Inc., et al.*, No. 1:16-CV-02767-GBD-SDA (S.D.N.Y.) ("Hudson Bay I").** On April 13, 2016, Hudson Bay Master Fund Ltd. ("Hudson Bay") filed suit against Patriot National, its former President, Chief Executive Officer, director and Chairman of the board of directors, Mr. Mariano, and American Stock Transfer Company, LLC, as a nominal defendant. Hudson Bay alleges that Patriot National and Mr. Mariano are in breach of various contracts regarding delivery of price adjustment warrants in connection with the PIPE transaction, and that Mr. Mariano interfered with those same contracts between Patriot National and Hudson Bay. Hudson Bay seeks specific performance of the contracts, monetary damages, and attorneys' fees. Patriot National asserted counterclaims against Hudson Bay alleging violations of Section 10(b) of the Exchange Act, fraudulent inducement, and breach of contract. Hudson Bay and Patriot National cross-moved for summary judgment and Mr. Mariano moved for judgment on the pleadings and in the alternative for summary judgment. Oral argument on the pending motions is scheduled for March 14, 2018.

b. ***Hudson Bay Master Fund Ltd. v. Del Pizzo, et al.*, No. 1:17-CV-06204-GBD-AJP (S.D.N.Y.).** This six count complaint asserts claims against certain present and former officers and directors of Patriot National in connection with the same transaction at issue in Hudson Bay I for breach of fiduciary duty, corporate waste, violations of the Exchange Act, and common-law torts. The directors and officers filed motions to dismiss. Oral argument on the pending motions is scheduled for March 14, 2018.

c. ***CVI Inv., Inc. v. Patriot Nat'l, Inc.*, No. 1:16-CV-02787-GBD-SDA (S.D.N.Y.).** CVI Investments, Inc. ("CVII") filed suit against Patriot National on April 14, 2016 alleging breach of contract in connection with certain warrants issued to CVII as part of CVII's December 2015 acquisition of $13.5 million in Patriot National common stock from Steven Mariano. CVII seeks specific performance of the contracts, monetary damages, attorneys' fees, and injunctive relief. As Patriot National is the only defendant, this matter is stayed pursuant to the Automatic Stay.

11. The Shareholder Actions include:

a. ***Gingello, et al. v. Patriot Nat'l, Inc., et al*, No. 1:17-CV-01866-ER (S.D.N.Y.).** This class action complaint alleges violations of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder. Plaintiff Anthony Gingello brings the action on behalf of persons and entities that acquired Patriot National stock between August 15, 2016 and March 3, 2017 against defendants Patriot National, Mr. Mariano, and Thomas Shields. The underlying conduct at issue relates to communications by Patriot National in August 2016 regarding a potential merger with Ebix, Inc. and

6

other strategic alternatives, as well as disclosures in October 2016 regarding the resignation of certain former officers.

b. ***Kayce, et al. v. Patriot Nat'l, Inc., et al.*, No. 1:17-CV-07164-ER (S.D.N.Y.).** This two-count complaint pleads one count against Patriot National and Mr. Mariano for an alleged violation of section 10(b) of the Exchange Act and SEC Rule 10b-5, and one count against Mr. Mariano for violation of section 20(a) of the Exchange Act, and seeks certification of a class. The plaintiff alleges that Patriot National and Mr. Mariano made false and misleading statements in connection with a Stock Repurchase Program.

c. ***McIntire, et al. v. Mariano, et al.*, No. 0:18-CV-60075-BB (S.D. Fla.).** This class action complaint, filed on January 12, 2018, seeks to assert claims against the D&O Defendants and other parties, including underwriters and auditors, who dealt with Patriot National during the period January 15, 2015 to November 22, 2017. The complaint alleges violations of the Securities Act and the Exchange Act. Count One alleges violations of section 11 of the Securities Act based on alleged material misstatements or omissions in Patriot National's Registration Statement filed with the SEC (Form S-1) and amendments thereto. Count Two alleges violations of section 12(a)(2) of the Securities Act by the underwriter defendants based on alleged material misstatements or omissions in Patriot National's Prospectus (Form 424B4). Count Three seeks to hold certain former officers and directors liable as "controlling persons" under section 15 of the Securities Act for the conduct alleged in Count One. Count Four seeks to hold Mr. Mariano and Thomas Shields liable for violations of section 10(b) of the Exchange Act and Rule 10b-5 thereunder based on an alleged fraudulent scheme to defraud investors.

d. ***Wasik v. Mariano, et al.*, C.A. No. 12953-VCL (Del. Ch.).**[3] This action filed on November 30, 2016 seeks individually and on behalf of a class, and derivatively on behalf of Patriot National, to assert claims against numerous defendants (including certain D&O Defendants, certain entities allegedly affiliated with Mr. Mariano, and other parties having dealings with Patriot during the relevant time period) for breach of fiduciary duty, corporate waste, aiding and abetting breach of fiduciary duty, breach of contract, unjust enrichment, and tortious interference.

