**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re<br><br>PATRIOT NATIONAL, INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 18-10189 (KG)<br><br>**Related D.I.**: 91 |

**RECEIVER OF ULLICO CASUALTY COMPANY IN LIQUIDATION'S
OBJECTION TO DEBTORS' SECOND OMNIBUS MOTION FOR
ENTRY OF AN ORDER AUTHORIZING THEM TO REJECT CERTAIN
EXECUTORY CONTRACTS AND UNEXPIRED LEASES
*NUNC PRO TUNC* TO THE REJECTION DATE**

The Honorable Trinidad Navarro, Insurance Commissioner of the State of Delaware, in his capacity as the Receiver (the "**Receiver**") of Ullico Casualty Company in Liquidation ("**Ullico Casualty**"), by and through undersigned counsel, files this objection (the "**Objection**") to the *Debtors' Second Omnibus Motion for Entry of an Order Authorizing Them to Reject Certain Executory Contracts and Unexpired Leases Nunc Pro Tunc to the Rejection Date* [D.I. 91] (the "Rejection Motion").[2] In support of this Objection, the Receiver respectfully states as follows:

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtors' federal tax identification number, are: Patriot National, Inc. (1376), Patriot Services, LLC (7695); TriGen Insurance Solutions, Inc. (2501); Patriot Captive Management, LLC (2341); Patriot Underwriters, Inc. (0045); TriGen Hospitality Group, Inc. (6557); Patriot Risk Consultants, LLC (0844); Patriot Audit Services, LLC (5793); Patriot Claim Services, Inc. (9147); Patriot Risk Services, Inc. (7189); Corporate. Claims Management, Inc. (6760); CWIBenefits, Inc. (0204); Forza Lien, LLC (7153); Contego Investigative Services, Inc. (0330); Contego Services Group, LLC (0012); Patriot Care Management, LLC (2808); Radar Post-Closing Holding Company, Inc. (2049); Patriot Technology Solutions, LLC (6855); and Decision UR, LLC (1826). The Debtors' headquarters are located at 401 East Las Olas Boulevard, Suite 1650, Fort Lauderdale, Florida 33301.

[2] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to such terms in the Rejection Motion.

## GENERAL BACKGROUND

1. On January 30, 2018 (the "**Petition Date**"), the Debtors commenced their bankruptcy cases by filing voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").

2. No trustee or examiner has been appointed in these cases. The Debtors are operating their businesses as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3. On February 7, 2018, the Debtors filed the Rejection Motion, identifying, *inter alia*, three agreements between Ullico Casualty Company and Patriot Underwriters, Inc., now known as Guarantee Underwriters, Inc. (EIN 20-5642403, "**PUI/GUI**"): (i) "Program Administrator Agreement (Alternative Market Workers Compensation Insurance Program)" (the "**Program Administrator Agreement**"); (ii) the "Amendment to Program Administrator Agreement" (the "**PAA Amendment**"); and (iii) the "General Joint Defense / Joint Prosecution Agreement" (the "**Joint Defense Agreement**," and, together with the Program Administrator Agreement and the PAA Amendment, the "**Contracts**").

4. On February 16, 2018, the Office of the United States Trustee appointed a committee of unsecured creditors [D.I. 118].

5. On February 28, 2018, the hearing on the Rejection Motion was continued to March 8, 2018 at 10:00 a.m. (EST) [D.I. 252].

## RELEVANT FACTUAL BACKGROUND

6. In 2009, Ullico Casualty entered into relationships with PUI/GUI, to provide workers' compensation insurance through a workers' compensation program

operated by it. In this relationship, PUI/GUI or one of its affiliates (PUI/GUI and their affiliated entities (which includes some of the Debtors) will be referred to collectively herein as "**Patriot**") took control of substantially all areas of this program by acting as Ullico Casualty's program manager, managing general agent, and third party administrator. Patriot essentially operated as an insurance company; it just did not risk its own capital. Patriot underwrote, priced, and even issued Ullico Casualty workers' compensation policies, collected payments, held policy holder property in trust as collateral for Ullico's policies, and administered claims. In industry parlance, "Patriot had Ullico's pen." Numerous Ullico Casualty large-deductible workers' compensation insurance policies were issued through this Patriot program. This created significant deductible reimbursement obligations of these policyholders to Ullico Casualty. Eventually, Ullico Casualty failed under the weight of the losses from the Patriot programs.

7. Between 2009 and 2013, Ullico Casualty entered a number of agreements with PUI/GUI, including the Contracts.

8. Pursuant to the "Large Deductible Endorsement" attached to the policies, Ullico Casualty was authorized to advance part or all of the applicable deductible amounts, and the insured was required to reimburse Ullico Casualty for payments made by the company that were within the deductible.

9. In order to secure repayment of the deductible and other payments which may become due from the insured, the insured was required to provide collateral to secure this repayment obligation to Ullico Casualty prior to the issuance of the large-deductible workers' compensation policy. But much of the collateral did not make it to Ullico.

10. Upon information and belief, based in part upon the significant control of the Patriot entities over the large deductible and other workers' compensation programs with Ullico, the Receiver maintains that, prior to the Petition Date, assets belonging to Ullico Casualty might have been transferred from non-debtor affiliated Patriot entities to the Debtors.

