# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| PATRIOT NATIONAL, INC., *et al.*[1], | : | Case No. 18-10189 (KG) |
| | : | |
| Debtors. | : | Jointly Administered |
| | : | |
| | : | **Hearing Date: 4/24/18 @ 11 a.m.** |
| | : | **Objection Deadline: 4/13/18 @ 4 p.m.** |
| | : | |
| | : | **Re: D.I. 383** |
| | : | |

## PRELIMINARY OBJECTION TO THE DEBTORS' SECOND AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION

The Florida Department of Financial Services, Division of Rehabilitation and Liquidation (Department) as Receiver of Guarantee Insurance Company (the "FL Receiver"), by and through its undersigned counsel, hereby objects to the *Debtors' Second Amended Joint Chapter 11 Plan of Reorganization* [D.I. 382] (the "Plan")[2]. In support of its Objection, the FL Receiver respectfully states as follows:

### Relevant Background

1. The above-captioned debtors and debtors-in possession (collectively, the "Debtors") provided brokerage and policyholder services to Guarantee Insurance Company ("GIC") in connection with GIC issuing workers' compensation insurance.

2. In this relationship, the Debtors had control over certain GIC bank accounts.

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are Patriot National, Inc. (1376); Patriot Services, LLC (1695); TriGen Insurance Solutions, Inc. (2501); Patriot Captive Management, LLC (2341); Patriot Underwriters, Inc. (0045); TriGen Hospitality Group, Inc. (6557); Patriot Risk Consultants, LLC (0844); Patriot Audit Services, LLC (5793); Patriot Claim Services, Inc. (9147); Patriot Risk Services, Inc. (7189); Corporate Claims Management, Inc. (6760); CWIBenefits, Inc. (0204); Forza Lien, LLC (7153); Contego Investigative Services, Inc. (0330); Contego Services Group, LLC (0012); Patriot Care Management, LLC (2808); Radar Post-Closing Holding Company, Inc. (2049); Patriot Technology Solutions, LLC (6855); and Decision UR, LLC (1826). The Debtors' headquarters are located at 401 East Las Olas Boulevard, Suite 1650, Fort Lauderdale, Florida 33301

[2] Capitalized terms used herein and not otherwise defined shall have the meanings ascribed to them in the Plan.

{00022641. }

3. Upon information and belief, the Debtors held certain collateral in trust for the benefit of GIC ("GIC Collateral").

4. The FL Receiver is investigating whether the Debtors are still in possession of any GIC Collateral, and in connection with that investigation, has propounded discovery on the Debtors. That investigation is ongoing.

5. On November 21, 2017, the Florida Department of Financial Services ("DFS") petitioned the Circuit Court of the Second Judicial Circuit in and for Leon County, Florida (the "FL Court"), for an order appointing DFS as receiver for GIC, in the action styled *State of Florida ex rel., Dep't of Fin. Servs. v. Guarantee Insurance Co.*, Case No. 2017-CA-2421 (the "GIC Receivership Proceedings").

6. On November 27, 2017, the FL Court in the GIC Receivership Proceedings entered a *Consent Order Appointing the Florida Department of Financial Services as Receiver of Guarantee Insurance Company for Purposes of Liquidation, Injunction, and Notice of Automatic Stay* (the "Receivership Order"). A copy of the Receivership Order is attached hereto as **Exhibit A.** Following entry of the Receivership Order, DFS took over control of GIC.

7. The Receivership Order, *inter alia,* vests all of GIC's property with the FL Receiver, directs the FL Receiver to take immediate possession of all GIC property, requires any party (including the Debtors) to turnover GIC Property, and enjoins any party from selling or otherwise interfering with GIC Property.

