**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| *In re*<br>**PATRIOT NATIONAL, INC.,** *et al.*,[1]<br>**Debtors.** | Chapter 11<br><br>Case No. 18-10189 (KG)<br><br>(Jointly Administered)<br><br>**Proposed Hearing Date (Re: New Lease & Transferred Lease): April 9, 2018 at 10:00 a.m.**<br>**Proposed Objection Deadline (Re: New Lease & Transferred Lease): April 6, 2018 at 4:00 p.m.**<br><br>**Hearing Date (Re: Rejection): April 24, 2018 at 11:00 a.m.**<br>**Objection Deadline (Re: Rejection): April 17, 2018 at 4:00 p.m.** |

**DEBTORS' MOTION FOR ENTRY OF ORDERS AUTHORIZING (I) ENTRY INTO
A NEW ORLANDO, FLORIDA LEASE, (II) TRANSFER OF CERTAIN
OPERATIONS TO CERTAIN LAKE MARY, FLORIDA LEASED PREMISES, (III)
REJECTION OF UNEXPIRED LEASE, AND (IV) ABANDONMENT OF ANY
PERSONAL PROPERTY THAT REMAINS AT THE LEASED PREMISES**

The above-captioned debtors and debtors in possession (collectively, the "Debtors"), move the Court (this "Motion"), pursuant to sections 105, 362, 363, 365, 541 and 554 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 6004 and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for the entry of two orders, in substantially the form attached as Exhibit A (the "New Lease and Transferred Lease Proposed Order") and Exhibit B (the "Rejection Proposed Order" and, together with the New Lease and

---

1. The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtors' federal tax identification number, are: Patriot National, Inc. (1376), Patriot Services, LLC (1695); TriGen Insurance Solutions, Inc. (2501); Patriot Captive Management, LLC (2341); Patriot Underwriters, Inc. (0045); TriGen Hospitality Group, Inc. (6557); Patriot Risk Consultants, LLC (0844); Patriot Audit Services, LLC (5793); Patriot Claim Services, Inc. (9147); Patriot Risk Services, Inc. (7189); Corporate Claims Management, Inc. (6760); CWIBenefits, Inc. (0204); Forza Lien, LLC (7153); Contego Investigative Services, Inc. (0330); Contego Services Group, LLC (0012); Patriot Care Management, LLC (2808); Radar Post-Closing Holding Company, Inc. (2049); Patriot Technology Solutions, LLC (6855); and Decision UR, LLC (1826). The Debtors' headquarters are located at 401 East Las Olas Boulevard, Suite 1650, Fort Lauderdale, Florida 33301.

Transferred Lease Proposed Order, the "Proposed Orders"), (i) authorizing, but not directing, the Debtors to enter into the lease agreement, by and between Debtor Contego Investigative Services, Inc. (together with Debtor Contego Services Group, LLC, "Contego") and 350 E. Pine Street, LLC (the "New Landlord"), substantially in the form attached hereto as Exhibit C (the "New Lease"); (ii) authorizing, but not directing, Debtor Patriot Risk Services, Inc. ("PRS") to transfer its offices to the offices that Contego will vacate in Lake Mary, Florida (the "Transferred Leased Premises"); (iii) authorizing the Debtors to reject that certain unexpired lease between Patriot National Insurance Group, Inc. (predecessor-in-interest to the Debtors) and Central Florida Educators Federal Credit Union (the "Rejected Lease Landlord"), dated March 1, 2010 (as modified or amended, the "Rejected Lease"), effective as of April 24, 2018 (the "Rejection Effective Date"); and (iv) abandoning any personal property remaining on the premises of the Rejected Lease (the "Rejected Lease Premises"). In support of this Motion, the Debtors respectfully state as follows:

**JURISDICTION AND VENUE**

1. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors confirm their consent to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory and rule bases for the relief requested herein are sections 105, 362, 363, 365, 541 and 554 of the Bankruptcy Code and Rules 6004 and 6006 of the Bankruptcy Rules.

