# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| PATRIOT NATIONAL, INC., *et al.*,[1] | Case No. 18-10189 (KG) |
| Debtors. | <u>Hearing Date</u>: TBD<br><u>Objection Deadline</u>: TBD |

## RECEIVER OF ULLICO CASUALTY COMPANY IN LIQUIDATION'S MOTION FOR ABSTENTION AND RELIEF FROM AUTOMATIC STAY

The Honorable Trinidad Navarro, Insurance Commissioner of the State of Delaware, in his capacity as the Receiver (the "**Receiver**") of Ullico Casualty Company in Liquidation ("**Ullico Casualty**"), by and through undersigned counsel, files this *Motion for Abstention and Relief from the Automatic Stay* (the "**Motion**"). In support of the Motion, the Receiver respectfully states as follows:

## PRELIMINARY STATEMENT

From the outset of his involvement in these chapter 11 cases, the Receiver has sought only such limited relief as required to fulfill his duties as Receiver of Ullico Casualty, an insurance company in liquidation proceedings pursuant to the Delaware Uniform Insurers Liquidation Act (the "**DUILA Insolvency Proceedings**").

The Insurance Commissioner, in his role as Receiver of Ullico Casualty, is bound by certain duties and obligations pursuant to the Delaware Uniform Insurers Liquidation

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtors' federal tax identification number, are: Patriot National, Inc. (1376), Patriot Services, LLC (7695); TriGen Insurance Solutions, Inc. (2501); Patriot Captive Management, LLC (2341); Patriot Underwriters, Inc. (0045); TriGen Hospitality Group, Inc. (6557); Patriot Risk Consultants, LLC (0844); Patriot Audit Services, LLC (5793); Patriot Claim Services, Inc. (9147); Patriot Risk Services, Inc. (7189); Corporate. Claims Management, Inc. (6760); CWIBenefits, Inc. (0204); Forza Lien, LLC (7153); Contego Investigative Services, Inc. (0330); Contego Services Group, LLC (0012); Patriot Care Management, LLC (2808); Radar Post-Closing Holding Company, Inc. (2049); Patriot Technology Solutions, LLC (6855); and Decision UR, LLC (1826). The Debtors' headquarters are located at 401 East Las Olas Boulevard, Suite 1650, Fort Lauderdale, Florida 33301.

Act, codified at 18 Del. C. § 5901–5944 (the "**DUILA**") and that certain *Liquidation and Injunction Order with Bar Date* entered by the Court of Chancery of the State of Delaware (the "**Court of Chancery**") on May 30, 2013 (the "**Liquidation Order**") to "take and continue possession" of the Ullico Casualty Assets (as defined herein), "including, without limitation, all proceeds or accessions to any [Ullico Casualty Assets], wherever located, in the possession, custody, or control of Ullico Casualty or any trustee, bailee, or any agent acting for or on behalf of Ullico Casualty." Liquidation Order at 3. Pursuant to these obligations, and based on his belief, informed by his experiences as Receiver and his familiarity with the books and records of Ullico Casualty, that there was a reasonable likelihood that the Debtors possessed or controlled Ullico Casualty Assets, the Receiver sought (A) to obtain an accounting of the Restricted Accounts and (B) to preserve his rights pursuant to the DUILA and the Liquidation Order including his rights to recover Ullico Casualty Assets from the Debtors and the Debtors' current and former directors and officers.

In response, the Debtors filed a supplemental *Declaration of James S. Feltman, Chief Restructuring Officer of Patriot National, Inc., In Further Support of Certain First Day Motions* [D.I. 201] (the "**Supplemental Declaration**") testifying that "the Debtors do not possess the property of Ullico Casualty that is described in the Receiver['s] [o]bjections." Supplemental Declaration at ¶ 7.

To substantiate his position, the Receiver sought targeted discovery from the Debtors. The Debtors produced records and statements corresponding exclusively to an account under the name "Ullico Casualty." Contrary to the parties agreement, the Receiver was not given access to any data or records concerning any other accounts to

conduct his own forensic accounting regarding the Debtors' custody or control of Ullico Casualty Assets.

The Debtors' limited production is sufficient to conclude that they have previously and do currently possess or control Ullico Casualty Assets, thus compelling the Receiver to pursue and administer such assets through the DUILA Insolvency Proceedings, over which the Court of Chancery has original and exclusive jurisdiction. The Receiver maintains that this Court lacks subject matter jurisdiction to adjudicate the Receiver's pursuit of the Ullico Casualty Assets pursuant to the McCarran-Ferguson Act, as set forth in the Confirmation Objection, incorporated fully herein by reference. To the extent the Court finds otherwise, however, the Receiver submits this motion requesting that the Court abstain from taking any action in these chapter 11 cases that may interfere with the Receiver's ability to exercise his rights or fulfill his obligations in connection with the DUILA Insolvency Proceedings, and further seeking relief from the automatic stay to enable the Receiver to initiate appropriate actions to do so without undue delay.

## JURISDICTION

1.       The United States Bankruptcy Court for the District of Delaware (this "**Court**") has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334(b) and the *Amended Standing Order of Reference* of the United States District Court for the District of Delaware, dated February 29, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2.       Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.       Pursuant to Rules 7012–1 and 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court of the District of

Delaware(the "**Local Rules**"), the Receiver consents to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the Receiver, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

4.      The statutory bases for the relief requested herein are section 105(a) and 362(d) of title 11 of the United States Code, §§ 101–1532 (as amended, the "**Bankruptcy Code**") and section 1334(c) of title 28 of the United States Code, §§ 1–5001 (as amended, the "**Judicial Code**").

## GENERAL BACKGROUND

5.      On January 30, 2018 (the "**Petition Date**"), the Debtors commenced their bankruptcy cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  On the Petition Date, the Debtor filed the *Debtors' Motion for Interim and Final Orders (I) Authorizing Continued Use of Cash Management System, Bank Accounts and Business Forms, (II) Extending the Debtors' Time to Comply with Section 345(b) of the Bankruptcy Code, (III), Approving Continuation of Ordinary Course Intercompany Transactions and (IV) Granting Related Relief* [D.I. 7] (the "**Cash Management Motion**") and other motions for emergent relief.

