IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| Patriot National, Inc., et al. | Case No. 18-10189 (KG) |
| Debtors. | |

Objections Due: April 13, 2018 at 4:00 p.m.[1]
Hearing Date: April 24, 2018 at 11:00 a.m.

**UNITED STATES TRUSTEE'S OBJECTION TO CONFIRMATION OF DEBTORS' THIRD AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION (D.I. 471)**

In support of his objection (the "Objection") to Confirmation Of Debtors' Third Amended Joint Chapter 11 Plan Of Reorganization (D.I. 47l; the "Plan"), Andrew R. Vara, the Acting United States Trustee for Region 3 ("U.S. Trustee"), by and through his undersigned counsel, states as follows:

1. This Court has jurisdiction to hear the above-referenced Objection.

2. Pursuant to 28 U.S.C. § 586, the U.S. Trustee is charged with the administrative oversight of cases commenced pursuant to chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). This duty is part of the U.S. Trustee's overarching responsibility to enforce the bankruptcy laws as written by Congress and interpreted by the courts. *See United States Trustee v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.),* 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that U.S. Trustee has "public interest standing" under 11 U.S.C. § 307, which goes beyond mere pecuniary interest); *Morgenstern v. Revco D.S., Inc. (In re Revco D.S.,*

---

[1] The objection deadline was extended by agreement of the parties to April 18, 2018.

1

*Inc.*), 898 F.2d 498, 500 (6th Cir. 1990) (describing the U.S. Trustee as a "watchdog").

3. Specifically, in accordance with 28 U.S.C. § 586(a)(3)(B), the U.S. Trustee is charged with the duties and obligations to supervise the administration of cases and trustees in Chapter 11 cases, monitoring plans and disclosure statements filed in Chapter 11 cases and filing with the court, in connection with hearings under sections 1125 and 1128, comments with respect to such plans and disclosure statements.

4. Pursuant to 11 U.S.C. § 307, the U.S. Trustee has standing to be heard with regard to the above-referenced Objection.

## BACKGROUND

5. On January 30, 2018 (the "Petition Date"), the Debtors[2] filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Court").

6. On January 30, 2018 the Debtors filed their Joint Chapter 11 Plan of Reorganization and its related Disclosure Statement. (D.I. 15 & 16).

7. On March 14, 2018, the Court entered an order approving the Disclosure Statement. (D.I. 381)

8. On March 30, 2018, the Debtors filed their Third Amended Joint Plan of Reorganization.

---

[2] All capitalized terms not defined herein shall have the meaning ascribed to them in the Plan.

# ARGUMENT

**I.      The Debtor's Releases Must Meet the *Master Mortgage* Standard**

9.      The Plan provides releases by the Debtors and their estates of an extensive list of non-debtor parties (many of whom are not identifiable). The Plan provides:

> As of the Effective Date, except for the rights and remedies that remain in effect from and after the Effective Date to enforce this Plan and the Plan Documents, for good and valuable consideration, the adequacy of which is hereby confirmed including, without limitation, the Released Parties' services and assistance to facilitate the reorganization of the Debtors and the implementation of the Restructuring Transactions, and except as otherwise provided in this Plan, the Plan Documents, or in the Confirmation Order, the Released Parties are deemed forever released and discharged by the Debtors, the Reorganized Debtors, the Plan Administrator, the Litigation Trust, the Litigation Trustee and any Person (including the Committee and the First Lien Agents) holding or seeking to exercise the rights of the Debtors' estates, including, without limitation, any successor to the Debtors or any Estate representative appointed or selected pursuant to Bankruptcy Code Section 1123(b)(3), in each case on behalf of itself and its respective successors, assigns, and representatives and any and all other entities that may purport to assert any Cause of Action derivatively, by or through the foregoing Entities (collectively, the "Releasing Parties"), from any and all claims, interests, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses, remedies, or liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of the Releasing Parties, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity, or otherwise, that any of the Releasing Parties would have been legally entitled to assert in her, his or its own right (whether individually or collectively) or on behalf of the holder of any Claim or Equity Interest or other entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Chapter 11 Cases, the First Lien Credit Agreement, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Equity Interest, the business or contractual arrangements between the Debtors and

any Released Party, the restructuring of any Claim or Equity Interest before or during the Chapter 11 Cases, the Restructuring Transactions, the negotiation, formulation, or preparation of the Disclosure Statement, the Restructuring Support Agreement, the DIP Facility, the Restructuring Transactions, the Exit Facility, the New Term Loan Facility, the Litigation Trust Facility, the Reorganized Debtor Governing Documents, or the Plan (other than the rights of the Debtors, the Committee, the Litigation Trust, the Litigation Trustee and the First Lien Agents to enforce the Plan and the contracts, instruments, releases, indentures, and other agreements or documents delivered thereunder), the solicitation of votes with respect to this Plan, or any other act or omission, transaction, agreement, event, or other occurrence, other than claims or Causes of Action arising out of, or related to, any act or omission of a Released Party that is a criminal act or constitutes intentional fraud, gross negligence, or willful misconduct.

