# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT FOR DELAWARE

| | |
|---|---|
| In re<br><br>PATRIOT NATIONAL, INC., et al.,<br><br>Debtors. | Chapter 11<br><br>Case Nos. 18-10189 (KG)<br>Jointly Administered<br><br>Hearing Date: April 24, 2018 (11:00 a.m.)<br>Objection Deadline: April 18, 2018 (noon)<br>  (by extension)<br><br>Re: Dkt. No. 471 |

## LIMITED OBJECTION OF CERTAIN AIG MEMBER COMPANIES TO DEBTORS' THIRD AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION

National Union Fire Insurance Company of Pittsburgh, Pa. and AIG Specialty Insurance Company, together with any other subsidiary of American International Group, Inc. that engaged in the business transactions with Debtors described herein (collectively, "AIG Companies"), including AIG Companies that are parties to any contracts identified by Debtors as contracts to be assumed under the Debtors' Third Amended Joint Chapter 11 Plan of Reorganization (the "Plan"), by and through their undersigned counsel, hereby submit this objection (the "Objection") to the Plan and to the proposed assumption of certain contracts under the Plan, and respectfully state as follows:

## BACKGROUND

1. On January 30, 2018 (the "Petition Date"), Debtor Patriot National, Inc., along with certain affiliated entities (collectively, the "Debtors"), filed voluntary petitions for relief pursuant to Chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court" or the "Court").

2. The Debtors allege that they are operating their business and managing their properties as debtors in possession pursuant to Bankruptcy Code §§ 1107(a) and 1108.

3. AIG Companies have provided and, to a limited extent, continue to provide certain insurance transactions and services to the Debtors pursuant to certain contracts and/or agreements with the Debtors.

## RELATIONSHIP WITH THE DEBTORS

4. Various Debtor entities have acted and, to a limited extent, continue to act as an insurance broker, insurance producer, reinsurer and claim servicer in connection with AIG Companies' policies.

5. In February 2015, Patriot Underwriters, Inc. began acting as insurance broker and producing certain workers compensation policies for AIG Companies.

6. Effective as of December 30, 2016, AIG Companies entered into a reinsurance agreement with Old Guard Re, SPC ("Old Guard"). Old Guard is a Patriot-owned reinsurance company and not a Debtor. Under this program, a portion of liabilities under certain workers compensation policies were ceded to Old Guard whereby Old Guard reinsured a portion of each loss.

7. Patriot Risk Services, Inc. ("PRS") was a claim adjuster for certain AIG Companies' coverage since 2015. This relationship was terminated before the Petition Date. Since then, AIG Companies have undertaken to adjust open claims previously adjusted by PRS.

## ASSUMPTION OF CONTRACTS

8. As set out in paragraph 13 below, on March 30, 2018, Debtors filed their Plan Supplement which lists certain purported AIG Companies contracts to be assumed under the Plan. AIG Companies submit that this list does not adequately identify AIG Company contracts to be assumed and, further, are advised that this list is likely to be amended.

## TRUST FUND ("PASS-THROUGH") OBLIGATIONS

9. Debtors have been and continue to be obligated to hold "[a]ll premiums, return premiums, or other funds belonging to insurers or others received" by them as an "agent, insurance agency, customer representative, or adjuster" in trust in a

fiduciary capacity. Fla. Ins. Code §626.561; <u>Barrett v. Clarendon Nat'l Ins. Co.</u>, 1999 U.S. Dist. LEXIS 4223 (N.D. Tex., March 26, 1999) (confirms that Fla. Ins. Code §626.561 establishes a trust fund obligation). The law is substantially similar throughout the United States.

10. In recognition of this obligation, the Debtors have requested, and the Court has entered three consecutive Orders (D.I. 55, 316, 537) confirming that Pass Through accounts shall be maintained and continued in force. As the Debtors asserted in their original motion to maintain such accounts:

> The Pass-Through Account represents property "in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest" as contemplated by section 541(d) of the Bankruptcy Code. See 5 Henry J. Sommer & Alan N. Resnick, Collier on Bankruptcy, 541.29 (16th ed. 2017) ("Subsection (d) ...reiterates the general principle that an interest that is limited in the hands of the debtor is equally limited in the hands of the estate, and therefore, where the debtor holds bare legal title without any equitable interest, the estate acquires bare legal title without any equitable interest in the property."). (Docket number 12, p. 6.)

11. While the Pass-Through Orders provide a measure of assurance that such trust fund moneys will be protected, the Plan does not explicitly continue protection for such funds after the Plan is confirmed and effective.

12. Accordingly, AIG Companies request that the Confirmation Order include the following provision to continue to protect trust funds held by the Debtors:

In accordance with Fla. Ins. Code §626.561, and similar statues in other applicable states, all premiums, return premiums, or other funds received by any of the debtors from or on-behalf-of insureds for the account of any of the AIG Companies in their capacity as insurers of such insureds, (i) are trust funds being held in a fiduciary capacity by the Debtors (or the Reorganized Debtors, as may be applicable, (ii) shall remain in trust after the confirmation of the Plan, and (iii) the AIG Companies shall be entitled to recover such funds after confirmation of the Plan in the ordinary course of business.

