# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re* <br> **PATRIOT NATIONAL, INC., *et al.*,**[1] <br> Debtors. | Chapter 11 <br> Case No. 18-10189 (KG) <br> (Jointly Administered) <br> Re: D.I. 93, 256 <br> **Hearing Date: May 15, 2018 at 2:00 p.m.** <br> **Objection Deadline: May 8, 2018 at 4:00 p.m.** |

### DEBTORS' MOTION FOR AN ORDER (I) EXTENDING THE TEMPORARY STAY OF LITIGATION OF CLAIMS AGAINST THE DEBTORS' DIRECTORS AND OFFICERS AND (II) DETERMINING THAT THE DEBTORS HAVE SATISFIED ALTERNATIVE DISPUTE RESOLUTION REQUIREMENTS UNDER THE DEBTORS' DIRECTORS AND OFFICERS INSURANCE POLICIES

The debtors and debtors-in-possession in the above-captioned cases (the "Debtors"), hereby move (the "Motion") for entry of an order in furtherance of this Court's *Order Pursuant to 11 U.S.C. §§ 362 and 105 and Local Rules 9019-3 and 9019-5 (I) Compelling Mediation of Claims Against the Debtors' Directors and Officers and (II) Temporarily Staying Related Litigation* (the "Mediation Order") (Docket No. 256), pursuant to section 105(a) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019-5 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of

---

1. The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtors' federal tax identification number, are: Patriot National, Inc. (1376), Patriot Services, LLC (1695); TriGen Insurance Solutions, Inc. (2501); Patriot Captive Management, LLC (2341); Patriot Underwriters, Inc. (0045); TriGen Hospitality Group, Inc. (6557); Patriot Risk Consultants, LLC (0844); Patriot Audit Services, LLC (5793); Patriot Claim Services, Inc. (9147); Patriot Risk Services, Inc. (7189); Corporate Claims Management, Inc. (6760); CWIBenefits, Inc. (0204); Forza Lien, LLC (7153); Contego Investigative Services, Inc. (0330); Contego Services Group, LLC (0012); Patriot Care Management, LLC (2808); Radar Post-Closing Holding Company, Inc. (2049); Patriot Technology Solutions, LLC (6855); and Decision UR, LLC (1826). The Debtors' headquarters are located at 401 East Las Olas Boulevard, Suite 1650, Fort Lauderdale, Florida 33301.

Delaware (the "Local Rules") (i) extending the temporary stay of litigation against the Debtors' current and former officers and directors for an additional sixty (60) days to further the mediation of certain claims required pursuant to the Mediation Order (the "Mediation") and (ii) determining that the Debtors have satisfied the requirement in the Debtors' directors and officers insurance policies (the "D&O Policies") that any disputes arising in connection with such policies be submitted to an alternative dispute resolution process. In support of the Motion, the Debtors respectfully submit as follows:

## PRELIMINARY STATEMENT

1. On April 18 and 19, 2018, pursuant to the Mediation Order, a two-day mediation session was held with respect to all claims that may be covered under the D&O Policies and any claims against Cerberus Business Finance, LLC, the administrative agent under the Debtors' prepetition secured financing facility (the "Prepetition Agent"). As required by the Mediation Order, the Debtors, the insurers under the D&O Policies (the "Insurers"), the Prepetition Agent, the Official Committee of Unsecured Creditors (the "Committee"), and the plaintiffs and defendants in the actions listed on Exhibit 1 to the Mediation Order (the "Prepetition Litigants") all participated in the Mediation session. While the parties did not reach a mediated resolution after the two-day session, the Debtors remain optimistic that, if given sufficient time, the parties can reach a resolution acceptable to all parties through the Mediation.

2. At the time this Court entered the Mediation Order, the Court stated:

> I think that the ninety days that was suggested is appropriate. And if a party wishes to have more, if the mediation is becoming successful and you need a little bit more time, of course I would be willing to extend the stay.

*See* Feb. 28, 2018 Hr'g Tr. 144:8-12. Now, fifty-seven days in to the ninety-day stay, the Debtors believe that the Mediation can be successful if the parties are given sufficient time to

schedule additional mediation sessions and continue the work towards reaching a resolution that was started in the initial sessions. Due to the practical reality of coordinating the numerous necessary parties to the Mediation, the mediator may not be able to schedule additional mediation sessions before the May 29, 2018 expiration of the current stay. If the stay is not extended, the Prepetition Litigants will likely resume their race to get the first bite at the proceeds of the D&O Policies. Indeed, oral argument in the actions filed by Hudson Bay Master Fund Ltd. is scheduled for May 31, 2018—just two days after the temporary stay currently in effect expires. Absent the relief requested in this Motion, the parties to the Hudson Bay action will likely divert their attention (and litigation costs) to preparation for oral argument rather than continuing discussions in furtherance of settlement.