---

3. Mr. Wasik separately filed a complaint against Patriot National, *Wasik v. Patriot National, Inc.*, C.A. No. 2017-0581 (Del. Ch.), in connection with an annual shareholder meeting, which is stayed pursuant to the Automatic Stay.

### C. The Secured Lender Claims

12. By letter dated January 3, 2018, the Prepetition Agent notified the Insurers of a demand for payment of monetary damages in an amount not less than $215 million arising from alleged wrongful acts of the D&O Defendants. As of the date of this Motion, no formal litigation has been commenced with respect to the Secured Lender Claims.

### D. The Debtors' Insurance Coverage

13. The D&O Policies provide insurance coverage for claims made against directors, executives, employees, and agents of the Debtors. Certain of the D&O Policies also provide coverage to the Debtors for claims it indemnified and certain direct claims. For the period January 16, 2016 through January 16, 2017, the Debtors have a $10 million primary policy, with an additional $50 million of excess coverage. For the period of January 16, 2017 through January 16, 2018, the Debtors have a $10 million primary policy, with an additional $60 million of excess coverage.

### E. The Debtors' Indemnification Obligations

14. Patriot National has indemnification obligations to certain D&O Defendants based on its bylaws and prepetition agreements. Article IV of Patriot National's bylaws provides for the broad indemnification of its current and former directors, officers, employees, and agents. These obligations cover defense and settlement costs associated with claims arising out of an act or omission committed while acting as an officer, director, employee, or agent. In addition, Patriot National has indemnification obligations to certain of the Non-Debtor Parties pursuant to contractual agreements.

DOCS_DE:217833.1 69353/002

**BASIS FOR RELIEF**

I. **THE COURTS SHOULD COMPEL THE RELEVANT PARTIES TO MEDIATE.**

15. Permitting the Claims to proceed in litigation at this time would significantly erode the D&O Policies and expose the Debtors to indemnification or estoppel risks. By contrast, a successful mediation resulting in an agreed-upon final resolution of the Claims would save the parties and the courts time, money, and resources and enhance potential recoveries for creditors and investor plaintiffs who have claims covered by the D&O Policies. Indeed, the Debtors and some of the relevant parties agree that mediation is the preferred method at this time to achieve a beneficial result for all parties involved.

16. Courts have authority to order participation in mediation. *See In re Atl. Pipe Corp.*, 304 F.3d 135, 140 (1st Cir. 2002) ("There are four potential sources of judicial authority for ordering mandatory non-binding mediation of pending cases, namely, (a) the court's local rules, (b) an applicable statute, (c) the Federal Rules of Civil Procedure, and (d) the court's inherent powers."); *In re A.T. Reynolds & Sons, Inc.*, 424 B.R. 76, 85 (Bankr. S.D.N.Y. 2010) ("While it goes without saying that a court may not order parties to settle, this Court has authority to order the parties to participate in the process of mediation, which entails discussion and risk analysis.") *rev'd on other grounds*, 452 B.R. 374 (S.D.N.Y. 2011).

17. This authority arises from the Court's inherent powers, section 105 of the Bankruptcy Code which grants the Court authority to take such steps as are necessary or appropriate to carry out the provisions of the Bankruptcy Code, and the Local Rules, which expressly allow the Court to refer matters to mediation.

18. Section 105 has been used by bankruptcy courts to order parties to mediate disputed matters. *See In re Acme Cake Co., Inc.*, 495 B.R. 212, 219 (Bankr. E.D.N.Y. 2010)

9

(recognizing that "this Court had the authority to direct the parties to mediation" even if the parties did not consent to such mediation order); *see also Bruno v. Mona Lisa at Celebration, LLC (In re Mona Lisa at Celebration, LLC)*, 410 B.R. 710, 716-17 (Bankr. M.D. Fla. 2009) (ordering mediation under section 105(a) where "both judicial economy and common sense dictate[d] that the parties, or if needed, the Court resolve [the matter] in an organized and unified manner").

19. Additionally, Local Rule 9019-3(a) states that "[n]otwithstanding any provision of law to the contrary, the Court may refer a dispute pending before it to mediation . . . ." Del. Bankr. L. R. 9019-3(a). Moreover, Local Rule 9019-5 clarifies that the Court's authority to assign a dispute to mediation broadly extends to any disputes arising in an "adversary proceeding, contested matter or otherwise in a bankruptcy case." Del. Bankr. L. R. 9019-5(a).