11. In 2013, Ullico Casualty was placed into rehabilitation and, subsequently, into liquidation. As the representative of policyholders and creditors of Ullico Casualty, in accordance with his statutory authority pursuant to Delaware's insurance insolvency statute and the authority granted by the Court of Chancery of the State of Delaware pursuant to the entry of a liquidation order, the Receiver seeks to recover all assets pertaining to Ullico Casualty posted by its policyholders to secure their obligations to reimburse Ullico Casualty for amounts it paid within the deductible of those policyholders' policies.

12. In addition, the Receiver seeks to preserve, protect, and prosecute any and all claims and causes of action against any and all persons, including officers and directors of these Debtors, many of whom of are or were also officers or directors of the formerly known Patriot entities, to recover any assets wrongfully diverted or transferred from the formerly known Patriot entities to the Debtors.

**OBJECTION**

13. The Contracts are between Ullico Casualty and PUI/GUI—a non-debtor entity. Because the Contracts were entered into by non-debtor entities, the Contracts are

not "executory contract[s] of the Debtor[s]" and, therefore, the Court has no authority under section 365 of the Bankruptcy Code to authorize rejection of the Contracts.[3]

14. At the time Ullico Casualty and PUI/GUI entered into each of the Contracts, the name of the PUI/GUI entity was "Patriot Underwriters, Inc." Thereafter, the name of PUI/GUI was changed from "Patriot Underwriters, Inc." to its current name, "Guarantee Underwriters, Inc." The EIN, however, for the Contract counterparty, Patriot Underwriters, Inc. now known as Guarantee Underwriters, Inc. remained as 20-5642403, which reflects a different EIN from the Debtor entity now known as Patriot Underwriters, Inc. which has an EIN 46-3500045.

15. To be clear, while there is now a Debtor entity named "Patriot Underwriters, Inc.," (EIN 46-3500045, "**Debtor PUI**"), the name of that Debtor entity, at the time the Contracts were entered into, was "CTS Underwriters, Inc." Such name change from "CTS Underwriters, Inc." to "Patriot Underwriters, Inc." is believed to have occurred during 2014—*after* entry into each of the Contracts by non-debtor PUI/GUI.

16. Thus, Debtor PUI is a different entity than the entity with which the Contracts were entered into; Debtor PUI was never a party to the Contracts, neither at the time the Contracts were entered into nor as of the Petition Date. Thus, the Contracts are not "executory contract[s] . . . of the Debtor[s]" within the meaning of section 365(a) and, therefore, the Debtors may not seek to reject these contracts through the Rejection Motion.

17. The confusion among the various Debtor and non-debtor entities involved in these chapter 11 cases and, particularly, the confusion related to the name-change

---

[3] To the extent the Debtors are asserting that they now have a contractual relationship with Ullico Casualty pursuant to the Contracts, the Receiver is seeking additional information to understand the genesis of such a contractual relationship which is not clear from the Rejection Motion.

transactions explained herein, was created solely by the Debtors. The Contracts which the Debtors seek to reject pursuant to the Rejection Motion are the very contracts which give rise to the obligations of PUI/GUI to obtain collateral from the insureds to secure repayment obligations to Ullico Casualty. This confusion, of which apparently even the Debtor is susceptible, reinforces the Receiver's concerns that there may have been impermissible transfers of property belonging to Ullico Casualty from certain non-debtor entities to certain Debtors and Debtor affiliates. Such concerns regarding impermissible transfers were the basis of the Receiver's objection [D.I. 138] to the *Debtors' Motion For Interim And Final Orders (I) Authorizing The Continued Use Of Its Existing Cash Management System, Bank Accounts and Business Forms (II) Extending the Debtors' Time to Comply with Section 345(b) of the Bankruptcy Code, (III) Approving Continuation of Ordinary Course Intercompany Transactions and (IV) Granting Related Relief* [D.I. 7] (the "**Cash Management Motion**"), which is incorporated here as if set forth in full, as well as the written discovery requests served on the Debtors on March 5, 2018 [D.I. 284] seeking information from the Debtors (i) sufficient to satisfy the accounting obligation set forth in paragraph 9 of that certain liquidation order entered by Vice Chancellor Laster which sets forth, in pertinent part: " . . . all persons or entities holding Assets of, or on behalf of, Ullico Casualty shall file with the Receiver within ten (10) calendar days of the entry of this Order an accounting of those Assets, regardless of whether such persons or entities dispute the Receiver's entitlement to such Assets;" and (ii) sufficient for the Receiver to determine, at the Receiver's expense, whether property transferred to a Restricted Account (as defined in the Cash Management Motion) is property of Ullico Casualty.

## **CONCLUSION**

WHEREFORE, for the foregoing reasons, the Receiver respectfully requests that the Court enter its Order: (i) denying the Motion and sustaining this Objection; and (ii) granting the Receiver such other and further relief as is just and appropriate.

Dated: March 6, 2018
      Wilmington, Delaware

BAYARD, P.A.

*/s/ GianClaudio Finizio*
Neil B. Glassman (No. 2087)
GianClaudio Finizio (No. 4253)
Evan T. Miller (No. 5364)
600 N. King Street, Suite 400
Wilmington, DE 19801
Telephone: (302) 655-5000
Facsimile: (302) 658-6395
Email: nglassman@bayardlaw.com
      gfinizio@bayardlaw.com
      emiller@bayardlaw.com

*Attorneys for The Honorable Trinidad Navarro, Insurance Commissioner of the State of Delaware, as Receiver of Ullico Casualty Company in Liquidation*