8. Under the Receivership Order, GIC's property is defined broadly as:

all the assets, estate, and property of every kind whatsoever and wherever located belonging to Respondent pursuant to sections 631.111 and 631.141, Florida Statues, whether in the possession of Respondent or its officers, directors, shareholders, trustees, employees, consultants, attorneys, agents, affiliates, or other persons, including but not limited to: offices maintained by Respondent; furniture,; fixtures; equipment; office supplies, choses in action; rights of action; contract rights; books, papers, claims and claim

files, policy files, application files, premium records, rate books, underwriting manuals, personnel records, and all other records and data that are otherwise the property of the Respondent, in whatever form maintained; evidences of debt; bank accounts; savings accounts; certificates of deposit, stocks, bonds, debentures, and other securities; mortgages; real property; and all funds held by Respondent's agents, subagents, producing agents, brokers, solicitors, service representatives, premium finance companies, or others under agency contacts or otherwise which are due and unpaid to Respondent, including premiums, unearned commissions, agents' balances, agents' reserve funds, and subrogation recoveries.

Receivership Order at ¶ 14(a). The foregoing is hereinafter defined collectively as, the "<u>Receivership Property</u>".

## Preliminary Objection

**Under the McCarran–Ferguson Act, the Bankruptcy Code is Reverse Preempted by Chapter 631 of the Florida Statues, and the Plan Cannot Violate the FL Receivership Order and in any Way Impair the Receivership Property**

9. Under the McCarran–Ferguson Act, the Bankruptcy Code is reverse preempted by Chapter 631 of the Florida Statues (and by extension the Receivership Order). *In re PRS Ins. Grp., Inc.*, 294 B.R. 609, 612 (Bankr. D. Del. 2003)*, aff'd and remanded sub nom. In re PRS Ins. Grp.*, No. 00-4070-MFW, 2005 WL 4121639 (D. Del. Mar. 31, 2005) ("federal statute is reverse preempted under the McCarran–Ferguson Act if (1) the federal statute in question does not specifically relate to the business of insurance, (2) the state statute was enacted for the purpose of regulating the business of insurance, and (3) the federal statute would invalidate, impair or supersede the state statute.").

10. There can be no reasonable dispute that the Bankruptcy Code does not specifically relate to the business of insurance and that Chapter 631 of the Florida Statutes was enacted for the purpose of regulating the business of insurance. Thus, the Plan cannot invalidate, impair or supersede the FL Statutes or the Receivership Order and should include clear language confirming the same.

**The Plan Needs to Clarify the Debtors are not Selling Any Property Belonging to GIC**

11. The Plan proposes to sell the "Debtors' assets" free and clear of all claims and interests. Specifically, Article V.B of the Plan provides, in relevant part:

> Except as otherwise provided herein (including with respect to the Restructuring Transactions described in Article V.C): (1) subject to the Restructuring Transactions, each of the Debtors shall, as a Reorganized Debtor, continue to exist after the Effective Date as a separate legal Person, with all of the powers of such a legal Person under applicable law and without prejudice to any right to alter or terminate such existence (whether by merger, conversion, dissolution or otherwise) under applicable law; and (2) on the Effective Date, all property of each Debtor's Estate and any property acquired by a Debtor or Reorganized Debtor under this Plan(other than any Litigation Trust Assets), shall vest, subject to the Restructuring Transactions, in the applicable Reorganized Debtors, free and clear of all Claims, liens, charges, other encumbrances, Equity Interests, and other interests (except for (x) any liens granted to secure the Exit Facility and New Term Loan Facility and any rights of any of the parties under the documents related thereto, (y) any rights of any of the parties under any of the Reorganized Debtors Governing Documents, or (z) any other rights specifically granted pursuant to the Plan) without further notice to, or action, order, or approval of, the Bankruptcy Court or any other Person.

Plan at Article V.B.

12. The FL Receiver objects to any provision of the Plan that could later be used to argue GIC Collateral or any other property belonging to GIC being held by the Debtors (in violation of the FL Receivership Order) was transferred to a third party free and clear of the FL Receiver's claims.