## BACKGROUND

### A. General Background

3. On January 30, 2018 (the "Petition Date"), the Debtors commenced their bankruptcy cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases").

4. On February 16, 2018, the United States Trustee for Region 3 appointed an Official Committee of Unsecured Creditors (Docket No. 118) (the "Committee"). No trustee or examiner has been appointed in these Chapter 11 Cases. The Debtors are operating their respective businesses as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5. The events leading up to the Petition Date are set forth in the *Declaration of James S. Feltman, Chief Restructuring Officer of Patriot National, Inc., in Support of First Day Relief*, filed on January 30, 2018 (Docket No. 4) and which is incorporated herein by reference.

### B. The Rejected Lease

6. On or about March 1, 2010, Patriot National Insurance Group, Inc. (predecessor in interest to the Debtors) entered into the Rejected Lease. The Rejected Lease, as subsequently amended, provides for a lease of approximately 13,350 square feet of office space through May 31, 2020 and a current rent (including common area maintenance charges) of approximately

$26,133 per month.[2]

7. Prior to the Petition Date, PRS reduced its occupancy of the Rejected Lease Premises substantially. Specifically, prior to the Petition Date, PRS (i) abandoned the second floor (Suite 2130) and a portion of the third floor (Suite 3130) of the Rejected Lease Premises (together, the "<u>Abandoned Lease Property</u>"); (ii) delivered possession and, to the extent applicable, keys, to the Rejected Lease Landlord; and (iii) notified the Rejected Lease Landlord in writing that its decisions to surrender and abandon possession of the Abandoned Leased Property and any and all personal property located in the Abandoned Leased Property, were unequivocal and irrevocable. Following such abandonment, and since the Petition Date, PRS has maintained only a portion – approximately 6,015 square feet – of the third floor (Suite 3130) at the Rejected Lease Premises.

8. In conjunction with their review of executory contracts and real property leases, and in consultation with their professionals, the Debtors reviewed the Rejected Lease and determined that its terms were not conducive to the Debtors' future business plans. Specifically, the Rejected Lease commits the Debtors to renting significantly more space than that which is required by their business operations. The Debtors determined that a lease with a reduced footprint and lower costs would be in the Debtors' best interests going forward. Accordingly, in an effort to achieve maximum cost-savings and meet the needs of the Debtors' businesses, for the benefit of the Debtors' businesses, estates, creditors, and other parties in interest, the Debtors explored potential alternative leases.

9. Ultimately, in the exercise of their reasoned business judgment, the Debtors

---

2. The description of the terms of the Rejected Lease, the Transferred Lease, the New Lease, and any amendments or modifications thereto are for included in this Motion for illustration and convenience; they are qualified in their entirety by the terms of the applicable agreements.

4

determined that PRS' business would be best served by rejecting the Rejected Lease, vacating the Rejected Lease Premises, and transferring those operations to the Transferred Lease Premises (described below), which are currently subject to a month-to-month lease. The Transferred Lease Landlord (defined below) consents to PRS' plan, and the parties intend to complete negotiation of a longer term lease following PRS' emergence from chapter 11.

### C. The Transferred Lease

10. On or about May 24, 2012, Patriot National Insurance Group, Inc. (predecessor in interest to the Debtors) entered into that certain office lease (the "Transferred Lease") with Sun Life Assurance Company of Canada (U.S.) (the "Transferred Lease Landlord"). The Transferred Lease (as subsequently modified or amended) provides for a lease of approximately 5,570 square feet of office space through December 31, 2017 and current rent of approximately $11,681 per month (including common area maintenance charges). The term of the Transferred Lease has expired, and the Debtors have maintained their lease of the Transferred Lease Premises on a month-to-month basis. Contego has maintained its offices at the Transferred Lease Premises.

11. In conjunction with their review of executory contracts and real property leases, and in consultation with their professionals, the Debtors determined that the Transferred Lease Premises and the terms of the lease of those premises are more conducive to PRS' future business plans than those of the Rejected Lease.