6.      No trustee or examiner has been appointed in these cases.  The Debtors are operating their businesses as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

7.      On February 16, 2018, the Office of the United States Trustee appointed a committee of unsecured creditors.

8.     On February 21, 2018, the Receiver filed his (i) *Limited Objection to the Debtors' Motion for Interim and Final Orders (I) Authorizing the Continued Use of Cash Management System, Bank Accounts and Business Forms, (II) Extending the Debtors' Time to Comply with Section 345(b) of the Bankruptcy Code, (III) Approving Continuation of Ordinary Course Intercompany Transactions and (IV) Granting Related Relief* [D.I. 138] (the "**Cash Management Objection**"), (ii) *Limited Objection to Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing Debtors and Debtors-in-Possession to Obtain Postpetition Financing, (II) Authorizing Use of Cash Collateral, (III) Granting Liens and Super-Priority Claims, (IV) Granting Adequate Protection to Prepetition Secured Lenders, (V) Modifying the Automatic Stay, (VI) Scheduling a Final Hearing, and (VII) Granting Related Relief* [D.I. 139] (the "**DIP Objection**"), and (iii) *Limited Objection to Debtors' Motion for Entry of Interim and Final Orders (A) Authorizing Debtors to Continue Their Prepetition Practices with Respect to Their Pass-Through Bank Account and (B) Authorizing Banks to Honor Related Transfers* [D.I. 140] (the "**Pass-Through Accounts Objection**" and, together with the Cash Management Objection and the DIP Objection, the "**Initial Objections**").  Through the Initial Objections, the Receiver sought to preserve its rights and authority pursuant to the Liquidation Order to recover any Assets of Ullico Casualty Assets which may be in the possession or control of one of more of the Debtors and to prosecute claims related thereto.

9.     On February 27, 2018, in response to the Receiver's Limited Objections, the Debtors filed the Supplemental Declaration through which Mr. Feltman testified that "the Debtors do not possess the property of Ullico Casualty that is described in the Receiver['s] [Limited] Objections."  Supplemental Declaration at ¶ 7.  Feltman further

represented that he reviewed the Debtors' books and records for Ullico Casualty Assets consistent with the Receiver's objections and that "[n]one of the funds in the . . . Restricted Accounts, or any of the Debtors' bank accounts are the property of Ullico Casualty." Id. at ¶ 7–8.

10.     On March 5, 2018, the Receiver issued his *First Set of (I) Requests for Production and (II) Interrogatories Directed to the Debtors*, seeking, *inter alia*, information and data (which information and data was to have been provided in 2013 pursuant to the Liquidation Order) to assist the Receiver in completing a forensic accounting to identify any Assets of Ullico Casualty that may be in the possession or control of any of the Debtors (the "**Receiver's Discovery Requests**").  Pursuant to the Receiver's Discovery Requests, responses and documents were required to be provided and produced by the Debtors on or before April 4, 2018.

11.     Also on March 5, 2018, the Receiver filed his Objection to the Debtor's Disclosure Statement [D.I. 286] (the "**DS Objection**").  Consistent with the Cash Management Objection, the DS Objection sought to confirm that the Receiver's rights were preserved and not affected by the Plan or the Confirmation Order.  In that regard, the Receiver requested the addition of language to the Disclosure Statement to make clear that nothing in the Plan or the Confirmation Order affected the Receiver's rights and authority pursuant to the Liquidation Order.  Specifically, in connection with its DS Objection and subsequent communications with counsel for the Debtors and counsel for Cerberus Business Finance, LLC ("**Cerberus**"), the Receiver sought the inclusion of the following language in the Disclosure Statement (the "**Receiver's Carve-Out Language**"):

> Nothing in the Plan or the Confirmation Order shall restrict, modify, or in any way affect the Receiver's rights in

connection with that certain Liquidation and Injunction Order with Bar Date entered on May 30, 2013, In The Court of Chancery of the State of Delaware, In The Matter of the Liquidation of Ullico Casualty Company, C.A. No. 8392-VCS, including the Receiver's authority to prosecute suits by or for Ullico Casualty or to recover assets belonging to Ullico Casualty.

12.     The Receiver's Carve-Out Language was rejected from inclusion in the Disclosure Statement by the Debtors and by Cerberus on the basis that it would impermissibly carve out the Receiver from applicability of the Plan's discharge provision.

13.     On March 30, 2018, the Debtors filed their *Third Amended Joint Chapter 11 Plan of Reorganization* [D.I. 471] (as amended and restated, the "**Plan**").[2]

14.     On April 2, 2018, in connection with his ongoing efforts to ensure that his rights pursuant to the DUILA and the authority granted by the Court of Chancery pursuant to the Liquidation Order are preserved, the Receiver filed his *Objection to Debtors' Third Amended Joint Chapter 11 Plan of Reorganization* [D.I. 482] (the "**Confirmation Objection**") and his *Supplemental Objection to Debtors' Motion for Interim and Final Orders (I) Authorizing the Continued Use of Cash Management System, Bank Accounts and Business Forms, (II) Extending the Debtors Time to Comply With Section 345(b) of the Bankruptcy Code, (III) Approving Continuation of Ordinary Course Intercompany Transactions and (IV) Granting Related Relief* [D.I. 483] (the "**Supplemental Cash Management Objection**").

---

[2] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to such terms in the Plan. The defined term Plan is intended herein to include to the extent appropriate the proposed order confirming the Plan and proposed statement of facts and conclusions of law.