Plan at XI.G.

10. "Released Parties" are defined as:

(a) the Debtors' and the Reorganized Debtors' professionals that were retained in the Chapter 11 Cases, including the Debtors' chief restructuring officer, attorneys, financial advisors, investment bankers, consultants, representatives and other professionals, (b) the First Lien Agents, (c) the First Lien Lenders, (d) the DIP Agent, (e) the DIP Lenders, (f) any professionals of the DIP Agent or DIP Lenders, (g) the members of the Committee and the Committee professionals that were retained in the Chapter 11 Cases, but only in their capacity as such, (h) Conway MacKenzie Management Services, LLC, (i) the Debtors' independent director, and (j) with respect to the Persons identified in clauses (b) through (e), their respective directors, officers, principals, shareholders, partners, employees, members, participants, agents, representatives, attorneys, financial advisors, accountants, investment bankers, consultants, representatives, management companies, fund advisors, other professionals, advisory board members, subsidiaries, affiliates, managed accounts or funds, other advisors, predecessors, successors or assigns, in each case in their capacity as such.

Plan at I.A.121.

11. Pursuant to this Court's decision in *In re Tribune Company*, 464 B.R. 126 (Bankr. D. Del. 2011)(Carey, J.), and *In re Washington Mutual, Inc.*, 442 B.R. 314 (Bankr. D. Del. 2011)(Walrath, J.), among others, the Court should consider the five factors set forth in *In re Zenith Elecs. Corp.*, 241 B.R. 92, 110 (Bankr. D. Del 1999) and *In re Master Mortgage Inv. Fund, Inc.*, 168 B.R. 930, 937-38 (Bankr. W. D. Mo. 1994) to determine whether, notwithstanding § 524(e) of the Code, a plan may provide for releases by debtors of non-debtor entities. See *Tribune,* 464 B.R. at 186; *Washington Mutual*, 442 B.R. at 346; *In re Spansion, Inc.*, 426 B.R. 114, 142-43, n. 47 (Bankr. D. Del 2010)(Carey, J.); *In re Coram Healthcare Corp.*, 315 B.R. 321, 335 (Bankr. D. Del. 2004)(Walrath, J). Those factors are as follows:

  a. identity of interests between debtor and non-debtor releasee, so that a suit against the non-debtor will deplete the estate's resources (e.g., due to a debtor's indemnification of a non-debtor);

  b. substantial contribution to the plan by non-debtor;

  c. necessity of release to the reorganization;

  d. overwhelming acceptance of plan and release by creditors; and

  e. payment of all or substantially all of the claims of the creditors and interest holders under the plan.

*Tribune*, 464 B.R. at 186 (*citing Washington Mutual*, 442 B.R. at 346 (*citing Zenith*, 241 B.R. at 110)). "The factors are neither exclusive nor conjunctive requirements, but simply provide guidance in the Court's determination of fairness." *Id*.

12. In the present case, the list of parties that the Debtors are releasing is extensive. The Debtors have not addressed any of the *Zenith* or *Master Mortgage* factors for each of these

parties being released.  The reasonableness of the Debtor Releases must be evaluated separately with respect to each of the Released Parties to determine if the particular release is appropriate. *See Washington Mutual,* 442 B.R. at 346.  The Debtors have the burden to establish whether the Zenith factors have been met as to each of the non-debtors who are the beneficiaries of the Debtor Releases. Because an evidentiary predicate is necessary to approve the Debtor Releases, the U.S. Trustee reserves argument on this issue until the record at the confirmation hearing is closed.

13. These releases also cannot create non-consensual third party releases.  The definition of "Releasing Parties," includes "any Person (including the Committee and the First Lien Agents) holding or seeking to exercise the rights of the Debtors' estates, including, without limitation, any successor to the Debtors or any Estate representative appointed or selected pursuant to Bankruptcy Code Section 1123(b)(3), in each case on behalf of itself and its respective successors, assigns, and representatives and any and all other entities that may purport to assert any Cause of Action derivatively, by or through the foregoing Entities."  To the extent that this seeks to release claims held by non-debtors against other non-debtors, this is impermissible. *See In re Washington Mutual, Inc.*, 442 B.R. 314, 352 (Bankr. D. Del. 2011) (third party releases must be based on the consent of the third party).

## II. The Plan Cannot Re-Write The Bankruptcy Code

14. Section VIII.E.6. of the Plan provides that holders claims filed after the applicable bar date will not be treated as creditors for purposes of distribution "unless on or before the voting deadline or the confirmation date, as the case may be, such late proofs of claim are deemed timely filed by a final order of the bankruptcy court."