## OBJECTION CONCERNING
## PROPOSED ASSUMPTION OF EXECUTORY CONTRACTS

13. Debtors have proposed in their Plan Supplement (D.I. number 473) to assume the following AIG Company contracts:

| **Plan Supplement PDF Page** | **Row No.** | | | **Proposed Cure** |
|---|---|---|---|---|
| 280 | 164 | AIG Specialty Ins Co | Claims Made Policy- Insurance Agents and Brokers Professional Liability Policy | $0 |
| 280 | 165 | AIG Specialty Ins Co | Employment Practices Liability Insurance | $0 |
| 286 | 215 | National Union | Service Provider Agreement | $0 |
| 294 | 298 | AIG Specialty Ins Co | Producer Agreement | $0 |

5

14. This list, however, does not provide sufficient information to identify and to consider such assumption requests, and, moreover, Debtors have indicated that this list is likely to be amended.[1]  For this reason, and given the very short time available, AIG Companies request that the following provision be added to the Confirmation Order to resolve this issue for AIG Companies:

> Notwithstanding that certain purported contracts with the AIG Companies are listed on the Plan Supplement as purported executory contracts that the Debtors propose to assume with a cure of zero, within ninety days of the Effective Date of the Plan:  (i) should it be discovered that the Debtors are in breach of such contract at the time of assumption or that a cure amount is due at such time, the AIG Companies shall be allowed to enforce the contract in accordance with its terms unless the Debtors then elect to rescind the assumption of such contract and reject it, and (ii) should such contract be deemed a personal service or other contract that is not permitted to be assumed over the objection of the non-debtor party, the applicable AIG Company shall have the right to contend that the assumption was improper and should be rescinded.

15. Without such language in the Confirmation Order, the proposed assumption of AIG Companies contracts is unreasonable and deficient because:

- Debtors, not AIG Companies, have the burden of proving any cure amount.

---

[1] When asked for copies of the above four contracts, Debtors counsel advised that certain of these contracts (nos. 164 and 165) had expired and should be removed from the list.  Debtors have thus far been unable to provide a copy of number 298.  In short, it is entirely unclear what Debtors propose, and for that reason also, the assumption of AIG Company contracts should be denied.

- Debtors fail to show "adequate assurance" of future performance arising from the underwriting risks inherent in insurance coverage.

- AIG Companies contracts are personal service contracts with on-going risk and may not be assumed and assigned without the consent of the AIG Companies.

- AIG Companies have inadequate information upon which to consent or object to the assumption of their policies, and for the time being, do not consent to the assignment or assumption of their policies.

- AIG Companies reserve the right to object to any claim asserted under these policies subsequent to any assignment of the contracts without prior written consent.

## ARGUMENT

**A.     Cure Must Be Shown with Particularity.**

16.     Superficially, a debtor might contend that its insurer, as counter-party to an insurance contract, should be equally informed about cure issues. However, given the nature of insurance contracts, the opposite is true.

17. Insurance is often about facts and events known to the insured. An insurance carrier often has secondary knowledge, or no knowledge at all, until the insured informs the carrier of pertinent facts.

18. For example, often the initial obligation of an insured to an insurer is to report "exposures" (i.e., amounts of payrolls, sales and/or risk units such as trucks or automobiles) to its insurer for the purpose of assessing premium. Secondly, an insured must often report facts, events and circumstances related to risk or to loss to its insurer. Either of these types of fact are, of course, known only to the insured until the insured reports it to its insurer.

19. Thus, an insurance company cannot be expected to know whether there has been a default in any such obligation.

20. The Debtors have not submitted any declarations or affidavits indicating that after reasonable inquiry they are not aware of any claims or facts that could give rise to a claim of default or to any cure claim. In this case, with no evidentiary showing, Debtors merely offer the naked statement that their cure amount to AIG Companies is zero for the AIG Companies contracts.

21. Section 365 of the Bankruptcy Code sets forth the conditions upon which a debtor may assume an executory contract:

> (b)(1) If there has been a default in an executory contact or unexpired lease of the debtor, the trustee may not

assume such contact or lease unless, at the time of assumption of such contact or lease, the trustee-

(A) cures or provides adequate assurance that the trustee will promptly cure such default;

(B) compensate or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting form such default...

22. Rule 9013 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") states that: "A request for an order ... shall be by written motion, unless made during a hearing. The motion shall state with **particularity the grounds therefor**, and shall set forth the relief or order sought." (Emphasis added.)

23. By failing to provide any substantiation to its determination that each AIG Company contract is not subject to default or otherwise deserving of a cure amount of zero dollars, the Debtors are clearly failing to abide by the substantive and procedural requirements of Section 365 and F.R.B.P. 9013.