3. The Debtors further seek an order determining that, in the event the Mediation terminates without a resolution, the Debtors have satisfied the requirement in the D&O Policies that all disputes and differences arising under or in connection with the D&O Policies be submitted to an alternative dispute resolution ("ADR") process. By participating in prepetition mediations and the court-ordered Mediation without objection, the Insurers have waived any right to require strict compliance with technical procedural requirements in the ADR provisions of the D&O Policies. Requiring the Debtors to submit to a duplicative additional ADR process if the Mediation is not ultimately successful would be expensive, time-consuming, and an egregious elevation of form over substance.

4. Accordingly, the Debtors respectfully request that the Court enter the proposed order (i) extending the temporary stay of prepetition litigation by sixty (60) days to permit the Mediation to proceed without distraction and (ii) determining that, in the event the

3

Mediation is terminated without a resolution, the Debtors satisfied the ADR requirements under the D&O Policies.

## JURISDICTION AND VENUE

5. The Court has jurisdiction over this Motion under 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference of the United States District Court for the District of Delaware*, dated as February 29, 2012. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors confirm their consent pursuant to Local Rule 9013-1(f) to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution. Venue of this proceeding and this Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

6. The statutory and rule bases for the relief requested herein are section 105 of the Bankruptcy Code and Local Rule 9019-5.

## BACKGROUND

### A. The Debtors' Chapter 11 Cases

7. On January 30, 2018 (the "Petition Date"), the Debtors commenced their bankruptcy cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases").

8. On February 16, 2018, the United States Trustee for Region 3 appointed an Official Committee of Unsecured Creditors (Docket No. 118) (the "Committee"). No trustee or examiner has been appointed in these Chapter 11 Cases. The Debtors are operating their respective businesses as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

9. The events leading up to the Petition Date are set forth in the *Declaration of James S. Feltman, Chief Restructuring Officer of Patriot National, Inc., in Support of First Day Relief*, filed on January 30, 2018 (Docket No. 4) and which is incorporated herein by reference.

10. On April 20, 2018, the Debtors filed the *Debtors' Fourth Amended Joint Chapter 11 Plan of Reorganization* (Docket No. 632) (the "Plan"). Pursuant to the Article X of the Plan, following entry of the order confirming the Plan and effectiveness of the Plan, this Court shall retain exclusive jurisdiction over all matters arising out of, and related to, the Chapter 11 Cases to the fullest extent permitted by law.

### B. Prepetition Mediations

11. Before commencing these Chapter 11 Cases, in September 2017, the Debtors, the Insurers, and certain of the Prepetition Litigants participated in two mediations: (i) a mediation conducted by mediator Robert Meyers and (ii) a mediation conducted jointly with Robert Meyers and mediator David Brodsky (the "Prepetition Mediations").[2] The Debtors were represented at the Prepetition Mediations by counsel approved by and paid for by the Insurers pursuant to the D&O Policies.

12. The parties to the Prepetition Mediations were unable to reach a mediated settlement, in part, because the Insurers disputed that certain of the claims asserted by the Prepetition Litigants were covered under the D&O Policies. Following the Prepetition Mediations, the Debtors' insurance counsel wrote a 14-page letter to the Insurers and their

---

2. The Prepetition Mediations addressed claims asserted in the following actions, all of which are temporarily stayed and directed to the Mediation pursuant to the Mediation Order: *CVI Investments, Inc. v. Patriot National, Inc.*, Case No. 16-cv-02787-GBD-RLE (S.D.N.Y.); *Hudson Bay Master Fund Ltd. v. Patriot National, Inc. & Steven Mariano*, Case No. 16-cv-02767–GBD-RLE (S.D.N.Y.); *Hudson Bay Master Fund, Ltd. v. Del Pizzo, et al.*, Case No. 17-cv-6204 (S.D.N.Y.); *Henry Wasik v. Steven M. Mariano, et al.*, Case No. 12953-VCL (Del. Ch.); and *Wasik v. Patriot National, Inc.*, Case No. 2017-0581 (Del. Ch.).

counsel to summarize the Debtors' arguments that the D&O Policies provide coverage for the actions that were the subject of the Prepetition Mediations.