20. As set forth above, the Debtors believe mediation will (i) preserve the available insurance proceeds, (ii) streamline the potential resolution of the distribution of those proceeds without prejudice to any party in interest, (iii) facilitate the prompt and cost-effective resolution of the Claims, and (iv) minimize the administrative burdens on this Court and the courts in which the Actions are pending. To achieve these benefits, all relevant parties must participate in the mediation. The Debtors have been informed that the Insurers and the Prepetition Agent and DIP lender—who supports the Plan of Reorganization—support mediation of the Claims. To the extent other necessary parties do not also so agree, this Court should compel them to participate in the mediation.

## II. THE COURT SHOULD TEMPORARILY STAY FURTHER PROCEEDINGS WITH RESPECT TO THE CLAIMS PENDING THE OUTCOME OF THE MEDIATION.

21. If the Court orders the parties into mediation, a temporary stay of prosecution of the Claims for ninety (90) days should be granted to allow the parties to focus their attention on reaching a consensual resolution to the benefit of everyone involved. Section 362 of the Bankruptcy Code automatically stays actions against Debtors and derivative claims.[4] While the stay protections afforded by section 362 of the Bankruptcy Code do not generally extend to non-debtors, "numerous bankruptcy courts have . . . stay[ed] the prosecution of actions against non-debtor defendants who were officers and/or directors of the debtor defendants." *In re Am. Film Tech., Inc.*, 175 B.R. 847, 850 (Bankr. D. Del. 1994); *see also In re Midway Games, Inc.*, 428 B.R. 327, 333 (Bankr. D. Del. 2010) (explaining that "consistent with congressional intent and with the fundamental purposes underlying the automatic stay, numerous federal courts have held that, under appropriate circumstances, the automatic stay may be extended beyond direct actions against the debtor to lawsuits against non-debtors.").

22. The Automatic Stay has been extended to non-debtors where "protection is essential to the debtor's efforts of reorganization." *McCartney v. Integra Nat'l Bank North*, 106 F.3d 506, 510 (3d Cir. 1997). Here, extending the Automatic Stay to temporarily stay prosecution of the Claims for a period of ninety (90) days is essential to the Debtors'

---

4. Certain Claims are automatically stayed pursuant to the Automatic Stay as they are (i) claims against the Debtors or (ii) derivative claims that may only be brought by the debtor or the trustee. *See, e.g., In re SemCrude L.P.*, 796 F.3d 310, 322 (3d Cir. 2015) (holding that pursuit of derivative claims that belong to litigation trust should be enjoined); *In re Emoral, Inc.*, 740 F.3d 875 (3d Cir. 2014) ("After a company files for bankruptcy, creditors lack standing to assert claims that are property of the estate.") (internal quotation marks omitted); *In re CD Liquidation Co., LLC*, 462 B.R. 124, 134 (Bankr. D. Del. 2011) (enjoining shareholder action where plaintiff "usurp[ed] the Liquidation Trustee's exclusive standing" by asserting derivative claims).

11

reorganization as it is will facilitate the preservation of assets of the Debtors' estates and provide for an orderly distribution of assets.

23. The Debtors have a property interest in each of the D&O Policies. *See In re SN Liquidation, Inc.*, 388 B.R. 579 (Bankr. D. Del. 2008) (holding that the policy at issue was "clearly in the nature of estate property" where it "provid[ed] coverage for directors and officers as well as for the Debtors").[5] The race to judgment in numerous pending and contemplated actions would substantially erode the D&O Policies' proceeds and the Non-Debtor Parties may not have sufficient resources to satisfy any judgment directly. *See In re CD Liquidation Co., LLC*, 462 B.R. 124 (Bankr D. Del. 2008) (enjoining shareholder action, in part, "given the Bankruptcy Code's overriding policy of promoting an orderly distribution and preventing a 'race to the courthouse' among creditors."). If prosecution of the Claims is not temporarily stayed, the D&O Policies will continue to be eroded and ultimately, may be irrevocably exhausted, leading to a significantly decreased recovery available to creditors and other stakeholders. Extending the stay will act to slow the erosion of the D&O Policies and preserve the insurance proceeds while providing the opportunity to reach a consensual resolution of the Claims through mediation. Without the issuance of a stay, the Debtors' estates and all parties will be irreparably harmed by a significantly decreased amount of proceeds available under the D&O Policies to satisfy any judgment or effectuate any settlement, which may be the only source of recovery if the Non-Debtor Parties lack sufficient resources to satisfy any judgment.