13. Against the backdrop of the Debtors having access to GIC's bank accounts, numerous accusations against the fiduciaries monitoring those accounts and the Debtors holding GIC Collateral, language needs to be added to the Plan confirming that no property owned by GIC is being transferred to the Reorganized Debtors, and that the FL Receiver's claim to such property is not being affected or otherwise impaired under the Plan.

**The Plan Needs to Make Clear GIC's Setoff Rights Are Being Preserved**

14. The Plan and Disclosure Statement reference several potential claims against GIC. While GIC reserves all rights with respect to the validity of such claims, the Plan needs to confirm that any potential causes of action against GIC are not being transferred to the Litigation Trust free and clear of GIC's setoff rights.

**The Plan Improperly Vests the Bankruptcy Court with Exclusive Jurisdiction Over Post-Effective Date Matters in Violation of the McCarran–Ferguson Act**

15. Article X.A of the Plan purports to vest the Bankruptcy Court with *exclusive* jurisdiction over various matters, including to:

- hear and determine any and all adversary proceedings, motions, applications, and contested or litigated matters arising out of, under, or related to, the Litigation Claims[3] or the Chapter 11 Cases.
- enter such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, and other agreements or documents created in connection with the Plan, the Disclosure Statement, or the Confirmation Order;
- except as otherwise limited herein, recover all assets of the Debtors and property of the Estates, wherever located.

16. The Plan improperly vests the Bankruptcy Court with exclusive jurisdiction over various post-effective date matters, including any potential Causes of Action belonging to the Debtors, and any matters "arising out of, under, or related to" those Causes of Action.

17. The Plan improperly divests the FL Court with the jurisdiction over matters covered by the Receivership Order. The Receivership Order contains an injunction and automatic stay which prohibits the commencement of any litigation or any attempt to take possession of property belonging to GIC. Receivership Order at ¶¶ 42-44.

18. Under the McCarran–Ferguson Act, the FL Court, not the Bankruptcy Court, has jurisdiction to adjudicate all claims and causes of action between the Debtors and the FL Receiver.

---

[3] The Plan defines "Litigation Claims" as means all Causes of Action belonging to the Debtors' Estates.

*In re PRS Ins. Grp., Inc.*, 294 B.R. 609, 612 (Bankr. D. Del. 2003*), aff'd and remanded sub nom. In re PRS Ins. Grp.*, No. 00-4070-MFW, 2005 WL 4121639 (D. Del. Mar. 31, 2005).

**The Plan's use of 502(d) to Prevent Distributions Violates**
**Applicable Law and the Receivership Order**

19. Article VIII.E.4 of the Plan provides, in pertinent part:

Any Claims held by any Person from whom property is recoverable under sections 542, 543, or 550 of the Bankruptcy Code, or that is a transferee of a transfer avoidable under sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, shall be deemed disallowed pursuant to section 502(d) of the Bankruptcy Code, and Holders of such Claims may not receive any distributions on account of such Claims until such time as such Causes of Action against that Person have been settled or a Final Order with respect thereto has been entered and all sums due, if any, by that Person have been turned over or paid by such Person to the Debtors or the Litigation Trust.

Plan at Article VIII.E.4.

20. The plain language of §502(d) and precedential case law require that a defendant in an avoidance action must be adjudicated *liable* before Plaintiff may invoke §502(d). *See, e.g., In re Lids*, 260 B.R. 680 (Bankr. D. Del. 2001) ("To disallow a claim under section 502(d) requires a judicial determination that a claimant is liable.").

21. Using potential avoidance actions to withhold Receivership Property is in direct violation of the Receivership Order and impermissible under the McCarran–Ferguson Act.