12. The Transferred Lease represents a significant benefit for PRS and its estate, allowing the Debtors to meet their current and anticipated future business needs at a reduced cost and footprint. The Debtors estimate they will save over $14,000 in rent per month over the remaining term of the Rejected Lease. The Debtors, in their business judgment, find the terms of the Transferred Lease favorable for PRS considering current market conditions and their current and anticipated business needs and objectives.

**D. The New Lease**

13. Ultimately, the Debtors determined that the New Lease would best fit Contego's current and projected business needs. The New Lease is located in downtown Orlando, providing a significantly better location and commute for Contego's employees. The Debtors, in their business judgment, find the New Lease favorable considering current market conditions and their current and anticipated business needs and objectives.

14. Below is a summary of the key terms of the three leases:

|  | **Rejected Lease (as amended)** | **Transferred Lease** | **New Lease** |
|---|---|---|---|
| **Premises** | 1000 Primera Blvd., Lake Mary, FL 32746, Suite 2130 & Suite 3130 | 605 Crescent Executive Court, Lake Mary, FL 32746, Suite 340 | 350 East Pine Street, Orlando, FL 32801, Suite 100 & Suite 200 |
| **Rent (incl. Common Area Maintenance)** | $26,133 / month | $11,681 / month | $13,058.06 / month |
| **Term** | May 31, 2020 | Month-to-month | March 31, 2022 |
| **Size** | 13,350 sq. ft. | 5,570 sq. ft. | 5,315 sq. ft. |

15. The New Lease represents a significant benefit for the Debtors and their estates, allowing Contego to meet its current and anticipated future business needs in a superior location, and allowing PRS to move into the space vacated by Contego. As a result, the Debtors' rejection of the Rejected Lease and entry into the New Lease will be conducive to the Debtors' efficient operation going forward and will significantly benefit the Debtors' estates and all parties in interest.

**RELIEF REQUESTED**

16. By this Motion, The Debtors request entry of orders, in substantially the form of the Proposed Orders, (i) authorizing, but not directing, the Debtors to enter into the New Lease,

(ii) authorizing, but not directing, the transfer of PRS' operations to the Transferred Leased Premises, (iii) authorizing and approving the Debtors' rejection of the Rejected Lease as of the Rejection Effective Date, and (iv) authorizing the Debtors to abandon any personal property of the Debtors remaining in the Rejected Lease Premises after the Rejection Effective Date.

## BASIS FOR RELIEF REQUESTED

### A. The Debtors' Entry into the New Lease and Transfer of PRS' Operations to the Transferred Lease Premises Should be Approved Pursuant to Section 363(b) of the Bankruptcy Code.

17. Under Bankruptcy Code section 363(b)(1), a debtor in possession "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).[3] In determining whether to authorize a debtor to use property under Bankruptcy Code section 363(b)(1), courts require the debtor to demonstrate that a sound business purpose justifies its actions. *See In re Del. & Hudson Ry. Co.*, 124 B.R. 169, 175-76 (D. Del. 1991); *see also Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071 (2d Cir. 1983).

18. Once the debtor has articulated a valid business purpose, "a strong presumption follows that the agreement was negotiated in good faith and is in the best interests of the estate." *Culp v. Stanziale (In re Culp)*, 545 B.R. 827, 844 (D. Del. 2016), *aff'd,* 681 F. App'x 140 (3d Cir. 2017), *cert. denied,* 138 S. Ct. 170 (2017); *In re Filene's Basement, LLC*, No. 11-13511 (KJC), 2014 WL 1713416, at *12 (Bankr. D. Del. Apr. 29, 2014) ("[T]he burden of rebutting

---

3. By filing this Motion, the Debtors do not concede that entry into or performance under the New Lease or the change in use of the Transferred Lease Premises constitute actions outside the ordinary course of business; rather, the Debtors are filing this Motion out of an abundance of caution to ensure full transparency in these Chapter 11 Cases and confirm the New Lease's enforceability.

that presumption falls to parties opposing the transaction.") (quoting *In re MF Glob. Inc.*, 467 B.R. 726, 730 (Bankr. S.D.N.Y. 2012)).