15.     On April 5, 2018, the Debtors served copies on the Receiver of the *Debtors' Responses and Objections to the Receiver of Ullico Casualty Company in Liquidation's First Set of (I) Requests for Production and (II) Interrogatories Directed to the Debtors* (the "**Debtors' Discovery Responses**").  Contrary to the parties' agreement, however, the Debtors' did not produce or allow the Receiver to access data and records with which to conduct a forensic accounting of the Debtors' accounts.  Instead, the Debtors produced records and statements related to one of the Debtors' bank accounts, opened under the name "Ullico Casualty" (account number ending 5225, the "**Ullico Casualty Account**")[3] which, following entry of the Liquidation Order, held a balance of $4.1 million.

16.     At the hearing before the Court on April 9, 2018, the Debtors noted the discrepancy between their initial and subsequent searches for Ullico Casualty Assets.  Hr'g Tr. at 15:13–17, Apr. 9, 2018 ("With respect to Ullico, Mr. Feltman's supplemental declaration stated that we had no accounts -- . . . related to Ullico.  In fact, as we went back and looked at all the accounts, there is one.); *id.* at 16:1–2 ("[W]e do have – we did in the past have one account related to Ullico, but all the information has been provided.").

---

[3] The existence of, and details related to, the Ullico Casualty Account were disclosed for the first time in connection with the Debtors' Discovery Responses.  *Compare* Supplemental Declaration at ¶ 7 ("[B]ased upon a review of the Debtros' books and records, the Debtors do not possess the property of Ullico Casualty that is described in the Receiver Objections.") *and id.* at ¶ 8 ("None of the funds in the Pass-Through Account, the Restricted Accounts, or *any of the Debtors' bank accounts* are the property of Ullico Casualty.") (emphasis added), *with* Hr'g Tr. at 15:13–17, Apr. 9, 2018hr' ("With respect to Ullico, Mr. Feltman's supplemental declaration stated that we had no accounts -- . . . related to Ullico.  In fact, as we went back and looked at all the accounts, there is one.").

## FACTUAL BACKGROUND

17.     Ullico Casualty is in insurance delinquency proceedings under the DUILA.

18.     The Delaware Supreme Court recently explained the genesis and purpose of the DUILA as follows:

> Insurer insolvency is regulated by state law rather than the federal Bankruptcy Code. Many states, including Delaware, have adopted a form of the Uniform Insurers Liquidation Act "to avoid the confusion inherent in the forced liquidation of a multistate insurance corporation, especially with regard to assets in foreign jurisdictions." The General Assembly enacted the Delaware Uniform Insurers Liquidation Act [the DUILA] in 1953.

*Cohen v. Stewart*, 89 A.2d 65, 72 (Del. 2014).  The overall purpose of the DUILA, and liquidation proceedings in general, "is not only to preserve available assets for the benefit of creditors, but to protect the interests of persons who purchased insurance policies from a company which has become insolvent."  *Id.* at 80 n.65 (quoting *Matter of Transit Casualty Co.*, 588 N.E.2d 38, 42 (N.Y. 1992)).

19.     The goals of the DUILA when an insolvent insurer is in liquidation "center on the orderly, expeditious, and equitable resolution of all claims against the insolvent insurer." *Cohen*, 89 A.2d at 94.

20.     The Receiver, by statutory mandate, represents not only the interests of the insurance company, but also, *inter alia,* the policyholders and creditors of the insurance company. 18 Del. C. § 5903.  The Receiver is charged with "preventing further damage to an insurer and marshaling and protecting the remaining assets to pay the potential claims of policyholders and creditors."  *Cohen*, 89 A.3d at 93 (citing *Transit Casualty*, 588 N.E.2d at 41).

21.    A Receiver's ability to marshal assets effectively and efficiently is a basic tenet of insurance insolvency law that is recognized by Section 5904(b) of the DUILA. Section 5904(b) gives the Court flexibility to enter orders or injunctions to assist the Receiver in marshaling assets and maximizing the value of estate assets.  Section 5904(b) provides that:

> The court may at any time during a proceeding under this chapter issue such other injunctions or orders as may be deemed necessary to prevent interference with the Commissioner or the proceeding or waste of the assets of the insurer or the commencement or prosecution of any actions or the obtaining of preferences, judgments, attachments or other liens or the making of any levy against the insurer or against its assets or any part thereof.

18 Del. C. § 5904(b).

**The Rehabilitation Order**

22.    On March 11, 2013, the Court of Chancery entered a Rehabilitation and Injunction Order (the "**Rehabilitation Order**") concerning Ullico Casualty.  The Rehabilitation Order is attached as **<u>Exhibit B</u>**.  In the order, the Court of Chancery found that Ullico Casualty was impaired, insolvent, in unsound condition, and in such condition as to render its further transaction of insurance presently or prospectively hazardous to its policyholders.  The Court of Chancery placed Ullico Casualty into rehabilitation and appointed the Honorable Karen Weldin Stewart, CIR-ML, then Insurance Commissioner of the State of Delaware, as the Receiver.  The Rehabilitation Order further vested the Receiver with "all right, title and interest in, of or to, all of the property of [Ullico Casualty]." Rehabilitation Order, ¶¶ 1–4, 6–7.

**The Liquidation Order**

23.     On May 30, 2013, the Court of Chancery entered the Liquidation Order, in which the Court of Chancery, *inter alia*, placed Ullico Casualty into liquidation pursuant to sections 5905 and 5906 of the DUILA.  The Liquidation Order is attached as **Exhibit C**.

24.     The Court of Chancery found that Ullico Casualty remained in a hazardous condition and that further efforts to rehabilitate the company would be futile. The Liquidation Order renewed the appointment of Commissioner Stewart and her successors to act in the role of Receiver of Ullico Casualty.  The Liquidation Order was further consistent with the Rehabilitation Order in vesting the Receiver with "all right, title and interest in, of or to, all of the property of [Ullico Casualty]." Liquidation Order, ¶¶ 1–3, 7.