15. Section VIII.M. goes one step further, and automatically disallows and expunges late filed claims and amendments to claims: "On or after the Effective Date, a Claim may not be Filed or amended without prior authorization of the Bankruptcy Court or the Litigation Trustee, as applicable, and any such new or amended Claim Filed without such prior authorization shall be deemed disallowed in full and expunged without any further action."

16. These sections, taken together, require that a creditor receive permission from the Court *before* filing a late claim, mandates that such permission be granted prior to the voting deadline or the confirmation date, and automatically disallows and expunges any such claim.

17. These provisions impermissibly re-write the Bankruptcy Code and eliminate the creditors' rights to notice and an opportunity to be heard. Section 502(a) of the Bankruptcy Code provides that a "claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest . . . objects." Only after an objection, with notice and a hearing, can the claim be disallowed. 11 U.S.C. § 502(b) ("if such objection is made . . . the court, after notice and hearing . . . shall allow such claim . . . except to the extent that . . . (9) proof of such claim is not timely filed, except to the extent tardily filed as permitted under paragraph (1), (2), or (3) of section 726(a) of this title or under Federal Rules of Bankruptcy Procedure . . .").

18. The Plan seeks to re-write these rules, by placing a burden on the creditor to seek pre-approval from the Court to file late claims or amendments, and, if no such pre-approval is sought or obtained, automatically disallow and expunge such claims without objection. A plan cannot be confirmed if it rewrites the Bankruptcy Code. See, 11 U.S.C. § 1129(a); *In re Beyond.com*, 289 Bankr. 138 (Bankr. N.D. CA. 2003).

19. The necessity to file an objection to a claim before its disallowance is a critical process to permit the creditor with notice of the action to be taken, and an opportunity to be heard regarding any objection thereto.

20. It is also not proper notice to include in the Plan a requirement that the creditor file a motion and receive a court order prior to the voting deadline or the confirmation date in order to file a late claim. Here, the voting deadline is April 13, 2018 and the hearing on confirmation is scheduled for April 24, 2018. The bar date for non-governmental creditors is *after* these dates: April 30, 2018. The bar date for governmental entities is even later: July 30, 2018. Creditors cannot be required to file a request and actually receive permission to file a late filed claim as much as 17 days *before* the claims bar date.

21. Furthermore, the inclusion in a proposed plan of an extra requirement not set forth in the Bankruptcy Code regarding claims allowance is not sufficient notice. The Plan is not binding on any creditor until *after* the voting deadline and the confirmation date. In addition, including such a requirement on pages 38 and 40 of a proposed plan, with no notice in the caption of the document that relief is being requested to alter the claims process, is not sufficient or reasonable notice.

22. Finally, there is no harm to the Debtors, the Reorganized Debtors or the Plan Administrator by requiring that an omnibus objection be filed to provide notice to holders of late-filed claim of the request to disallow and expunge their claims. As to late-filed claims filed prior to the commencement of distributions under the Plan, such claims can be treated as Disputed Claims, like any other, and a reservation can be made. Upon disallowance, if ordered, the reserved distribution will be available to other creditors.

**III. In the Event of Any Inconsistency, the Plan Must Control**

23. In Article VI.B.8., the Plan provides, "To the extent that the terms of the Plan with respect to the Litigation Trust are inconsistent with the terms set forth in the Litigation Trust Agreement, then the terms of the Litigation Trust Agreement shall govern."

24. This is inappropriate. The Litigation Trust Agreement was included in the Plan Supplement, and was not filed until March 30, 2018. The Court approved the Disclosure Statement on March 14, 2018.

25. While the Litigation Trust Agreement may contain provisions in addition to, but consistent with, those contained in the Plan, any inconsistencies must be resolved by looking to the Plan. If there are any provisions in the Litigation Trust Agreement that are inconsistent with the Plan and that the Debtors wish to govern, such provisions should be noted to the Court and a record should be established that additional disclosure was not required based on such inconsistency. *See* 11 U.S.C. § 1127(c).

**IV. Reservation**

26. The U.S. Trustee provided additional informal comments to the Debtors regarding the Plan. The U.S. Trustee and the Debtors have agreed to a resolution of those concerns, subject to final documentation. The U.S. Trustee reserves these additional objections.

WHEREFORE the U.S. Trustee requests that this Court issue an order denying the confirmation of the Plan and/or granting such other relief as this Court deems appropriate, fair and just.

Respectfully submitted,

**Andrew R. Vara**
**ACTING UNITED STATES TRUSTEE**

By: /s/ Linda J. Casey
　　　Linda J. Casey
　　　Trial Attorney
　　　J. Caleb Boggs Federal Building
　　　844 King Street, Suite 2207, Lockbox 35
　Wilmington, DE 19801
　　　(302) 573-6491
　　　(302) 573-6497 (Fax)

Dated: April 18, 2018