24. By way of analogy, *Bankruptcy Rule 6006(a)* provides that a proceeding to assume or reject a lease is governed by Bankruptcy Rule 9014. Rule 9014 states that relief shall be requested by motion, with reasonable notice and opportunity for a hearing afforded to the opposing party. Under FRBP, a motion must "state with particularity the grounds therefor, and . . . set forth the relief or order sought." Bankruptcy Rule 9013. <u>Sea Harvest Co. v. Riviera Land Co.</u>, 868 F.2d 1077,

1079 (9th Cir. 1989) (Finding that generalized commitment to maintain leases was not enough to satisfy § 365(b)(1)).

25. It is the burden of a debtor, when making a Notice to Assume under § 365, to state accurately and with particularity, not only what insurers' contracts are to be assumed but to state the facts that show the cure amounts asserted for each contract.

26. The Debtors have not met this burden.

27. At the very least, the Debtors should be required to certify that they are not aware of any amounts owing or of any facts that would give rise to any default or cure amounts owed. Additionally, the Plan should require that the Reorganized Debtor indemnify the Debtors for such certifications and be responsible for reimbursing AIG Companies for damages in the event that the Debtors knew or upon reasonable inquiry should have known that such certifications were incorrect.

**B.** **Debtor's Must Also Establish Adequate Assurance of Future Performance.**

28. AIG Companies are entitled to an evidentiary showing of adequate assurance of future performance. To an insurer, this includes a showing that the risks insured – including the propensity to maintain safe operations and safe procedures – has not changed. There is no such showing here.

29. The Debtors also show nothing about the risk or risk adverse nature of the management of buyer, nor is there any showing of the buyer's loss experience. Is the risk to be assured the same or not? No showing is made. <u>Cinicola v. Sharffenberger,</u> 248 F.3d 110, 120 (3rd Cir. 2001) ("Before an executory contract may be assigned, the trustee first must assume the contract and "adequate assurance of future performance" of the contract must be provided. *11 U.S.C. §§ 365(f)(2)(A), (B)*.

30. No such assurance is provided.

**C.** **<u>AIG Companies Do Not Consent to Assignment</u>.**

31. With the inadequate information provided thus far, AIG Companies do not consent to any assignment of their contracts.

**D.** **<u>AIG Companies Reserve All Rights</u>.**

32. Under the circumstance, where applicable, AIG Companies reserve all rights to reject any claims asserted under the contracts if assigned.

**E.** **Fundamental Fairness and Due Process Demand That The AIG Companies Be Given Reasonable Notice And Discovery To Assess The Proposed Assumption.**

33. As noted above, facts pertinent to "cure" are often known only to the Debtors.

34. The Supreme Court, in a property forfeiture case, emphasized the due process requirement of proper notice to an individual whose property rights are at stake:

> The right to prior notice and a hearing is central to the Constitution's command of due process. "The purpose of this requirement is not only to ensure abstract fair play to the individual. Its purpose, more particularly, is to protect his use and possession of property from arbitrary encroachment -- to minimize substantively unfair or mistaken deprivations of property . . . ."
>
> U.S. v. James Daniel Good Real Prop., 510 U.S. 43, 53 (1993). See also, Lankford v. Idaho, 500 U.S. 110, 126 (1991) ("Common justice requires that no man shall be condemned in his person or property without notice and an opportunity to make his defense"; In a variety of contexts, our cases have repeatedly emphasized the importance of giving the parties sufficient notice to enable them to identify the issues on which a decision may turn.") (Internal citations omitted.)

35. This standard has not been met. See, In re Analytical Systems, Inc., 71 B.R. 402 (Bankr. N.D. Ga. 1987) ("The underlying purpose of incorporating Federal Rules of Procedure into contested matters is to provide due process protections to all parties of a dispute even though it does not rise to the status of a formal adversary proceeding.")

## **CONCLUSION**

**Trust Funds.** The Debtors received certain funds in trust in a fiduciary capacity pursuant to Fla. Ins. Code §626.561. While the Pass-Through Orders provide

for protections of these trust fund moneys, the Plan and Confirmation Order should made clear that such trust obligations shall continue post-confirmation.

**Assumption and Cure.** The Debtors have failed to meet their obligation to show that assumption is proper, and also have failed to show that cure may be set at zero dollars. Indeed, Debtors have even failed to show with clarity which AIG Company contracts they wish to assume.

Dated: April 20, 2018

ARCHER & GREINER, P.C.,

By: */s/ Alan M. Root*
David W. Carickhoff (DE 3715)
Alan M. Root (DE 5427)
300 Delaware Avenue, Suite 1100
Wilmington, Delaware 19801
(302) 777-4350
dcarickhoff@archerlaw.com

ZEICHNER ELLMAN & KRAUSE LLP
Michael S. Davis, Esq.
1211 Avenue of the Americas
New York, New York 10036
(212) 223-0400
mdavis@zeklaw.com

Attorneys for AIG Companies

954051.v2