### C. Court-Ordered Mediation

13. Shortly after commencing the Chapter 11 Cases, the Debtors filed a motion seeking the Mediation Order.[3] Although the Prepetition Mediations were unsuccessful, the Debtors believed that a court-directed mediation could be successful due to the changed landscape resulting from the commencement of the Chapter 11 Cases and Insurer's support for the Mediation.[4]

14. On February 28, 2018, this Court entered the Mediation Order, directing the Debtors, the Prepetition Agent, the Insurers, the Committee, and the Prepetition Litigants to participate in the Mediation with respect to all claims that may be covered under the D&O Policies and any claims against the Prepetition Agent. The Mediation Order provided that Local Rule 9019-5 governed the conduct and all aspects of the Mediation.

15. Robert Meyers, an experienced JAMS mediator familiar with the prepetition actions and the Prepetition Mediations, was selected as the mediator for the Mediation. The mediator scheduled a two-day mediation in New York on April 18 and 19, 2018. At the close of the two-day mediation session, the parties had not yet reached a global resolution of the claims subject to the Mediation. The Debtors, however, remain optimistic that, if given

---

3. *See* Motion to (I) Compel Mediation of Claims Against the Debtors' Directors and Officers and (II) Temporarily Stay Related Litigation Pending the Outcome of Mediation (Docket No. 93) (the "Mediation Motion").

4. *See* Debtors' Reply in Further Support of Motion to (I) Compel Mediation of Claims Against the Debtors' Directors and Officers and (II) Temporarily Stay Related Litigation Pending the Outcome of Mediation (Docket No. 179) (the "Mediation Reply"), ¶ 7 n.9.

additional time to participate in further mediation sessions, a mediated resolution remains possible.

16. Pursuant to the Mediation Order, this Court retained jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation or enforcement of the Mediation Order.

### D. The ADR Requirement in the D&O Policies

17. For the period January 16, 2016 through January 16, 2017, (i) $50 million of coverage follows form to the primary policy issued by National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union") attached to this Motion as **Exhibit A** (the "2016 Primary Policy") and (ii) the remaining $10 million of coverage follows the policy issued by Everest National Insurance Company (the "2016 Excess Policy") attached to this Motion as **Exhibit B**. For the period January 16, 2017 through January 16, 2018, (i) $40 million of coverage follows form to the primary policy issued by National Union attached to this Motion as **Exhibit C** (the "2017 Primary Policy," and together with the 2016 Primary Policy, the "Primary Policies") and (ii) the remaining $30 million of coverage follows the excess policy issued by Westchester Fire Insurance Company attached to this Motion as **Exhibit D** (the "2017 Excess Policy").

18. The ADR provisions of the Primary Policies are substantially similar. Both of the Primary Policies provide that disputes under the policies must be submitted to an ADR process:[5]

---

5. The 2016 Excess Policy and 2017 Excess Policy do not require submission to an ADR process. Clause 5 of the 2017 Excess Policy provides for non-binding mediation or non-binding arbitration only if requested by the insureds. The 2016 Excess Policy does not provide for ADR procedures.

7

> All disputes or differences which may arise under or in connection with this policy, whether arising before or after termination of this policy, including any determination of the amount of Loss, shall be submitted to an alternative dispute resolution (ADR) process as provided in this clause.

*See* Primary Policies; Clause 12(F)(1). Patriot National, Inc. ("<u>PNI</u>") has the right under the Primary Policies to choose the type of ADR process—either mediation or arbitration:

> [PNI] may elect the type of ADR process discussed below; provided, however, that absent a timely election, the Insurer may elect the type of ADR. In that case, [PNI] shall have the right to reject the Insurer's choice of the type of ADR process at any time prior to its commencement, after which, the Insured's choice of ADR shall control.

*Id.* In the event PNI chooses mediation, the Primary Policies provide for a mandatory "waiting period" for commencing litigation after the termination of a mediation:

> In the event of mediation, either party shall have the right to commence a judicial proceeding; provided, however, that no such judicial proceeding shall be commenced until the mediation shall have been terminated and at least 60 days shall have elapsed from the date of the termination of the mediation.

*Id.*

19. The Primary Policies provide certain guidelines for mediation of disputes under the policies:

   a. "The Insurer and PNI shall mutually consent to . . . a single mediator;"

   b. "The . . . mediator must be disinterested and have knowledge of the legal, corporate management, or insurance issues relevant to the matters in dispute;"

   c. "In considering the construction or interpretation of the provisions of this policy, the mediator . . . must give due consideration to the general principles of the law of [Delaware];"

   d. "Either choice of ADR process shall be commenced in the state of Florida;"

   e. "[PNI] shall act on behalf of each and every Insured under this [ADR Clause];" and

> f. "In all other respects, the Insurer and [PNI] shall mutually agree to the procedural rules for the mediation or arbitration. In the absence of such an agreement, after reasonable diligence, the . . . mediator shall specify commercially reasonable rules."