---

5. The parties are familiar with this Court's decision in *In re World Health Alternatives, Inc*., 369 B.R. 805 (Bankr. D. Del. 2007) and we believe that it is not contrary to the relief sought herein. Significantly, in that case, the chapter 7 trustee was trying to obstruct a settlement, whereas here the Debtors are seeking to facilitate settlement. Additionally, in the instant case there is significant concern that the proceeds of the D&O Policies will be exhausted before *any* parties reach judgment or settlement if global settlement is not efficiently reached.

12

24. Moreover, if the D&O Policies are exhausted, the D&O Defendants may have claims against the Debtors for indemnification, which would increase the unsecured claims pool and reduce recoveries for all unsecured creditors. *See A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 999 (4th Cir. 1986) (stay should be ordered when "a suit against a third-party who is entitled to absolute indemnity by the debtor on account of any judgment that might result against them in the case. To refuse application of the statutory stay in that case would defeat the very purpose and intent of the statute."); s*ee also In re Continental Airlines*, 177 B.R. 475 (D. Del. 1993) (affirming bankruptcy court on finding that the automatic stay applied to certain actions against non-debtor defendants because, among other things, debtors were obligated under bylaws and transaction documents to indemnify non-debtor defendants); *In re Midway Games, Inc.*, 428 at 334 (extending the stay where "[t]he absence of insurance means Debtors will be forced to shoulder indemnity obligations to the Officers thereby directly impacting Debtors' remaining assets."). In addition, absent the temporary stay requested herein, the Debtors could be subject to collateral estoppel risks, which would effectively compel the Debtors to actively participate in the Actions, violating the purpose of the Automatic Stay and distracting the parties from mediation. *See In re Am. Film Techs., Inc.*, 175 B.R. at 851 (recognizing "collateral estoppel concerns that would require the debtor to defend the actions as fully as if it were a named defendant."). For all of these reasons, a temporary stay benefits all stakeholders.

25. Finally, the plaintiffs in the Actions will not be prejudiced by the relief requested herein because they will not lose their right to bring their claims. The only burden upon them if this Court orders mediation is to participate in the mediation process for a limited period of time. Because the stay will preserve the D&O Policies, the insurance proceeds would be available if the mediation were to fail. The only effect this stay will have on the plaintiffs in

13

the pending Actions is a delay in bringing their claims by ninety (90) days, which is not enough to tip the scales in their favor. *See In re Am. Film Techs., Inc.*, 175 B.R. at 849 (noting that defendants are "not being asked to forego [their] prosecution against the individual defendants, only to delay it.").

### RESERVATION OF RIGHTS

26. Nothing contained herein is or should be construed as: (a) an admission as to the validity of any claim against the Debtors; (b) a waiver of the Debtors' rights to dispute any claim on any grounds; (c) a promise to pay any claim; (d) an assumption or rejection of any executory contract or unexpired lease pursuant to section 365 of the Bankruptcy Code, or (e) otherwise affect the Debtors' rights under section 365 of the Bankruptcy Code to assume or reject any executory contract with any party subject to this Motion.

### NOTICE

27. Notice of the hearing of this Motion has been provided to: (i) the U.S. Trustee; (ii) counsel for Cerberus Business Finance, LLC, as the administrative agent for the DIP lenders and for the prepetition secured lenders; (iii) those parties listed on the list of creditors holding the twenty (20) largest unsecured claims against the Debtors (on a consolidated basis), as identified in their chapter 11 petitions; (iv) all the parties that have requested notice in this proceeding pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure; (v) all the parties who are plaintiffs or defendants in the Actions; and (vi) the Insurers. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

### NO PRIOR REQUEST

28. No previous request for the relief sought in this Motion has been made to this Court or any other court.

## **CONCLUSION**

For all of the reasons set forth above, the Debtors respectfully request that this Court enter an order (i) compelling the plaintiffs and defendants in the Actions, the Prepetition Agent, and the Insurers to participate in a mediation, (ii) temporarily staying the prosecution of the Claims during mediation for ninety (90) days, and (iii) granting such other and further relief as is necessary and proper.

Dated: February 7, 2018
       Wilmington, Delaware

PACHULSKI STANG ZIEHL & JONES LLP

*/s/ Peter J. Keane*
Laura Davis Jones (DE Bar No. 2436)
James E. O'Neill (DE Bar No. 4042)
Peter J. Keane (DE Bar No. 5503)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
Email: ljones@pszjlaw.com
      joneill@pszjlaw.com
      pkeane@pszjlaw.com

   -and-

Kathryn A. Coleman
Christopher Gartman
Erin E. Diers
HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, NY 10004-1482
Telephone: (212) 837-6000
Facsimile: (212) 422-4726
Email: katie.coleman@hugheshubbard.com
      chris.gartman@hugheshubbard.com
      erin.diers@hugheshubbard.com

*Proposed Counsel for the Debtors and Debtors-in-Possession*