**Under the McCarran–Ferguson Act, the Releases**
**and Plan Injunction Cannot be Applied to the FL Receiver**

22. Article XI.I of the Plan provides:

Except as otherwise provided in the Plan or the Confirmation Order, all Entities who have held, hold, or may hold Claims, Equity Interests, Causes of Action, liabilities, obligations, suits, judgments, damages, demands, debts, or rights, including, but not limited to, those that: (1) have been released or exculpated pursuant to Article XI.G and Article XI.H hereof; (2) are against an Exculpated Party with respect to Exculpated Claims; or (3) are otherwise stayed, settled, compromised or terminated pursuant to the terms of the Plan, are permanently enjoined and precluded, from and after the Effective Date, from (on account of or in connection with or with respect to any released, settled, compromised, or exculpated Claims, Equity Interests, Causes of Action, liabilities, obligations, suits,

judgments, damages, demands, debts, or rights): (a) commencing or continuing in any manner any action or other proceeding of any kind against the Released Parties (solely with respect to the Releasing Parties) or , with respect to Exculpated Claims, Exculpate Parties (or the property or estate of any Person, directly or indirectly, so released or exculpated); (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against the Released Parties (solely with respect to the Releasing Parties) or, with respect to Exculpated Claims, Exculpated Parties; (c) creating, perfecting, or enforcing any Lien, Claim, or encumbrance of any kind against the Released Parties (solely with respect to the Releasing Parties) or, with respect to Exculpated Claims, Exculpated Parties (or the property or estate of any Person so released or exculpated); (d) asserting any right of setoff or subrogation of any kind against any obligation due from the Released Parties (solely with respect to the Releasing Parties) or, with respect to Exculpated Claims, Exculpated Parties (or the property or estates of the debtors or any Person so released or exculpated) unless such Person has timely asserted such setoff or subrogation right prior to Confirmation in a document filed with the Bankruptcy Court explicitly preserving such setoff or subrogation; and (e) commencing or continuing in any manner any action or other proceeding of any kind against the Released Parties (solely with respect to the Releasing Parties) or, with respect to Exculpated Claims, Exculpated Parties (or the property or estate of any Person so released or exculpated); provided that nothing contained in the Plan shall preclude any Person from receiving or obtaining benefits directly and expressly provided to such Person pursuant to the terms of the Plan; provided, further, that nothing contained in the Plan shall be construed to prevent any Person from defending against Claims Objections or collection actions whether by asserting a right of setoff or otherwise to the extent permitted by law.

Plan at Article XI.I (the "Discharge Injunction").

23. This Discharge Injunction prohibits the FL Receiver from pursuing claims against the Released Parties. The FL Receiver has been directed by the FL Court to, *inter alia*, "[c]ommence and maintain all legal actions necessary, wherever necessary, for the proper administration of this receivership proceeding." Receivership Order at ¶14.H. Under the McCarran–Ferguson Act, the Discharge Injunction cannot apply to the FL Receiver as it would directly interfere with the FL Receiver's mandate under the FL Receivership Order. Likewise, the releases and exculpation in Article G cannot apply to the FL Receiver.

## RESERVATION OF RIGHTS

24. This is a preliminary objection, and the FL Receiver reserves all rights to file a more detailed objection on or before the deadline to object to the Plan. The FL Receiver does not waive any, and expressly reserves all of its rights, defenses, and/or claims it has under applicable law or otherwise.

25. Pursuant to Local Bankr. Rule 7012-1, the FL Receiver does not consent to the entry of final orders or judgments by the Court if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution. By filing this objection, the FL Receiver in no way concedes or consents to the jurisdiction of this Court.

**WHEREFORE**, the FL Receiver respectfully request that the Court deny confirmation and grant such other and further relief as is just and proper.

Dated: March 23, 2018
Wilmington, Delaware

Respectfully submitted,

**THE ROSNER LAW GROUP LLC**
/s/ *Scott J. Leonhardt*
Scott J. Leonhardt (DE #4885)
824 N. Market St., Ste. 810
Wilmington, DE 19801
Telephone: (302) 777-1111
leonhardt@teamrosner.com

*Counsel for FL Receiver*