19. In this case, entering into the New Lease and moving PRS' operations to the Transferred Lease Premises are both fair, reasonable, and in the best interest of the Debtors' estates. The Debtors compared other available properties in consultation with realtors before determining that the arrangement described herein would best fit their needs. As described herein, the Transferred Lease provides substantially reduced rent expenses for PRS and a footprint that matches PRS' needs, and the New Lease allows Contego to obtain real benefits by providing adequate office space for Contego's business in a downtown Orlando location. In addition, the terms of the New Lease were negotiated in the ordinary course of business and are consistent with the Debtors' historical practices.

  **B.**   **Rejection of the Rejected Lease Is an Appropriate Exercise of the Debtors' Business Judgment and Should Be Approved and the Debtors' Removal of Their Property From the Premises Should Not Be Impeded.**

20. Section 365(a) of the Bankruptcy Code provides that a debtor "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a); *see also L.R.S.C. Co. v. Rickel Home Centers, Inc. (In re Rickel Home Centers, Inc.)*, 209 F.3d 291, 298 (3d Cir. 2000) (section 365 of the Bankruptcy Code "allows a trustee to relieve the bankruptcy estate of burdensome agreements which have not been completely performed"). Courts routinely approve motions to reject executory contracts and unexpired leases upon a showing that a debtor's decision to take such action will benefit the debtor's estate and is an exercise of sound business judgment. *See Krebs Chrysler-Plymouth, Inc. v. Valley Motors, Inc.*, 141 F.3d 490, 492 (3d Cir. 1998); *In re Taylor*, 913 F.2d 102, 107 (3d Cir. 1990); *In re Armstrong World Indus., Inc.*, 348 B.R. 136, 162 (Bankr. D. Del. 2006) ("Courts have uniformly deferred to the business judgment of the debtor to determine whether

8

the rejection of an executory contract or unexpired lease by the debtor is appropriate under section 365(a) of the Bankruptcy Code.").

21. Courts generally do not second-guess a debtor's reasonable and good faith business judgment concerning the rejection of an executory contract or unexpired lease, unless the decision is the product of bad faith, whim or caprice. *See In re HQ Global Holdings, Inc.*, 290 B.R. 507, 511 (Bankr. D. Del. 2003) (applying a business judgment standard, absent a showing of bad faith, whim, or caprice); *In re Trans World Airlines, Inc.*, 261 B.R. 103, 121 (Bankr. D. Del. 2001) (same); *see also Summit Land Co. v. Allen (In re Summit Land. Co.)*, 13 B.R. 310, 315 (Bankr. D. Utah 1981) (absent extraordinary circumstance, court approval of a debtor's decision to assume or reject an executory contract "should be granted as a matter of course"). The standard merely requires a showing that either assumption or rejection of the executory contract or unexpired lease will benefit the debtor's estate. *See Sharon Steel Corp. v. Nat'l Fuel Gas Distribution Cor. (In re Sharon Steel Corp.)*, 872 F.2d 36, 40 (3d Cir. 1989).

22. The Debtors' rejection of the Rejected Lease is an exercise of their sound business judgment and in the best interest of their estates. The Debtors have determined that the Rejected Lease is no longer necessary to the Debtors' ongoing operations, and a transfer of PRS' offices to the Transferred Lease Premises would better fit the Debtors' needs. Absent rejection of the Rejected Lease, the Debtors may accrue avoidable administrative expenses with little accompanying benefit to their estates and to the detriment of the Debtors' stakeholders. Because rejecting the Rejected Lease will benefit the Debtors' estates, the Court should grant the relief requested herein.

23. Additionally, although discussions with counsel to the Rejected Lease Landlord are ongoing, the Debtors understand that the Rejected Lease Landlord may not be willing to

allow the third party lessor of certain rented office furniture to remove such furniture from the Rejected Lease Premises. The Rejected Lease Landlord has no interest in property rented by the Debtors from a third party lessor and no right to retain such property. Accordingly, any interference by the Rejected Lease Landlord with the removal of such property would be in violation of the automatic stay, and the Debtors respectfully request that the Rejection Proposed Order contain language that makes the Debtors' legal rights to exercise control over such furniture (including, without limitation, the return of the rented furniture to the third party lessor) clear to the Rejected Lease Landlord.