25.     The Liquidation Order defines "Assets" as:

> [A]ll right, title, and interest in, of, and to the property of ULLICO CASUALTY including, without limitation, all of ULLICO CASUALTY's assets, contracts, rights of action, books, records, bank accounts, certificates of deposits, collateral and rights to collateral of ULLICO CASUALTY, securities or other funds, and all real or personal property of any nature of ULLICO CASUALTY, including, without limitation, all proceeds or accessions to any of the foregoing, wherever located, in the possession, custody, or control of ULLICO CASUALTY or any trustee, bailee, or any agent acting for or on behalf of ULLICO CASUALTY.

Liquidation Order at ¶ 3.

26.     The Liquidation Order includes a number of provisions authorized by 18 Del. C. § 5904(b) to assist the Receiver in one of this core functions—marshaling the assets and possible assets of Ullico Casualty's estate.  To that end, the Liquidation Order: prevents the dissipation of Ullico Casualty's assets and assets that Ullico Casualty  may

have an interest in (the "**Ullico Casualty Assets**"); requires the person or entity in possession of Ullico Casualty Assets to file an accounting of such assets with the Receiver; and mandates that all Ullico Casualty Assets be turned over to the Receiver. *See, e.g.* Liquidation Order at ¶¶ 8, 9,[4] and 10.[5]  As of this date, despite having controlled virtually every aspect of the Large Deductible Workers' Compensation Program with Ullico Casualty, including holding the property of Ullico Casualty, no Patriot-related entity has either provided an accounting or turned over assets to Ullico Casualty as required by the Court of Chancery's Liquidation Order.

27.    Pursuant to paragraph 11 of the Liquidation Order, all persons or entities are prohibited from, *inter alia*, "exercising any right adverse to the right of ULLICO CASUALTY to or in the Assets, or in any way interfering with the Receiver, the Deputy Receiver(s), or the Designees either in their possession and control of the Assets or in the discharge of their duties hereunder."  Liquidation Order at ¶ 11.

28.    In this way, all estate assets are brought into the estate so that the Receiver may fulfill his obligations to administer them, including, without limitation, by determining, when and where appropriate, to distribute assets in a manner that is consistent with the DUILA and Liquidation Order.

---

[4] Paragraph 9 provides: "9. Except as otherwise indicated elsewhere in this Order or except as excluded by express written notice provided by the Receiver, all persons or entities holding Assets of, or on behalf of, ULLICO CASUALTY shall file with the Receiver within ten (10) calendar days of the entry of this Order an accounting of those Assets, regardless of whether such persons or entities dispute the Receiver's entitlement to such Assets."

[5] Paragraph 10 provides: "10. Except as otherwise indicated elsewhere in this Order or except as excluded by express written notice provided by the Receiver, all persons or entities holding Assets of, or on behalf of, ULLICO CASUALTY shall within ten (10) calendar days of the entry of this Order, turn those Assets over to the Receiver."

## RELIEF REQUESTED

29.     By this Motion, the Receiver seeks entry of an order, substantially in the form attached hereto as **Exhibit A**, (i) abstaining from taking any actions, through confirmation of the Plan or otherwise, that will restrict or otherwise impede the Receiver's exercise of his rights or fulfillment of his duties and obligations pursuant to the Liquidation Order, the DUILA, or otherwise in connection with the DUILA Insolvency Proceedings to administer and pursue the Ullico Casualty Assets, and (ii) granting the Receiver relief from the automatic stay, to the extent necessary, to pursue all remedies available to him in connection with the DUILA Insolvency Proceedings, including but not limited to his right to compel a complete accounting and turnover of any and all Ullico Casualty Assets in the Debtors' possession or control without undue delay.

## BASIS FOR RELIEF REQUESTED

### Mandatory Abstention Under 11 U.S.C. § 1334(c)(2)[6]

30.     Section 1334(c)(2) of the Judicial Code provides that bankruptcy courts *must* abstain from hearing and considering certain matters in deference to a state court or some other tribunal.  11 U.S.C. § 1334(c)(2).  Section 1334(c)(2) provides:

> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 but arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district

---

[6] The Receiver's arguments that mandatory abstention is required here are consistent with the Receiver's arguments that abstention under the *Younger* doctrine is required, as set forth in the Confirmation Objection. *See In re the Conference of African Union First Colored Methodist Protestant Church*, 184 B.R. 207, 221 (Bankr. D. Del. 1995) ("For bankruptcy proceedings, the *Younger* doctrine is codified in [28 U.S.C.] § 1334(c)(1) and (2)—one a discretionary directive and the other a mandatory abstention directive.").

court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

11 U.S.C. § 1334(c)(2).

31. This Court has routinely held that "[m]andatory abstention under 28 U.S.C. § 1334(c)(2) requires that each of six separate elements must be satisfied." *In re Longview Pwr., LLC*, 516 B.R. 282, 293–94 (Bankr. D. Del. 2014) (citing *In re Mobile Tool Int'l*, 320 B.R. 552, 556 (Bankr. D. Del. 2005)). This Court has stated the six mandatory abstention requirements as follows:

(1) the motion to abstain was timely brought;

(2) the underlying action or proceeding pending in federal court is based upon a state law claim or cause of action;

(3) the matter is non-core, such that it is related to a bankruptcy proceeding, but neither arises under title 11 nor in a case under title 11;

(4) section 1334 is the sole basis for federal jurisdiction;

(5) an action is commenced in state court; and

(6) the action can be timely adjudicated in state court.

*NJ Dept. of Envtl. Prot. v. Occidental Chem. Corp. (In re Maxus Energy Corp.)*, 560 B.R. 111, 120 (Bankr. D. Del. 2016) (citing *Longview Pwr.*, 516 B.R. at 293–94).