*Id*.

20. On April 23, 2018, National Union wrote to the Debtors to state its position that neither the Prepetition Mediations nor the Court-ordered Mediation satisfy the ADR provisions under the Primary Policies because (i) the mediation sessions took place in New York, rather than Florida and (ii) the Mediation Motion did not expressly mention any "dispute or difference" with respect to the D&O Policies or expressly indicate that the Debtors were invoking the ADR clause. Remarkably, National Union further asserts that it is not aware of any disputes or differences regarding the D&O Policies, notwithstanding the Debtors' voluminous prepetition correspondence to the Insurers, including National Union, addressing coverage arguments asserted by the Insurers following the Prepetition Mediations.

21. If the requested relief is not granted, the Debtors may be precluded from commencing a judicial proceeding until they engage in a further, duplicative ADR process to address the same issues addressed by the initial Prepetition Mediations and the Mediation directed by this Court.

## BASIS FOR RELIEF

### I. THE COURT SHOULD EXTEND THE TEMPORARY STAY TO PERMIT THE MEDIATION TO CONTINUE.

22. The Court should extend the temporary stay granted in the Mediation Order by sixty (60) days to promote the possibility of a successful outcome through the Mediation. If the stay is permitted to expire before the Mediation is concluded, the Prepetition Litigants would likely focus their efforts on litigating their claims to judgment, rather than

continuing to focus on a mediated resolution of their claims. As this Court recognized in granting the Mediation Order, a successful mediation would save all parties and the courts time, money, and resources and enhance potential recoveries for creditors and investor plaintiffs who have claims covered by the D&O Policies.

23. The Prepetition Litigants will not be prejudiced by extension of the temporary stay. Because the stay will continue to preserve the D&O Policies from depletion, the insurance proceeds will continue to be available if the Mediation were to fail. The potential upside of extending the stay—resolution of the pending litigation—far exceeds any detriment of a sixty (60) day delay.

## II. THE COURT SHOULD ENTER AN ORDER IN FURTHERANCE OF THE MEDIATION ORDER DETERMINING THAT THE DEBTORS HAVE SATISFIED THE ADR REQUIREMENTS UNDER THE PRIMARY POLICIES.

24. The Primary Policies require that the parties submit any disputes to an ADR process prior to commencing a judicial proceeding (*see supra* ¶¶ 16-17). Here, by participating in the Prepetition Mediations and the Mediation directed by this Court's Mediation Order, the Debtors have satisfied the ADR requirement and, in the event the Mediation is terminated without a resolution, the Debtors should be permitted to commence a judicial proceeding to resolve disputes under the D&O Policies without undergoing a duplicative ADR process.

25. Each of the Insurers, including National Union, were served a copy of the Debtors' motion.[6] None of the Insurers interposed any objection to the Debtors' Mediation Motion, including the application of Local Rule 9019-5 to the Mediation. Indeed, the Insurers

---

6. *See* Affidavit of Service (Docket No. 107).

*supported* the Mediation.[7] By participating in the Mediation without objection, the Insurers waived their right to require strict compliance with the ADR procedures. *See Allied World Surplus Lines Ins. Co. v. Blue Cross & Blue Shield of S.C.*, No. CV 3:17-903-RMG, 2017 WL 3328230, at *2 (D.S.C. Aug. 3, 2017) (noting that the court previously ruled that the insurers waived strict compliance with ADR procedures similar to those found in the Primary Policies when the insurers voluntarily mediated the dispute without complying with the procedural requirements set forth in the policies).

26. National Union's argument that the Mediation does not satisfy the ADR requirements in the Primary Policies because it is not aware of any disputes under the D&O Policies is belied by the fact that, in September 2017, the Debtors' counsel sent the Insurers a 14-page letter responding to coverage arguments asserted by the Insurers. Accordingly, at the time the Debtors filed the Mediation Motion five months later in February 2018, the Insurers were undoubtedly aware that there were "disputes or differences" arising "under or in connection with" the D&O Policies. And the Debtors were clear in the Mediation Motion that they anticipated that any mediated settlement would likely be funded by proceeds of the D&O Policies.[8] Accordingly, the Insurers cannot now claim that they were unaware that the coverage disputes discussed five months earlier would be a major subject of the Mediation.