       **C.**       **The Debtors' Abandonment of Personal Property at the Rejected Lease Premises is Appropriate.**

24. The Debtors also seek authority to abandon any Debtor-owned personal property located at the Rejected Lease Premises on the Petition Date, as is, where is, and in accordance with section 554(a) of the Bankruptcy Code. Section 554(a) provides that "the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." 11 U.S.C. § 554(a).

25. Prior to the Rejection Effective Date, the Debtors will remove any personal property that justifies the expense of transport to another location. The Debtors believe that the costs associated with liquidating the personal property assets remaining at the Rejected Lease Property, if any, will likely approach or exceed the value of such assets. Accordingly, the Debtors believe that the personal property remaining at the Rejected Lease Premises, if any, will have inconsequential value to the estates and should be abandoned as of the Rejection Effective Date. Furthermore, the Debtors will not abandon any computers or other property that contain personally identifiable information of the Debtors' employees or customers, or contain critical business information.

### D. Claims Bar Date

26. The Rejected Lease Landlord may seek to assert a rejection damage claim under section 502 of the Bankruptcy Code or other claims in connection with the rejection of the Rejected Agreement and must do so in accordance with this Court's *Order (i) Establishing Bar Dates for Filing Proofs of Claim, (ii) Approving Proof of Claim Form, Bar Date Notices, and Mailing and Publication Procedures, (iii) Implementing Uniform Procedures Regarding 503(b)(9) Claims, and (iv) Providing Certain Supplemental Relief* [D.I. 317] (the "Claims Bar Date Order"). The Debtors will give notice of the bar date to the Rejected Lease Landlord in accordance with the Claims Bar Date Order. The Debtors will also give notice of the order granting this Motion by serving such order on the Rejected Lease Landlord after entry of such order. Pursuant to the Claims Bar Date Order, any claims in connection with the rejection of the Rejected Agreement must be filed by May 24, 2018 (*i.e.*, thirty days after the Rejection Effective Date).

27. Nothing in this Motion shall be deemed or construed to: (a) constitute an admission as to the validity or priority of any claim against the Debtors; and/or (b) constitute a waiver of the Debtors' rights to dispute any claim.

### NOTICE

28. Notice of this Motion shall be provided to (i) the U.S. Trustee; (ii) counsel for Cerberus Business Finance, LLC, as the administrative agent for the DIP Lenders and for the prepetition secured lenders; (iii) counsel to the Committee; (iv) the Rejected Lease Landlord; (v) the Transferred Lease Landlord; (vi) the New Landlord; and (vii) parties requesting notice pursuant to Bankruptcy Rule 2002. The Debtors submit that no other or further notice need be provided.

## **NO PRIOR REQUEST**

29.     No prior request for the relief sought herein has been made to this Court or any other court.

WHEREFORE, the Debtors respectfully request that the Court enter the Proposed Orders and grant such other and further relief as may be appropriate.

Dated: April 3, 2018  
       Wilmington, Delaware

PACHULSKI STANG ZIEHL & JONES LLP

*/s/ Peter J. Keane*
Laura Davis Jones (DE Bar No. 2436)
James E. O'Neill (DE Bar No. 4042)
Peter J. Keane (DE Bar No. 5503)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
Telephone:  (302) 652-4100
Facsimile:   (302) 652-4400
Email: ljones@pszjlaw.com
       joneill@pszjlaw.com
       pkeane@pszjlaw.com

-and-

Kathryn A. Coleman
Christopher Gartman
Jacob Gartman
HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, NY 10004-1482
Telephone:  (212) 837-6000
Facsimile:   (212) 422-4726
Email:  katie.coleman@hugheshubbard.com
       chris.gartman@hugheshubbard.com
       jacob.gartman@hugheshubbard.com

*Counsel for the Debtors*