32. The first requirement for mandatory abstention is met where the motion to abstain is timely submitted and served. Here, this Motion is filed and served within one week after the Debtors produced financial records and other documents purportedly responsive to the Receiver's Discovery Requests. Albeit extremely limited and overall nonresponsive to the Receiver's Discovery Requests, the Debtors' production is nevertheless sufficient to establish that the Debtors continue to possess and control Ullico

Casualty Assets despite and in violation of the Liquidation Order and applicable provisions of the DUILA. Accordingly, the Receiver has an obligation, pursuant to the Liquidation Order, to seek to compel the Debtors to produce a detailed accounting so that all Ullico Casualty Assets in the Debtors' possession can be identified and recovered for the benefit of Ullico Casualty's policyholders and creditors.

33. The second mandatory abstention requirement provides that "the underlying action or proceeding pending in federal court is based upon a state law claim or cause of action." *Maxus Energy*, 560 B.R. at 120. The underlying contested matters arise from the Cash Management Objection and the Confirmation Objection and pertain to the Receiver's efforts to exercise and preserve his rights pursuant to the DUILA and the Liquidation Order in the DUILA Insolvency Proceedings, which have been ongoing in the Court of Chancery from the date the Rehabilitation Order was entered on March 11, 2013. The DUILA Insolvency Proceedings are based on—and are conducted in accordance with—the insurance insolvency statutory scheme enacted by the state of Delaware, the "Delaware Uniform Insurers Liquidation Act" or the "DUILA," codified at 18 Del. C. Ch. 59, §§ 5901–33. By this Motion, the Receiver seeks abstention by this Court only as to actions that will restrict or otherwise inhibit the Receiver's ability to exercise his rights and fulfill his obligations in connection with the DUILA Insolvency Proceedings. Thus, the underlying action at issue here—the rights of the Receiver to fulfill his obligations in connection with the DUILA Insolvency Proceedings—are squarely based upon state law. Further support for this second mandatory abstention requirement can be found in the Debtors' general objections to the Receiver's Discovery Requests which provide, in pertinent part, that the Receiver's Discovery Requests "seek

documents or information that are not relevant to the Debtors' [Cash Management Motion] nor reasonably calculated to lead to discovery of admissible evidence regarding the relief sought [in the Cash Management Motion]." Debtors' Discovery Responses at ¶ 4. While the Receiver's Discovery Requests are entirely appropriate, given that the Debtors seek authority in the Cash Management Motion to improperly use Ullico Casualty Assets as part of the Debtors' cash management system,[7] the Debtors assertion that the Receiver's pursuit and recovery of the Ullico Casualty Assets should be kept separate from the Debtors' chapter 11 bankruptcy proceedings is valid. The Receiver's rights and remedies related to the Ullico Casualty Assets arise entirely under non-federal sources of law (i.e., the DUILA, the Liquidation Order entered by the Court of Chancery, and the DUILA Insolvency Proceedings, generally) and, as such, the Receiver should be permitted to proceed with the DUILA Insolvency Proceedings in the Court of Chancery.

34.     Next, the proceeding before the Court must be "non-core" to satisfy the third mandatory abstention requirement. *Maxus Energy*, 560 B.R. at 120. Proceedings are "core" if they meet one of two tests delineated by the Third Circuit Court of Appeals. *See In re Exide Techs.*, 544 F.3d 196, 205 (3d Cir. 2008). First, a proceeding is "core" if it fits into one of the enumerated types of core proceedings listed in 28 U.S.C. § 157(b)(2).[8] *See* 28 U.S.C. § 157(b)(2). Second, a proceeding not of a type enumerated

---

[7] The Ullico Casualty Account is a "Restricted Account" identified in the Schedule of Bank Accounts attached as Exhibit C to the Debtors' Cash Management Motion. The "Account Description" for the Ullico Casualty Account is "Patriot Risk Services Inc."

[8] 28 U.S.C. § 157(b)(2) identifies the following types of proceedings as falling within the "core" jurisdiction of bankruptcy courts: "(A) matters concerning the administration of the estate; (B) allowance or disallowance of claims against the estate or exemptions from property of the estate, and estimation of claims or interests for the purposes of confirming a plan under chapter 11, 12, or 13 of title 11but not the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11; (C) counterclaims by the estate against persons filing claims against the estate; (D) orders in respect to obtaining credit; (E) orders to turn over

in section 157(b)(2) is nonetheless a core proceeding if: "(1) it invokes a substantive right provided by title 11 or (2) if it is a proceeding, that by its nature, could arise only in the context of a bankruptcy case." *Exide*, 544 F.3d at 206.

35.     Here, the state court proceedings at issue—broadly—are the DUILA Insolvency Proceedings. However, "[a] single cause of action may include both core and non-core claims" and "each claim alone must satisfy [the core proceeding] test to be considered a core proceeding." *Id.* (citing *Halper v. Halper*, 164 F.3d 830, 836 (3d Cir. 1999). The rights and actions most likely to be initiated by the Receiver—e.g., to compel an accounting, and for turnover of identified property—are non-core proceedings under both of the Third Circuit tests. First, such proceedings would be non-core under section 157(b)(2) because the Ullico Casualty Assets are not property of the Debtors' estate. Second, any proceedings initiated by the Receiver in connection with the DUILA Insolvency Proceedings would invoke rights arising under the DUILA—not the Bankruptcy Code—and such claims, by their "nature," would exist notwithstanding these chapter 11 cases.

36.     The fourth mandatory abstention requirement is that no federal jurisdiction—other than jurisdiction under section 1334—exists for the matters at issue. *Maxus Energy*, 560 B.R. at 120. Here, the DUILA Insolvency Proceedings arise under

---

property of the estate; (F) proceedings to determine, avoid, or recover preferences; (G) motions to terminate, annul, or modify the automatic stay; (H) proceedings to determine, avoid, or recover fraudulent conveyances; (I) determinations as to the dischargeability of particular debts; (J) objections to discharges; (K) determinations of the validity, extent, or priority of liens; (L) confirmations of plans; (M) orders approving the use or lease of property, including the use of cash collateral; (N) orders approving the sale of property other than property resulting from claims brought by the estate against persons who have not filed claims against the estate; (O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims; and (P) recognition of foreign proceedings and other matters under chapter 15 of title 11." 28 U.S.C. § 157(b)(2).

state law.  Moreover, the Court does not have diversity jurisdiction under section 1332(a) of the Judicial Code because both Ullico Casualty and several Debtor entities were organized under the laws of Delaware.  *See* 28 U.S.C. § 1332(a).  Thus, the fourth requirement for mandatory abstention is met here.