27. The Mediation satisfies the guidelines for mediation set forth in the Primary Policies in all but one respect: it was not commenced in Florida. The Insurers did not

---

7. *See* Mediation Motion ¶ 2 ("The Debtors have been informed that the Insurers and the Prepetition Agent support mediation of the Claims."); *see also* Reply ¶ 7 n.9 ("Significantly, the Insurers—the parties likely to fund any mediated settlement—support the mediation.").

8. *See, e.g.,* Mediation Motion ¶ 3 (stating that the proceeds of the D&O Policies may provide meaningful recoveries to the Debtors' creditors and other stakeholders); ¶ 20 (stating that the mediation would streamline the potential resolution of the distribution of proceeds of the D&O Policies); ¶ 23 (stating that the proceeds of the D&O Policies may be the only source of recovery for the Debtors' estates); *see also* Mediation Reply ¶ 11.

object to holding the mediation sessions in New York, rather than Florida.[9] The Insurers should not be permitted to now argue, *after* substantial time and resources have been expended in *two* mediations, that the Debtors must engage in a *third* duplicative ADR process to satisfy technical and procedural formalities in the D&O Policies.

28. Moreover, requiring the Debtors to engage in a duplicative ADR process would be inconsistent with Local Rule 9019-5, which expressly governs the Mediation. Local Rule 9019-5(h) requires that, "[i]f the mediation conference does not result in a resolution of all of the disputes in the assigned matter, the matter shall proceed to trial or hearing under the Court's scheduling orders." Requiring, instead, that the parties engage in an additional duplicative ADR process would be inconsistent with this Court's Mediation Order and the Local Rules of this Court.

29. Finally, engaging in a duplicative ADR process would serve no purpose other than to delay recoveries under the D&O Policies. If the parties are unable to resolve their disputes in the Mediation ordered by this Court—the second attempt to mediate the disputes—there is no reason to believe that a further ADR process with a new mediator or arbitrator will be more successful.

30. Accordingly, in furtherance of this Court's order directing the Insurers and the Debtors to mediate, the Debtors request an order clarifying that the Mediation satisfies the ADR provisions in the Primary Policies.

---

9. Pursuant to Local Rule 9019-5, which governs the Mediation, the time and place of the mediation conference was to be scheduled by the mediator after consultation with the parties. *See* Local Rule 9019-5(c)(1). Accordingly, following discussion among the parties to the Mediation, the mediator scheduled the mediation session in New York.

**RESERVATION OF RIGHTS**

31. Nothing contained herein is or should be construed as: (a) an admission as to the validity of any claim against the Debtors; (b) a waiver of the Debtors' rights to dispute any claim on any grounds; (c) a promise to pay any claim; (d) an assumption or rejection of any executory contract or unexpired lease pursuant to section 365 of the Bankruptcy Code, or (e) otherwise affect the Debtors' rights under section 365 of the Bankruptcy Code to assume or reject any executory contract with any party subject to this Motion.

**NOTICE**

32. Notice of this Motion has been provided to: (i) the U.S. Trustee; (ii) counsel for Cerberus Business Finance, LLC, as the administrative agent for the DIP lenders and for the prepetition secured lenders; (iii) counsel to the Committee; (iv) the Insurers; (v) the Prepetition Litigants; and (vi) the parties that have requested notice in this proceeding pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

**NO PRIOR REQUEST**

33. No previous request for the relief sought in this Motion has been made to this Court or any other court.

WHEREFORE, the Debtors respectfully request that this Court enter the proposed order, substantially in the form attached to this Motion as **Exhibit A**, and grant such other and further relief as may be appropriate.

Dated: April 26, 2018
       Wilmington, Delaware

PACHULSKI STANG ZIEHL & JONES LLP

*/s/ James E. O'Neill*
Laura Davis Jones (DE Bar No. 2436)
James E. O'Neill (DE Bar No. 4042)
Peter J. Keane (DE Bar No. 5503)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
Email: ljones@pszjlaw.com
      joneill@pszjlaw.com
      pkeane@pszjlaw.com

  -and-

Kathryn A. Coleman
Christopher Gartman
Erin E. Diers
HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, NY 10004-1482
Telephone: (212) 837-6000
Facsimile: (212) 422-4726
Email: katie.coleman@hugheshubbard.com
      chris.gartman@hugheshubbard.com
      erin.diers@hugheshubbard.com

*Counsel for the Debtors*