37.     The fifth mandatory abstention requirement is that "an action is commenced under state court." *Maxus Energy*, 560 B.R. at 120.  Here, the DUILA Insolvency Proceedings were initiated upon entry of the Rehabilitation Order on March 11, 2013 and have been ongoing from that date through the date hereof.  The Debtors commenced these chapter 11 cases by filing petitions for relief on January 30, 2018.  Here, the DUILA Insolvency Proceedings were initiated prior to these chapter 11 cases.  Indeed, no Debtor can claim unawareness of the DUILA Insolvency Proceedings or its intersection with the affairs of the Debtors' estates.  The fifth mandatory abstention requirement is satisfied.

38.     The final mandatory abstention element requires that "the action can be timely adjudicated in state court." *Id.*  This Court has found that an action could be "timely adjudicated" in state court where the action had been pending in state court for several years prior to the commencement of the bankruptcy case.  *See id.* at 124 ("Given the extensive history of the NJ Environmental Litigation, there is little debate surrounding whether or not the claims can be 'timely adjudicated' in New Jersey State Court.").

39.     Here, the Court of Chancery is uniquely situated to "timely adjudicate[]" the DUILA Insolvency Proceedings.  *See id.*  The DUILA Insolvency Proceedings have been ongoing in the Court of Chancery well in advance of the filing of these chapter 11

cases.  Further, the Court of Chancery has extensive experience adjudicating insurance insolvency proceedings under the DUILA.  *See* 18 Del. C. § 5902(a) ("The Court of Chancery shall have original jurisdiction of delinquency proceedings under this chapter, and any court with jurisdiction is authorized to make all necessary or proper orders to carry out the purposes of this chapter.").  Based on the foregoing, the DUILA Insolvency Proceedings can be "timely adjudicated" by the Court of Chancery and, therefore, the sixth mandatory abstention requirement is met here.

40.     "[W]here all six requirements are met, a bankruptcy court must abstain in favor of having the litigation proceed in another forum."  *Longview Pwr.*, 516 B.R. at 294.  Here, all six of the mandatory abstention requirements under section 1334(c)(2) are satisfied and, therefore, the Court must abstain from taking any action that would interfere with the Receiver's ability to exercise his rights and fulfill his obligations in connection with the DUILA Insolvency Proceedings.

**Permissive Abstention under 11 U.S.C. § 1334(c)(1)**

41.     Bankruptcy courts may also abstain from hearing and considering certain matters pursuant to the authority granted in section 1334(c)(1), which provides:

> Except with respect to a case under chapter 15 of title 11, nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

28 U.S.C. § 1334(c)(1).

42.     Bankruptcy courts in this district consider twelve factors when determining whether to abstain under section 1334(c)(1):

(1)     the effect or lack thereof on the efficient administration of the estate;

(2)     the extent to which state law issues predominate over bankruptcy issues;

(3)     the difficulty or unsettled nature of the applicable state law;

(4)     the presence of a related proceeding commenced in state court or other non-bankruptcy court;

(5)     the jurisdictional basis, if any, other than 28 U.S.C. § 1334(c)(1);

(6)     the degree of relatedness or remoteness of the proceeding to the main bankruptcy case;

(7)     the substance rather than form of an asserted "core" proceeding;

(8)     the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court;

(9)     the burden of the court's docket;

(10)    the likelihood that the commencement of the proceeding in a bankruptcy court involves forum shopping by one of the parties;

(11)    the existence of a right to a jury trial; and

(12)    the presence in the proceeding of nondebtor parties.

*Maxus Energy*, 560 B.R. at 124–25.

43.     The twelve permissive abstention factors are not necessarily assigned equal weight.  Instead, "[s]ome factors are more substantial than others, such as the effect of the administration on the estate, whether the claim involves only state law issues, and whether the proceeding is core or non-core under 28 U.S.C. § 157."  *Id.* at 125 (quoting *In re Fruit of the Loom, Inc.*, 407 B.R. 593, 600 (Bankr. D. Del. 2009).

44. The first factor—the "effect or lack thereof on the efficient administration of the [Debtors'] estate"—weighs in favor of abstention because the Ullico Casualty Assets are, by definition, not property of the Debtors' estates. Further, to the extent additional Ullico Casualty Assets are held in accounts classified as "Restricted Accounts" in the Debtors' Cash Management Motion, by the Debtors' own admission, funds held in the Restricted Accounts are *not* property of the Debtors' estates. *See* Cash Management Motion at ¶ 12 ("<u>Restricted Accounts</u>. . . . Payments of premiums from insured customers of the insurance carriers are made directly into the Restricted Accounts, who collect such premiums on behalf of and as agents for the insurance carriers. As a result, these funds are *not property of the Debtors' estates*, although the accounts themselves are property of the estates.") (emphasis added). Thus, even if a dispute regarding ownership of specific Ullico Casualty Assets were to arise, the first factor will weigh in favor of abstention because the effect of the Receiver's pursuit of the Ullico Casualty Assets will not pertain to the administration of the Debtors' estates.

45. The second factor—"the extent to which state law issues predominate over bankruptcy issues"—clearly militates in favor of permissive abstention because insurance insolvency proceedings predominate over bankruptcy issues, especially where there is no possible risk to the Debtors and their buyers of their losing any benefit of bankruptcy law other than loss of a possible windfall. *Maxus Energy*, 560 B.R. at 124. Surely if the Debtors (or the Receiver) find more Ullico Casualty Assets in the Debtors' accounts, there is no reason that bankruptcy law should preclude recovery of the assets and override the Delaware legislature's mandate dictating how insolvent insurance estates are administered. As discussed *supra*, the Receiver requests that the Court abstain from

taking any action that may interfere with the Receiver's authority or obligations in connection with the DUILA Insolvency Proceedings. In other words, the Receiver only seeks abstention by this Court as to those actions based on, arising from, and taken in connection with the DUILA—i.e., Delaware's insurance statute. Here, state law issues predominate over bankruptcy issues.

46. The third factor of courts' permissive abstention analysis evaluates the "difficulty or unsettled nature of the applicable state law." *Id.* As discussed *supra*, the Court of Chancery is uniquely situated to apply the state law at issue here—the DUILA—because the statute's purpose is to administer the estates of insolvent, domestic insurance companies (i.e., entities which are expressly excluded from bankruptcy relief under the Bankruptcy Code). *See* 11 U.S.C. § 109(b)(2); 18 Del. C. § 5902(d) ("Delinquency proceedings pursuant to this chapter shall constitute the sole and exclusive method of liquidating, rehabilitating, reorganizing or conserving an insurer, and no court shall entertain a petition for the commencement of such proceedings unless the same has been filed in the name of the State on the relation of the Commissioner."); *Cohen v. Birrane*, 2017 WL 2709566, at *5 (D. Del. June 23, 2017) ("Delaware has an important state interest in regulating the insurance industry and protecting the interests of policyholders and creditors from delinquent insurers.").

47. The fourth permissive abstention factor assesses "the presence of a related proceeding commenced in state court or other non-bankruptcy court." *Maxus Energy*, 560 B.R. at 124. As discussed *supra*, the DUILA Insolvency Proceedings were commenced on March 11, 2013 and have been ongoing from that date through the date

hereof. Because of the existence of such ongoing proceedings in state court, this fourth factor weighs in favor of abstention.

48. The fifth permissive abstention factor evaluates whether an independent jurisdictional basis for federal court exists beyond section 1334. *Maxus Energy*, 560 B.R. at 124. Here, as discussed *supra*, there is no independent jurisdictional basis outside of section 1334 of the Judicial Code. This factor weighs in favor of abstention.

49. The sixth factor assesses "the degree of relatedness or remoteness" of the state court proceeding to the bankruptcy case. *Id.* Here, the DUILA Insolvency Proceedings are relatively remote from the major components of these chapter 11 cases. Abstaining from considering and ruling upon issues related to and arising from the DUILA Insolvency Proceedings will have no detrimental effect on the administration of the Debtors' estates, including the expected recovery by the Debtors' creditors. Thus, the DUILA Insolvency Proceedings are relatively "remote" from these chapter 11 cases and this factor favors abstention.

50. The seventh factor implores the Court to consider "the substance rather than the form of an asserted 'core' proceeding." *Id.* As discussed *supra*, the DUILA Insolvency Proceedings are non-core proceedings under both tests applied by the Third Circuit. Therefore, this factor favors abstention. *See id.* at 127.

51. The eighth factor assesses "the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court." *Id.* at 124. Again, as discussed *supra*, the DUILA Insolvency Proceedings are non-core proceedings under both tests applied by the Third Circuit. As such, there will unlikely be any "enforcement left to the bankruptcy

court." *Id.* Given the unique nature of the state law proceedings here—insolvency proceedings of a domestic insurance company excluded from relief under the Bankruptcy Code—it is more feasible to allow the Receiver's state law actions and authority to proceed before the Court of Chancery rather than severing a portion of the DUILA Insolvency Proceedings by attempting to resolve the parties' disputes in this Court.

52.     The ninth factor deals with the "burden of the court's docket." *Id.* In November, 2016, this Court reasoned that "in times of significant pressure to the Court's docket, abstention has been favored" and concluded that "[t]his factor favors abstention." *Id.* at 128.     There is no reason to believe that there has been any reduction in the "significant pressure to the Court's docket" between late 2016 and the date hereof. Therefore, this factor likely weighs in favor of abstention. *See id.*

53.     The tenth factor considers "the likelihood that the commencement of the proceeding in a bankruptcy court involves forum shopping by one of the parties." *Id.* at 125.  Issues related to the Ullico Casualty Assets are not independently before the Court, but rather are addressed in this forum in connection with the Debtors' main chapter 11 bankruptcy cases.  Here, the tenth factor weighs neither in favor nor against abstention.

54.     The eleventh factor weighs in favor of abstention where a right to a trial by jury may exist. *Maxus Energy*, 560 B.R. at 125.  Here, this factor weighs neither in favor of nor against abstention.

55.     The twelfth and final factor of the permissive abstention analytical framework considers the presence of nondebtor parties in the state court proceeding. *See id.* Here, the Receiver is the main nondebtor party to a motion to compel accounting, and may be joined or supported by other nondebtor entities,  including  guaranty fund

associations, in the Receiver's efforts to seek turnover of Ullico Casualty Assets. These proceedings will, however, also involve the Debtors. Here, this factor weighs neither in favor of nor against abstention.

### Relief from Automatic Stay and Confirmation Order Discharge

56. Section 362(d) of the Bankruptcy Code provides that the Court "shall grant relief from [the automatic stay under 362(a)] . . . (1) for cause, including a lack of adequate protection of an interest in property of such part in interest; [or] (2) with respect to a stay of an act against property under [section 362(a)], if— (A) the debtor does not have an equity in such property; and (B) such property is not necessary to an effective reorganization." 11 U.S.C. § 362(d).

57. "Cause" is not defined in the Bankruptcy Code and must be determined on a case-by-case basis. *Soliman v. Spencer (In re Spencer)*, 115 B.R. 471 (D. Del. 1990); *see also Izzarelli v. Rexene Prods. Co. (In re Rexene Prods. Co.)*, 141 B.R. 574, 576 (Bankr. D. Del. 1992) (citing *Int'l Bus. Machines v. Fernstrom Storage & Van Co. (Matter of Fernstrom Storage & Van Co.)*, 938 F.2d 731, 735 (7th Cir. 1991)).

58. A rigid test is not to be applied in determining whether there is sufficient "cause." *Am. Airlines, Inc. v. Cont'l Airlines, Inc. (In re Cont'l Airlines, Inc.)*, 152 B.R. 420, 424 (D. Del. 1993). Cause may be established by a single factor such as "a desire to permit an action to proceed . . . in another tribunal." *Rexene Prods.*, 141 B.R. at 574 (citing H.R. REP. No. 95-595, 343–44 (1977), *U.S. Code Cong. & Admin. News* pp. 5787, 6300).

59. This Court has previously applied an equitable balancing test to determine if "cause" exists to lift the automatic stay to allow litigation to go forward in another

forum.  *Rexene Prods.*, 141 B.R. at 576.  Under the equitable balancing test, the Court considers three factors:

> (1)    whether prejudice will be caused to either the bankrupt estate or the debtor as a result of the suit;
>
> (2)    whether the hardship to the movant by maintenance of the automatic stay outweighs the hardship caused to the debtor; and
>
> (3)    whether the movant has a reasonable probability of prevailing on the merits of the suit.

*Id.*

60.    Here, granting the Receiver relief from the automatic stay to allow the Receiver to pursue his rights against one or more Debtor entities in the DUILA Insolvency Proceedings, including the right to compel an accounting and turnover of Ullico Casualty Assets, under the purview of the Court of Chancery would cause no prejudice to the Debtors or to the Debtors' estates.  There is no prejudice or harm to the Debtors because the Debtors have no property interest in Ullico Casualty Assets (and do not claim to have any such interest), were required by the Liquidation Order to provide an accounting, and were required pursuant to the Liquidation Order to turnover Ullico Casualty Assets.  The fact that the Debtors violated the Liquidation Order and continue to do so cannot now be raised as a basis for asserting prejudice against the Debtors.  In contrast, denying relief from the automatic stay would needlessly delay the Receiver's ability to recover the Ullico Casualty Assets and administer the Ullico Casualty estate for the benefit of policyholders.  The first factor of the equitable balancing test weighs in favor of granting the Receiver's request for relief from the automatic stay.

61.     The second factor of the equitable balancing test balances the hardship to the movant by maintenance of the automatic stay against the hardship to the Debtors caused if the stay is lifted.  Here, denial of the Receiver's request for relief from the automatic stay will effectively restrict the Receiver's ability to pursue and administer the Ullico Casualty Assets and proceed with his administration of the Ullico Casualty estate through the DUILA Insolvency Proceedings.  Granting the stay relief requested herein, however, will not affect the Debtors' obligations in connection with the DUILA Insolvency Proceedings.  The second equitable balancing test factor favors granting the Receiver's request for stay relief.

62.     Finally, the third equitable balancing test factor requires consideration of "whether the movant has a reasonable probability of prevailing on the merits of the suit." *Rexene Prods.*, 141 B.R. at 576.  Here, the Receiver is authorized and required, pursuant to the Liquidation Order to "take possession of the property of [Ullico Casualty]."  18 Del. C. §  5911(a).  The Debtors have acknowledged the existence of the Ullico Casualty Account—one of the Debtors' bank accounts under the name of Ullico Casualty which, at one point *after* entry of the Liquidation Order, held approximately $4 million on behalf of Ullico Casualty—which is sufficient for the Receiver to have a "reasonable probability" of successfully obtaining affirmative relief form the Court of Chancery to, at the very least, compel an accounting.   The third factor, therefore, favors granting the Receiver's request for relief from the automatic stay to pursue its rights in connection with the DUILA Insolvency Proceedings.

63.     Because each of the three equitable balancing test factors weigh in favor of granting relief from the automatic stay, the Court should grant the Receiver's request

for relief from the automatic stay so that the Receiver may exercise its rights and fulfill its obligations in connection with the DUILA Insolvency Proceedings.

## NOTICE

64.     Pursuant to Local Rule 4001-1(a), notice of this Motion was served on counsel for the Debtors, counsel for Unsecured Creditors' Committee, the Office of the United States Trustee, all parties requesting service in these cases pursuant to Local Rule 2002, and the Debtors' insurers or their counsel.  The Receiver respectfully submits that no other or further notice is required.

*[Remainder of page intentionally left blank.]*

## CONCLUSION

65.    WHEREFORE, the Receiver respectfully requests that this Court enter an order, substantially in the form attached hereto as **Exhibit A**, (i) granting the Receiver relief from the automatic stay to pursue a complete accounting and turnover of any and all Ullico Casualty Assets that may be in the possession of the Debtors, (ii) abstaining from taking any actions, through confirmation of the Plan or otherwise, that will restrict or otherwise inhibit the Receiver's exercise of its rights, authorities, and duties pursuant to the Liquidation Order, the DUILA, or otherwise in connection with the DUILA Insolvency Proceedings to administer and pursue Ullico Casualty Assets, and (iii) granting such other relief as the Court deems just.

Dated: April 12, 2018          BAYARD, P.A.
       Wilmington, Delaware

                              */s/ GianClaudio Finizio*
                              Neil B. Glassman (No. 2087)
                              Scott D. Cousins (No. 3079)
                              GianClaudio Finizio (No. 4253)
                              Evan T. Miller (No. 5364)
                              600 N. King Street, Suite 400
                              Wilmington, DE 19801
                              Telephone: (302) 655-5000
                              Facsimile: (302) 658-6395
                              Email: nglassman@bayardlaw.com
                                      gfinizio@bayardlaw.com
                                      emiller@bayardlaw.com

                              *Attorneys for The Honorable Trinidad Navarro, Insurance Commissioner of the State of Delaware, as Receiver of Ullico Casualty Company in Liquidation*