IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re* | Chapter 11 |
| **PATRIOT NATIONAL, INC.,** *et al.*,[1] | Case No. 18-10189 (KG) |
| **Debtors.** | (Jointly Administered) |
| | D.I. Nos. 632, 639, 697, 703 |

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING
FOURTH FURTHER AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION**

The above-captioned debtors and debtors in possession (each a "<u>Debtor</u>" and, collectively, the "<u>Debtors</u>") having:[2]

a.    commenced, on January 30, 2018 (the "<u>Petition Date</u>"), the Chapter 11 Cases (the "<u>Chapter 11 Cases</u>") by filing voluntary petitions in the United States Bankruptcy Court for the District of Delaware (the "<u>Court</u>") for relief under chapter 11 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>");

b.    continued to operate their businesses and manage their properties as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108;

c.    filed on the Petition Date, the *Debtors' Joint Chapter 11 Plan of Reorganization* [D.I. 15] and the *Disclosure Statement of Patriot National, Inc., and Its Affiliated Debtors* [D.I. 16];

---

1.    The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtors' federal tax identification number, are: Patriot National, Inc. (1376); Patriot Services, LLC (1695); TriGen Insurance Solutions, Inc. (2501); Patriot Captive Management, LLC (2341); Patriot Underwriters, Inc. (0045); TriGen Hospitality Group, Inc. (6557); Patriot Risk Consultants, LLC (0844); Patriot Audit Services, LLC (5793); Patriot Claim Services, Inc. (9147); Patriot Risk Services, Inc. (7189); Corporate Claims Management, Inc. (6760); CWIBenefits, Inc. (0204); Forza Lien, LLC (7153); Contego Investigative Services, Inc. (0330); Contego Services Group, LLC (0012); Patriot Care Management, LLC (2808); Radar Post-Closing Holding Company, Inc. (2049); Patriot Technology Solutions, LLC (6855); and Decision UR, LLC (1826). The Debtors' headquarters are located at 401 East Las Olas Boulevard, Suite 1650, Fort Lauderdale, Florida 33301.

2.    Unless otherwise noted herein, capitalized terms not defined in these Findings of Fact, Conclusions of Law, and Order Confirming Fourth Amended Joint Chapter 11 Plan of Reorganization (collectively, this "<u>Confirmation Order</u>") shall have the meanings ascribed to them in the Plan (as defined herein). The rules of interpretation set forth in Section I.B. of the Plan shall apply to this Confirmation Order.

27807838.3

d.          filed, on March 1, 2018, the *Amended Disclosure Statement of Patriot National, Inc., and its Affiliated Debtors* [D.I. 261];

e.          filed, on March 9, 2018, the *Debtors' Amended Joint Chapter 11 Plan of Reorganization* [D.I. 333] and the *Second Amended Disclosure Statement of Patriot National, Inc., and its Affiliated Debtors* [D.I. 335];

f.          filed, on March 13, 2018, the *Debtors' Second Amended Joint Chapter 11 Plan of Reorganization* [D.I. 374] and the *Third Amended Disclosure Statement of Patriot National, Inc. and its Affiliated Debtors* [D.I. 376] (the "Disclosure Statement");

g.          obtained, on March 14, 2018, entry of the *Order (I) Approving Disclosure Statement and Form and Manner of Notice of Disclosure Statement Hearing; (II) Establishing Solicitation and Voting Procedures, (III) Scheduling Confirmation Hearing, and (IV) Establishing Notice and Objection Procedures for Confirmation of the Proposed Plan Pursuant to Sections 105, 502, 1125, 1126, and 1128 of the Bankruptcy Code and Bankruptcy Rules 2002, 3003, 3017, 3018, 3020 and 9006 and Local Rules 2002-1, 3017-1, and 9006-1* [D.I. 381] (the "Disclosure Statement Order"), by which this Court approved, among other things, (i) the Disclosure Statement, finding it contained adequate information within the meaning of Bankruptcy Code section 1125; (ii) the Debtors' solicitation procedures (the "Solicitation Procedures"), finding the Solicitation Procedures provide for a fair and equitable voting process and are consistent with Bankruptcy Code section 1126; and (iii) the forms of ballots for voting on the Plan (the "Ballots") and notices (collectively, the "Solicitation Packages"), finding the Solicitation Packages adequately address the particular needs of the Chapter 11 Cases;

h.          caused distribution, on March 15, 2018, and continuing thereafter (the "Solicitation Date"), of the Solicitation Packages and notice of the deadline for objecting to confirmation of the Plan, consistent with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and caused distribution on March 14, 2018, of the Disclosure Statement Order, as evidenced by, among other things, the *Affidavit of Service of Solicitation Materials* [D.I. 419] (the "Solicitation Affidavit") filed on March 21, 2018 by Prime Clerk LLC, ("Prime Clerk"), the Debtors' claims and noticing agent;

i.          caused, on March 19, 2018, a notice of the Disclosure Statement Order and hearing on confirmation of the Plan ("Confirmation") to be published in the *Sun Sentinel* and *USA Today* [D.I. 445] (the "Publication Affidavit");

j.          filed, on March 30, 2018, the *Debtors' Third Amended Joint Chapter 11 Plan of Reorganization* [D.I. 471] and the Plan Supplement [D.I. 473] (the "First Plan Supplement"), each of which was served as evidenced by the *Affidavit of Service* filed by Prime Clerk [D.I. 508];

k.          filed, on April 20 2018, the *Certification of Christina Pullo with Respect to the Tabulation of Votes on the Amended Chapter 11 Plan of Reorganization of Patriot National, Inc.* [D.I. 636] (the "Voting Report");

l.          filed, on April 20, 2018, the *Declaration of James Feltman in Support of Confirmation of the Debtors' Fourth Amended Joint Chapter 11 Plan of Reorganization* [D.I. 634] (the "Feltman Declaration");

m.          filed, on April 20, 2018, the *Memorandum of Law and Omnibus Reply in Support of Confirmation of the Debtors' Fourth Amended Joint Chapter 11 Plan of Reorganization* [D.I. 633] (the "Confirmation Brief")

n.          filed, on April 20, 2018, a *Notice of Filing of Additional Exhibits to the Plan Supplement* (the "Second Plan Supplement" and together with the First Plan Supplement, the "Plan Supplement") [D.I. 641];

o.          filed, on April 20, 2018, the *Debtors' Fourth Amended Joint Chapter 11 Plan of Reorganization* [D.I. 632]; and

p.          filed on May 3, 2018, the *Debtors' Fourth Further Amended Joint Chapter 11 Plan of Reorganization (*the "Plan").

This Court having:

q.          set April 24, 2018, at11:00 a.m., prevailing Eastern Time, as the date and time for the commencement of the hearing (the "Confirmation Hearing") on Confirmation pursuant to Bankruptcy Rules 3017 and 3018 and Bankruptcy Code sections 1126, 1128, and 1129;

r.          reviewed the Plan, the Plan Supplement, the Disclosure Statement, the Confirmation Brief, the Voting Report, the Feltman Declaration, and all pleadings, exhibits, statements, objections, responses, and comments regarding Confirmation, including all objections, statements, and reservations of rights filed by parties in interest on the docket of the Chapter 11 Cases;

s.          held the Confirmation Hearing;

t.          heard the statements and arguments made by counsel in respect of Confirmation;

u.          considered all oral representations, testimony, documents, filings, and other evidence regarding Confirmation;

v.          overruled any and all objections to the Plan and to Confirmation, and all statements and reservations of rights not consensually resolved or withdrawn; and

3

w.          taken judicial notice of all papers and pleadings filed in the Chapter 11 Cases, and all evidence proffered or adduced and all arguments made at the hearings held before the Court during the pendency of the Chapter 11 Cases.

NOW, THEREFORE, the Court having found that notice of the Confirmation Hearing and the opportunity for any party in interest to object to Confirmation having been adequate and appropriate as to all parties affected or to be affected by the Plan and the transactions contemplated thereby; and the record of the Chapter 11 Cases and the legal and factual bases set forth in the documents filed in support of Confirmation and presented at the Confirmation Hearing establish just cause for the relief granted in this Confirmation Order; and after due deliberation thereon and good cause appearing therefor, the Court hereby makes and issues the following findings of fact, conclusions of law, and orders:

## I. FINDINGS OF FACT AND CONCLUSIONS OF LAW

IT IS HEREBY DETERMINED, FOUND, ADJUDGED, DECREED, AND ORDERED THAT:

### A.    Findings of Fact and Conclusions of Law.

1.      The findings of fact and the conclusions of law set forth in this Confirmation Order constitute findings of fact and conclusions of law in accordance with Bankruptcy Rule 7052, made applicable to this proceeding by Bankruptcy Rule 9014. All findings of fact and conclusions of law announced by the Court at the Confirmation Hearing in relation to Confirmation are hereby incorporated into this Confirmation Order. To the extent that any of the following constitutes findings of fact or conclusions of law, they are adopted as such. To the extent any finding of fact or conclusion of law set forth in this Confirmation Order (including any findings of fact or conclusions of law announced by the Court at the Confirmation Hearing and incorporated herein) constitutes an order of this Court, it is adopted as such.

**B.**     **Jurisdiction, Venue, Core Proceeding (28 U.S.C. §§ 157(b)(2), 1334(a)).**

2.     The Bankruptcy Court has jurisdiction over the Debtors' Chapter 11 Cases pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated as of February 29, 2012. Approval of the Plan is a core proceeding pursuant to 28 U.S.C. § 157(b) and the Bankruptcy Court has jurisdiction to enter a final order with respect thereto.  Venue was proper as of the Petition Date and is proper before the Bankruptcy Court pursuant to 28 U.S.C. §§ 1408 and 1409.

**C.**     **[Intentionally omitted].**

3.     [Intentionally omitted.]

**D.**     **Commencement of the Chapter 11 Cases.**

4.     On the Petition Date, the Debtors filed voluntary petitions with this Court for relief under chapter 11 of the Bankruptcy Code.  No request for the appointment of a trustee or examiner has been made in the Chapter 11 Cases.  On February 16, 2018, the official unsecured creditors' committee of Patriot National, Inc., *et al.* (the "Committee") was appointed by the United States Trustee.

**E.**     **Judicial Notice.**

5.     The Court takes judicial notice of (and deems admitted into evidence for purposes of Confirmation) the docket of the Chapter 11 Cases maintained by the Clerk of the Court or its duly appointed agent, including all pleadings and other documents on file, all orders entered, all hearing transcripts, and all evidence and arguments made, proffered, or adduced at the hearings held before the Court during the Chapter 11 Cases.  Any resolution of objections to Confirmation explained on the record at the Confirmation Hearing is hereby incorporated by reference.  All

unresolved objections, statements, informal objections, and reservations of rights, if any, related
to the Plan or Confirmation are overruled on the merits.

**F.     Claims Bar Date.**

6.     By order entered March 18, 2018, the Court established a general claims bar date
of April 30, 2018 at 4:00 p.m. (Prevailing Eastern Time) for filing certain claims against the
Debtors (the "Bar Date") and a governmental unit claims bar date of July 30, 2018 at 4:00 p.m.
(Prevailing Eastern Time) and approved the Debtors' claims-filing procedures. [D.I. 317]. Prime
Clerk published the *Bar Date Notice* for the Bar Date in the *Sun Sentinel* and *USA Today* on
March 19, 2018 [D.I. 445].

**G.     Disclosure Statement Order.**

7.     On March 14, 2018, the Court entered the Disclosure Statement Order, which,
among other things:  (a) approved the Disclosure Statement as containing adequate information
within the meaning of Bankruptcy Code section 1125 and Bankruptcy Rule 3017; (b) approved
the Solicitation Procedures; (c) approved the Solicitation Packages; (d) set April 13, 2018, at
4:00 p.m. (prevailing Eastern Time), as the deadline for voting to accept or reject the Plan
(the "Voting Deadline"), as well as the deadline for objecting to the Plan (the "Plan Objection
Deadline"); and (e) set the date and time for the Confirmation Hearing for April 24, 2018 at
11:00 a.m. (prevailing Eastern Time).

**H.     Transmittal and Mailing of Materials; Notice.**

8.     As evidenced by the Solicitation Affidavit, the Publication Affidavit, and the
Voting Report, due, adequate, and sufficient notice of entry of the Disclosure Statement Order,
the Plan, and the Plan Supplement, and notice of the assumption of executory contracts and
unexpired leases to be assumed by the Debtors (such executory contracts and unexpired leases,
the "Assumed Contracts") and related cure amounts and the procedures for objecting thereto and

6

resolution of disputes by the Court thereof has been given to, as applicable: (a) all known holders of Claims and Equity Interests; (b) parties that requested notice in accordance with Bankruptcy Rule 2002; (c) all non-Debtor counterparties to executory contracts and unexpired leases; and (d) all taxing authorities listed on the Debtors' Schedules or Claims Register; each in substantial compliance with the Disclosure Statement Order and Bankruptcy Rules 2002(b), 3017, 3019, and 3020(b), and no other or further notice is or shall be required. Due, adequate, and sufficient notice of the Plan Objection Deadline, the Confirmation Hearing, and any applicable bar dates and hearings described in the Disclosure Statement Order was given in compliance with the Bankruptcy Code, the Bankruptcy Rules, and the Disclosure Statement Order, and no other or further notice is or shall be required.

**I.** **Solicitation of Votes.**

9.      Each of the Plan, the Disclosure Statement, and the Ballots, and notice of the Confirmation Hearing were transmitted and served in compliance with the Bankruptcy Rules, including Bankruptcy Rules 3017 and 3018, the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), and the Disclosure Statement Order. The forms of the Ballots adequately address the particular needs of these Chapter 11 Cases and are appropriate for holders of Claims in Class 1A (Secured First Lien Lender Claims), Class 1B (First Lien Lender Deficiency Claims), Class 4 (Continuing Vendor Claims and Continuing Retail Agent Claims), and Class 5 (General Unsecured Claims) (collectively, the "Voting Classes"). The period during which the Debtors solicited acceptances to the Plan was a reasonable period of time for holders to make an informed decision to accept or reject the Plan, and was in accordance with the Disclosure Statement Order, and in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any applicable non-bankruptcy law, rule, or regulation. The Debtors were not

required to solicit votes from the holders of Claims in Class 2 (Other Secured Claims) and Class 3 (Priority Claims) as these Classes are unimpaired under the Plan, and thus, the holders of such Claims or Interests are deemed to have accepted the Plan. The Debtors also were not required to solicit votes from the holders of Claims or Equity Interests in Class 6 (510(b) Claims), Class 7 (Intercompany Claims) and Class 8 (Equity Interests) as the holders of such Claims and Equity Interests will not receive any recovery under the Plan (except as set forth in Section VI.D.(vi) thereunder) and, thus, the holders of such Claims or Equity Interests are deemed to have rejected the Plan. As described in and as evidenced by the Voting Certification, the transmittal and service of the Plan, the Disclosure Statement, the Ballots, and notice of the Confirmation Hearing (the "Solicitation") were timely, adequate and sufficient under the circumstances.

**J.**     **Notice.**

10.     As is evidenced by the Solicitation Affidavit and the Publication Affidavit, all parties required to be given notice of the Confirmation Hearing (including the deadline for filing and serving objections to confirmation of the Plan) have been given due, proper, timely, and adequate notice in accordance with the Disclosure Statement Order and in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any applicable non-bankruptcy law, rule, or regulation, and such parties have had an opportunity to appear and be heard with respect thereto. No other or further notice is required.

**K.**     **Good Faith Solicitation.**

11.     Based on the record before the Bankruptcy Court in these Chapter 11 Cases, the Debtors and their respective control persons, members, officers, directors, employees and agents (including financial advisors, investment bankers, accountants, and other professionals retained by the Debtors) (i) have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code in compliance with the applicable provisions of the Disclosure Statement

Order, the Bankruptcy Code, Bankruptcy Rules, the Local Rules, and any applicable non-bankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with all their respective activities relating to the solicitation of acceptances to the Plan and their participation in the activities described in section 1125 of the Bankruptcy Code and (ii) shall be deemed to have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code in the offer and issuance of any securities under the Plan (to the extent deemed applicable), and therefore are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and, to the extent such parties are listed therein, the exculpation provisions set forth in Section XI.H of the Plan.

**L.**     **Voting Report.**

12.     Prior to the Confirmation Hearing, the Debtors filed the Voting Report. As set forth in the Voting Report, the procedures used to tabulate the ballots were fair and conducted in accordance with the Disclosure Statement Order, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and all other applicable rules, laws, and regulations.

13.     As evidenced by the Voting Report, Classes 1A and 1B voted to accept the Plan, while Class 5 voted to reject the Plan. No votes were cast in Class 4 and thus such Class shall be disregarded.

**M.**     **Plan Supplement.**

14.     On March 30, 2018, the Debtors caused the Plan Supplement to be filed with the Court [D.I. 473], and amendments to certain of the documents comprising the Plan Supplement were filed on April 20, 2018 [D.I. 641]. The Plan Supplement complies with the Bankruptcy Code and the terms of the Plan, and the filing and notice of such documents were good and proper and in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Disclosure Statement Order, and the facts and circumstances of the Chapter 11 Cases. No other or further

9

notice is or will be required with respect to the Plan Supplement. All documents included in the Plan Supplement are integral to, part of, and incorporated by reference into the Plan. Subject to the terms of the Plan, the Debtors, the First Lien Agent, the First Lien Lenders, and the Committee, as applicable, reserve the right to alter, amend, update, or modify the documents comprising the Plan Supplement before the Effective Date subject to compliance with the Plan, the Bankruptcy Code and the Bankruptcy Rules.

**N.    Bankruptcy Rule 3016.**

15.    The Plan is dated and identifies the entities submitting it, thereby satisfying Bankruptcy Rule 3016(a). The Debtors appropriately filed the Disclosure Statement and the Plan with the Court, thereby satisfying Bankruptcy Rule 3016(b).

**O.    Burden of Proof.**

16.    The Debtors have met their burden of proving the elements of Bankruptcy Code sections 1129(a) and 1129(b) by a preponderance of the evidence, which is the applicable evidentiary standard for Confirmation. Further, the Debtors have proven the satisfaction of the elements of Bankruptcy Code sections 1129(a) and 1129(b) by clear and convincing evidence.

**P.    Compliance with the Requirements of Bankruptcy Code Section 1129.**

17.    The Plan complies with all applicable provisions of Bankruptcy Code section 1129.

**1.    Section 1129(a)(1)—Compliance with Applicable Provisions of the Bankruptcy Code.**

18.    The Plan complies with all applicable provisions of the Bankruptcy Code, including Bankruptcy Code sections 1122 and 1123, as required by Bankruptcy Code section 1129(a)(1).

(i)    **Sections 1122 and 1123(a)(1)—Proper Classification.**

19.    The classification of Claims and Equity Interests under the Plan is proper under the Bankruptcy Code.  In accordance with Bankruptcy Code sections 1122(a), 1122(b), and 1123(a)(1), Article II of the Plan provides for the separate classification of Claims and Equity Interests into eight different Classes, based on differences in the legal nature or priority of such Claims against, and Equity Interests in, the Debtors (other than DIP Claims, Administrative Expense Claims (including Professional Fee Claims), and Priority Tax Claims, which are addressed in Article III of the Plan and are not required to be designated as separate Classes by Bankruptcy Code section 1123(a)(1)).  The classification of Claims and Equity Interests pursuant to the Plan is as follows:

| | |
|---|---|
| Class 1A | Secured First Lien Lender Claims |
| Class 1B | First Lien Lender Deficiency Claims |
| Class 2 | Other Secured Claims |
| Class 3 | Priority Claims |
| Class 4 | Continuing Vendor Claims and Continuing Retail Agent Claims |
| Class 5 | General Unsecured Claims |
| Class 6 | 510(b) Claims |
| Class 7 | Intercompany Claims |
| Class 8 | Equity Interests |

20.    Valid business, factual, and legal reasons exist for the separate classification of such Claims and Equity Interests.  The classifications reflect no improper purpose and do not unfairly discriminate between, or among, holders of Claims or Equity Interests.  Each Class of Claims or Equity Interests contains only Claims or Equity Interests that are substantially similar

to the other Claims or Equity Interests within that Class. Accordingly, the requirements of Bankruptcy Code sections 1122(a), 1122(b), and 1123(a)(1) have been satisfied.

### (ii)    Section 1123(a)(2)—Specification of Unimpaired Classes.

21.    Article II of the Plan specifies that Claims in Class 2 (Other Secured Claims) and Class 3 (Priority Claims) are Unimpaired under the Plan. Additionally, DIP Claims, Administrative Expense Claims (including Professional Fee Claims), and Priority Tax Claims are not classified under the Plan. Accordingly, the Plan satisfies the requirements of Bankruptcy Code section 1123(a)(2).

### (iii)    Section 1123(a)(3)—Specification of Treatment of Impaired Classes.

22.    Article II of the Plan specifies that Claims in Class 1A (Secured First Lien Lender Claims), Class 1B (First Lien Lender Deficiency Claims), Class 4 (Continuing Vendor Claims and Continuing Retail Agent Claims), and Class 5 (General Unsecured Claims) are Impaired under the Plan, and Article III of the Plan sets out the treatment for each Class of Impaired Claims. Accordingly, the Plan satisfies the requirements of Bankruptcy Code section 1123(a)(3).

### (iv)    Section 1123(a)(4)—No Discrimination.

23.    Article III of the Plan provides the same treatment to each Claim or Equity Interest in any particular Class. Accordingly, the Plan satisfies the requirements of Bankruptcy Code section 1123(a)(4).

### (v)    Section 1123(a)(5)—Adequate Means for Plan Implementation.

24.    The Plan and the Plan Supplement provide adequate and proper means for the implementation of the Plan, including, without limitation, (i) the continued corporate existence of the Debtors as the Reorganized Debtors as set forth in the Plan and Plan Supplement (subject to the right of the Debtors or the Reorganized Debtors, as applicable, to engage in any corporate restructuring prior to, on, or after the Effective Date, which may include the merger, liquidation,

conversion or dissolution of one or more of the Debtors or the Reorganized Debtors); (ii) the

vesting of assets in the Reorganized Debtors; (iii) the authorization, issuance, and distribution of

New Equity Interests; (iv) the creation of the Litigation Trust and vesting of the Litigation

Claims into the Litigation Trust; (v) the appointment and designation of the Litigation Trust

Oversight Committee, the Litigation Trustee, and the Plan Administrator; and (vi) procedures for

making distributions to holders of Allowed Claims.   Accordingly, the Plan satisfies section

1123(a)(5) of the Bankruptcy Code.

   **(vi) Section 1123(a)(6)—Voting Power of Equity Securities.**

  25. The Reorganized Debtor Governing Documents prohibit the issuance of non-

voting equity securities to the extent prohibited by Bankruptcy Code section 1123(a)(6), thereby

satisfying section Bankruptcy Code 1123(a)(6).

   **(vii) Section 1123(a)(7)—Selection of Officers and Directors.**

  26. The Plan Supplement disclosed the identity and affiliations of the individual

proposed to serve as the initial officers and directors of the reorganized Debtors, the Litigation

Trustee (who will serve as the initial Plan Administrator), and the members of the Litigation

Trust Oversight Committee.  The manner of selection of the directors, the Litigation Trustee, and

the members of the Litigation Trust Oversight Committee was consistent with the interests of

holders of Claims against, and Equity Interests in, the Debtors and with public policy, thereby

satisfying section 1123(a)(7) of the Bankruptcy Code.

   **(viii) Section 1123(a)(8)--Earnings from Personal Services**

  27. Section 1123(a)(8) of the Bankruptcy Code applies only to individual debtors and

is not applicable to these Chapter 11 Cases.

### (ix)    Section 1123(b)—Discretionary Contents of the Plan.

28.    The Plan's discretionary provisions comply with Bankruptcy Code section 1123(b) and are not inconsistent with the applicable provisions of the Bankruptcy Code, thereby satisfying Bankruptcy Code section 1123(b).

### (a)    Section    1123(b)(2)—Executory    Contracts    and Unexpired Leases.

29.    Section VII.A of the Plan provides that on the Effective Date, except for the Executory Contracts and Unexpired Leases listed on the Assumption Schedule, any executory contract or unexpired lease that (i) has not previously expired or terminated pursuant to its own terms, or (ii) has not been assumed, assumed and assigned, or rejected, shall be deemed rejected on the Effective Date.  Exhibit E to the Plan Supplement lists the executory contracts and unexpired leases to be assumed and assigned to the Reorganized Debtors.  The Debtors, First Lien Lenders, and the First Lien Agent reserve the right, prior to the Effective Date, to amend the Plan Supplement to delete any contract or lease listed and thus provide for its rejection, or add any executory contract or unexpired lease and thus provide for its assumption.

30.    Entry of this Confirmation Order shall constitute an order of this Court approving the assumptions, assumptions and assignments, or rejections of such Executory Contracts or Unexpired Leases as set forth in the Plan, pursuant to Bankruptcy Code sections 365(a) and 1123, except to the extent that the deadline for objections to any such purported assumption, assumption and assignment, or rejection has not passed as of the date of entry of this Confirmation Order.  Unless otherwise indicated, assumptions or rejections of Executory Contracts or Unexpired Leases pursuant to the Plan are effective as of the Effective Date.

31.    To the maximum extent permitted by law, assumption of an Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall result upon payment of the cure

14

amount in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest, composition, or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time before the date that the Debtors assume such Executory Contract or Unexpired Lease. Any Proofs of Claim filed with respect to an Executory Contract or Unexpired Lease that has been assumed shall (subject to the payment of any applicable cure amount) be deemed disallowed and expunged.

32.    The Debtors have provided adequate assurance of future performance for each Executory Contract and Unexpired Lease to be assumed pursuant to the Plan in accordance with Bankruptcy Code section 365, provided that the foregoing shall not apply to any Executory Contract or Unexpired Lease as to which the deadline to object to assumption or assumption and assignment has not passed as of the date of entry of this Confirmation Order.

(b)    **Section 1123(b)(3)—Settlement and Preservation of Litigation Claims.**

33.    Pursuant to Bankruptcy Code sections 363 and 1123 and Bankruptcy Rule 9019, and in consideration for the distributions and other benefits provided pursuant to the Plan, which distributions and other benefits shall be irrevocable and not subject to challenge upon the Effective Date, the provisions of the Plan constitute a good faith compromise of all Claims of the First Lien Lenders, and any and all controversies relating to the contractual, legal, and subordination rights that the First Lien Lenders may have with respect to any Allowed Claim or any distribution to be made on account of the Allowed Claims of the First Lien Lenders.

34.    The Debtors have asserted that it is in the best interests of the Debtors' estates and stakeholders to resolve any and all claims that the Debtors' estates have, or may have, against the First Lien Agent, the First Lien Lenders, the DIP Agent, and the DIP Lenders, and the

professionals thereof, on the terms set forth in the Plan. For the reasons stated herein, the Court agrees and so finds. The evidence establishes that each of the factors to be considered in determining whether to approve a settlement pursuant to Bankruptcy Rule 9019—probability of success, complexity, likely duration of litigation, and certain other factors bearing on the wisdom of the compromise—weighs in favor of resolution of the parties' disputes on the terms set forth in the Plan. In addition, the evidence establishes that sound business justifications exist for the Debtors to enter into the settlements embodied in the Plan. Each component of the Plan, including the releases granted thereunder, the conversion of a portion of the First Lien Lenders' Claims into New Equity Interests and the New Term Loan Facility, the provision of the Exit Facility, the establishment of the Litigation Trust and the funding thereof, is an integral, integrated, and inextricably linked part of the Plan that is not severable from the entirety of the Plan. Accordingly, the Debtors have met their burden of proving that the Plan, and the treatment of creditors as provided under the Plan, are fair, reasonable, and in the best interests of the Debtors' estates stakeholders. The provisions regarding the preservation of the Litigation Claims in the Plan are appropriate and are in the best interests of the Debtors, their estates, and holders of Claims and Equity Interests.

35.     The entry of this Confirmation Order constitutes the Court's approval of the compromise or settlement of all Claims of the First Lien Lenders and controversies relating to the First Lien Lenders, as well as a finding by the Court that such compromise or settlement is in the best interests of the Debtors and their estates, and is fair, equitable, and reasonable. In accordance with the provisions of the Plan, pursuant to Bankruptcy Rule 9019, without any further notice to or action, order, or approval of the Court, after the Effective Date, the Plan

Administrator may compromise and settle Claims against the Debtors and their estates and the Litigation Trustee may prosecute, compromise, or settle Litigation Claims.

(c)    **Section 1123(b)(5)—Modification of Rights.**

36.    As permitted by Bankruptcy Code section 1123(b)(5), the Plan modifies the rights of holders of Claims and Equity Interests in Classes 1A, 1B, 4, 5, 6, 7, and 8. The Plan leaves unaffected the rights of holders of claims in Classes 2 and 3.

(d)    **Section 1123(b)(6)—Additional Plan Provisions.**

37.    **Subordinated Claims.** The allowance, classification, and treatment of all Claims and Equity Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Equity Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, Bankruptcy Code section 510(b), or otherwise. Pursuant to Bankruptcy Code section 510, the Debtors, the Plan Administrator, or the Reorganized Debtors reserve the right to re-classify any Claim or Equity Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

38.    **Releases and Exculpation.** The release and exculpation provisions set forth in Sections XI.G and XI.H of the Plan (the "Exculpation and Releases") are essential to the Plan. The record in the Chapter 11 Cases, including, without limitation, the Feltman Declaration, fully supports the Exculpation and the Releases, which are appropriately tailored to protect the parties receiving such Exculpation and Releases from inappropriate litigation. In light of, among other things, the critical nature of the Exculpation and Releases to the Plan, the Exculpation and Releases are approved.

39.    **Injunction.** The injunction provisions set forth in Section XI.I of the Plan (the "Injunction") are necessary to effectuate the Plan and to ensure that the parties subject

thereto can effectively fulfill their responsibilities, as contemplated in the Plan. Such injunction provisions are appropriately tailored to achieve those purposes. Accordingly, the Injunction is approved.

> **2.      Section 1129(a)(2)—The Debtors' Compliance with the Applicable Provisions of the Bankruptcy Code.**

40.      The Debtors have complied with all applicable provisions of the Bankruptcy Code as required by Bankruptcy Code section 1129(a)(2), including Bankruptcy Code sections 1122, 1123, 1124, 1125, 1126, and 1128, and Bankruptcy Rules 3017, 3018, and 3019.

41.      As set forth in greater detail in the Voting Report, votes to accept or reject the Plan were solicited by the Debtors and their agents after the Court approved the Disclosure Statement pursuant to Bankruptcy Code section 1125(a) and entered the Disclosure Statement Order. The Debtors and their agents have solicited and tabulated votes on the Plan and have participated in the activities described in Bankruptcy Code section 1125 fairly and in good faith within the meaning of Bankruptcy Code section 1125(e), and in a manner consistent with the applicable provisions of the Disclosure Statement Order, the Disclosure Statement, the Bankruptcy Code, the Bankruptcy Rules, and all other applicable rules, laws, and regulations, and are entitled to the protections afforded by Bankruptcy Code section 1125(e) and the Exculpation and Releases set forth in the Plan.

42.      [Intentionally omitted.]

> **3.      Section 1129(a)(3)—Proposal of Plan in Good Faith.**

43.      The Plan satisfies the requirements of Bankruptcy Code section 1129(a)(3). The Debtors have proposed the Plan in good faith and not by any means forbidden by law. In determining that the Plan has been proposed in good faith, the Court has examined the totality of the circumstances surrounding the filing of the Chapter 11 Cases, the Plan itself, and the process

18

leading to the Plan's formulation. The Debtors' good faith is evident from the facts and record of the Chapter 11 Cases, the Disclosure Statement, the record of the Confirmation Hearing, the Feltman Declaration, and all other proceedings held in the Chapter 11 Cases. The Plan is the product of arm's-length negotiations among the Debtors and their key creditor constituencies, including the Committee and First Lien Lenders. The Plan itself, and the process leading to its formulation, provide independent evidence of the Debtors' good faith, serve the public interest, and assure fair treatment of holders of Claims and Equity Interests. Consistent with the overriding purpose of chapter 11, the Debtors commenced the Chapter 11 Cases and proposed the Plan with the legitimate purpose of reorganizing themselves and preserving potentially valuable Litigation Claims in an equitable manner that is consistent with applicable law.

44.     The Debtors and each of their respective officers, directors, managers, members, employees, advisors and professionals, as applicable, (a) acted in good faith in negotiating, formulating and proposing, where applicable, the Plan and the agreements, compromises, settlements, transactions, transfers, and documentation contemplated by the Plan including, without limitation, the Litigation Trust Agreement and the Reorganized Debtor Governing Documents, and (b) are authorized to proceed to (i) consummate the Plan and the agreements, compromises, settlements, transactions, transfers, and documentation contemplated by the Plan, including, but not limited to, the Reorganized Debtor Governing Documents and the Litigation Trust Agreement, and (ii) take any actions authorized and directed or contemplated by this Confirmation Order.

### 4.     Section 1129(a)(4)—Court Approval of Certain Payments as Reasonable.

45.     The procedures set forth in the Plan for the Court's review and ultimate determination of the fees and expenses to be paid by the Debtors or the Plan Administrator, as applicable, in connection with the Chapter 11 Cases, or in connection with the Plan and incident

19

to the Chapter 11 Cases, satisfy the objectives of and are in compliance with Bankruptcy Code section 1129(a)(4).  Accordingly, the Plan satisfies the requirements of Bankruptcy Code section 1129(a)(4).

**5.    Section 1129(a)(5)—Disclosure of Identity of Proposed Management and Consistency of Management Proposals with the Interests of Creditors and Public Policy.**

46.    The Debtors have complied with Bankruptcy Code section 1129(a)(5) to the extent applicable.  The identity and affiliations of the person(s) proposed to serve as (i) directors and officers of Reorganized Patriot, (ii) members of the Litigation Trust Oversight Committee, and (iii) the Litigation Trustee and Plan Administrator after the Effective Date of the Plan have been fully disclosed.  Each of these persons is qualified and the appointment to such office of such person(s) is consistent with the interests of holders of Claims against and Equity Interests in the Debtors and with public policy.  As set forth in the Plan Supplement, on the Effective Date, the Litigation Trustee shall be Peter Kravitz who will also serve as the Plan Administrator.  As set forth in the Plan Supplement, on the Effective Date, the members of the Litigation Trust Oversight Committee shall oversee the Litigation Trust and the Litigation Trustee.  The proposed directors and officers of Reorganized Patriot will serve in accordance with the Reorganized Debtor Governing Documents.  Thus, the identity and affiliations of the persons proposed to serve as officers and/or directors of the Debtors and the successor to the Debtors under the Plan have been fully disclosed, and the appointment to such offices of such person(s) is consistent with the interests of holders of Claims against and Equity Interests in the Debtors and with public policy.  Accordingly, the Plan satisfies the requirements of Bankruptcy Code section 1129(a)(5).

6. **Section 1129(a)(6)—Approval of Rate Changes.**

47.     Bankruptcy Code section 1129(a)(6) is inapplicable to the Chapter 11 Cases. The Plan proposes no rate change subject to the jurisdiction of any governmental regulatory commission.

7. **Section 1129(a)(7)—Best Interests of holders of Claims and Equity Interests.**

48.     The Plan satisfies the requirements of Bankruptcy Code section 1129(a)(7). The evidence in support of the Plan that was proffered or adduced at the Confirmation Hearing, including, without limitation, the Feltman Declaration, the liquidation analysis attached to the Disclosure Statement as <u>Exhibit D</u>, and the facts and circumstances of the Chapter 11 Cases: (a) is reasonable, persuasive, credible, and accurate as of the dates such evidence was prepared, presented, or proffered; (b) utilizes reasonable and appropriate methodologies and assumptions; (c) has not been controverted by other evidence; and (d) establishes that holders of Claims or Equity Interests in each Class will recover at least as much under the Plan on account of such Claim or Equity Interest, as of the Effective Date, as such holder would receive if the Debtors were liquidated, on the Effective Date, under chapter 7 of the Bankruptcy Code.

8. **Section 1129(a)(8)—Conclusive Presumption of Acceptance by Unimpaired Classes.**

49.     Class 2 (Other Secured Claims) and Class 3 (Priority Claims) are Classes of Unimpaired Claims. Holders of Claims in Class 2and Class 3 are Unimpaired and conclusively presumed to accept the Plan under Bankruptcy Code section 1126(f).

50.     Because the Plan has not been accepted by Classes 5, 6, 7 or 8, the Debtors seek Confirmation under Bankruptcy Code section 1129(b) rather than Bankruptcy Code section 1129(a)(8).  Thus, although section 1129(a)(8) has not been satisfied with respect to such Classes, the Plan is confirmable because the Plan does not discriminate unfairly and is fair and

equitable with respect thereto and thus satisfies Bankruptcy Code section 1129(b) with respect to each such Class as described further below. Accordingly, the Plan satisfies the requirements of Bankruptcy Code section 1129(a)(8).

> **9.** **Section 1129(a)(9)—Treatment of Claims Entitled to Priority Pursuant to Bankruptcy Code Section 507(a).**

51.     The treatment of DIP Claims, Administrative Expense Claims (including Professional Fee Claims), and Priority Tax Claims, under Article III of the Plan satisfies the requirements of, and complies in all respects with, Bankruptcy Code section 1129(a)(9). A condition to the Plan's Effective Date is that (a) the aggregate amount of all Allowed Administrative Expense Claims and Allowed Priority Tax Claims shall not exceed $4.75 million (such cap subject to reduction, per Section IX.B.7 of the Plan) and (b) the aggregate amount of all Allowed Priority Claims shall not exceed $1 million (the amounts in clauses (a) and (b) combined, the "Admin/Priority Cap"). The Effective Date of the Plan will be deferred until either the filed Administrative Expense Claims, Priority Tax Claims, and Priority Claims are below the Admin/Priority Cap as a result of successful claim challenges, or (b) the First Lien Agent waives the Admin/Priority Cap as a condition to the Plan's effectiveness. Accordingly, the Plan satisfies the requirements of section 1129(a)(9) of the Bankruptcy Code.

> **10.** **Section 1129(a)(10)—Acceptance by at Least One Impaired Class.**

52.     As set forth in the Voting Report, the Voting Classes are impaired and Classes 1A and 1B have voted to accept the Plan by the requisite number and amount of Claims, determined without including any acceptance of the Plan by any insider (as that term is defined in Bankruptcy Code section 101(31)). Accordingly, the Plan satisfies the requirements of Bankruptcy Code section 1129(a)(10).

**11.    Section 1129(a)(11)—Feasibility of the Plan.**

53.    The Plan satisfies Bankruptcy Code section 1129(a)(11).  The evidence in support of the Plan that was proffered or adduced before and at the Confirmation Hearing, including the Feltman Declaration:  (a) is reasonable, persuasive, credible, and accurate as of the dates such evidence was prepared, presented, or proffered;  (b) utilizes reasonable and appropriate methodologies and assumptions; (c) has not been controverted by other evidence; (d) establishes that the Plan is feasible and that Confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Reorganized Debtors or of any successors to the Reorganized Debtors under the Plan; and (e) establishes that the Reorganized Debtors will have sufficient funds available to meet their obligations under the Plan.

**12.    Section 1129(a)(12)—Payment of Bankruptcy Fees.**

54.    The Plan satisfies the requirements of Bankruptcy Code section 1129(a)(12).  Pursuant to Section III.A.4 of the Plan, the outstanding fees due to the U.S. Trustee pursuant to 28 U.S.C. § 1930 and any applicable interest pursuant to 31 U.S.C. § 3717 shall be paid in full on or before the Effective Date.

**13.    Section 1129(a)(13)—Retiree Benefits.**

55.    Bankruptcy Code section 1129(a)(13) requires a plan to provide for retiree benefits (as defined in Bankruptcy Code section 1114) at levels established pursuant to Bankruptcy Code section 1114.  The Debtors have no obligations to provide retiree benefits and therefore the requirements under Bankruptcy Code section 1129(a)(13) are inapplicable.

**14.    Section 1129(a)(14)—No Domestic Support Obligations.**

56.    The Debtors are not required by a judicial or administrative order, or by statute, to pay a domestic support obligation.  Accordingly, Bankruptcy Code section 1129(a)(14) is inapplicable in these Chapter 11 Cases.

23

**15.    Section 1129(a)(15)—Debtors Are Not Individuals.**

57.    The Debtors are not individuals.    Accordingly, Bankruptcy Code section 1129(a)(15) is inapplicable in these Chapter 11 Cases.

**16.    Section 1129(a)(16)—No Applicable Non-Bankruptcy Law Regarding Transfers.**

58.    The Debtors are each a moneyed, business or commercial corporation. Accordingly, Bankruptcy Code section 1129(a)(16) is inapplicable in these Chapter 11 Cases.

**17.    Section 1129(b)—Confirmation of Plan Over Non-Acceptance of Impaired Class.**

59.    The Plan satisfies the requirements of Bankruptcy Code section 1129(b). Notwithstanding the fact that Classes 5, 6, 7 and 8 have not accepted the Plan, the Plan may be confirmed because:  (a) Classes 1A and 1B voted to accept the Plan; (b) the Plan satisfies all requirements of Bankruptcy Code section 1129(a) other than section 1129(a)(8); and (c) the Plan does not discriminate unfairly and is fair and equitable with respect to Classes 5, 6, 7 and 8 because there is no Class of equal priority receiving more favorable treatment and no Class that is junior is receiving or retaining any property on account of their Claims or Equity Interests. The Plan may, therefore, be confirmed even though not all Impaired Classes have voted to accept the Plan.

**18.    Section 1129(c)—Only One Plan.**

60.    The Plan satisfies the requirements of Bankruptcy Code section 1129(c).  The Plan (including previous versions thereof) is the only chapter 11 plan filed in the Chapter 11 Cases.

**19.    Section 1129(d)—Principal Purpose of the Plan.**

61.    The Plan satisfies the requirements of Bankruptcy Code section 1129(d).  The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of

section 5 of the Securities Act and no governmental entity has objected to the confirmation of the Plan on any such grounds .

    **20.**    **Section 1129(e)—Small Business Case.**

    62.    None of these Chapter 11 Cases is a "small business case," as that term is defined in the Bankruptcy Code, and accordingly, Bankruptcy Code section 1129(e) is inapplicable.

**Q.**    **Satisfaction of Confirmation Requirements.**

    63.    Based upon the foregoing, all other pleadings, documents, exhibits, statements, declarations and affidavits filed in connection with Confirmation of the Plan, and all evidence and arguments made, proffered or adduced at the Confirmation Hearing, the Plan satisfies the requirements for confirmation set forth in Bankruptcy Code section 1129.

**R.**    **Disclosure:  Agreements and Other Documents.**

    64.    The Debtors have disclosed all material facts, to the extent applicable, regarding: (a) the adoption of the Reorganized Debtor Governing Documents, or similar constituent documents, and the Litigation Trust Agreement; (b) the identity of known members of the New Board; (c) the method and manner of distributions under the Plan; (d) the issuance of the New Equity Interests; (e) the adoption, execution, and implementation of the other matters provided for under the Plan, including those involving corporate action to be taken by or required of the Debtors, or Reorganized Debtors, as applicable; (f) all compensation plans; (g) securities registration exemptions; (h) the exemption under Bankruptcy Code section 1146(a); and (i) the adoption, execution, and delivery of all contracts, leases, instruments, securities, releases, indentures, and other agreements related to any of the foregoing.

**S.**    **Investment Funding Transactions.**

    65.    The Investment Funding Agreement, included as part of the Plan Supplement, as well as the Litigation Proceeds Waterfall, and the Investments (as defined in the Investment

Funding Agreement), are fair and reasonable and do not violate any applicable law in that, among other things, (a) the Investors (as defined in the Investment Funding Agreement) are entering in the Investment Funding Agreement solely for the purpose to profit from their investments, (b) the Investors will only receive the distributions set forth in the Litigation Proceeds Waterfall in the event that the Litigation Trust recovers on the Litigation Claims, and that (c) the Investors are not acquiring the Debtors' right to sue.

**T.**     <u>**Conditions to Confirmation Date.**</u>

66.     Entry of this Confirmation Order shall satisfy the applicable conditions to the Confirmation Date as set forth in Section IX.A of the Plan.

**U.**     <u>**Conditions to Effective Date.**</u>

67.     Entry of this Confirmation Order shall satisfy the applicable condition to the Effective Date as set forth in Section IX.B of the Plan, *provided, that,* this Confirmation Order shall not have been stayed, modified, or vacated on appeal. The conditions precedent to Confirmation of the Plan and the Effective Date, set forth in Sections IX.A and IX.B of the Plan, may be waived in accordance with Section IX.C. of the Plan at any time without further order of the Court.

**V.**     <u>**Good Faith.**</u>

68.     Based on the record before this Court in these Chapter 11 Cases, the Debtors, the Committee, the First Lien Agent, and the First Lien Lenders shall not be liable under any applicable law, rule, or regulation governing solicitation of acceptance or rejection of the Plan or the offer, issuance, sale, or purchase of securities.

**W.**     <u>**Implementation.**</u>

69.     All documents and agreements necessary to implement the Plan, including those contained in the Plan Supplement, and all other relevant and necessary documents (including,

without limitation, the Reorganized Debtor Governing Documents and the Litigation Trust Agreement) have been negotiated in good faith and at arm's length, are in the best interests of the Debtors and their estates, and shall, upon completion of documentation and execution, be valid, binding, and enforceable documents and agreements.

## II. ORDER

**BASED ON THE FOREGOING FINDINGS OF FACT AND CONCLUSIONS OF LAW, IT IS ORDERED, ADJUDGED, AND DECREED THAT:**

A.      **Order.**

70.     The Plan, attached hereto as **Exhibit A**, and each of its provisions, including the Plan Supplement are approved in their entirety and confirmed under Bankruptcy Code section 1129. The terms of the Plan, including the Plan Supplement, are incorporated by reference into and are an integral part of this Confirmation Order.  The documents contained in the Plan Supplement, and any amendments, modifications, and supplements thereto, and all documents and agreements related thereto (including all exhibits and attachments thereto), and the execution, delivery, and performance thereof, are authorized and approved.  The failure to include or refer to any particular article, section, or provision of the Plan, the Plan Supplement, or any related document or exhibit does not impair the effectiveness of that article, section, or provision; it being the intent of the Court that the Plan, the Plan Supplement, and any related document or exhibit are approved and confirmed in their entirety.

71.     The terms of the Plan, the Plan Supplement, all exhibits thereto, and all other relevant and necessary documents shall be effective and binding as of the Effective Date, and shall be binding on and shall inure to the benefit of any heir, executor, administrator, personal representative, success, or assign of such person, including, but not limited to the Plan Administrator, the Litigation Trust, the Litigation Trustee, and the Reorganized Debtors.

**B.**     **Objections.**

72.     Certain objections to Confirmation of the Plan have been withdrawn, waived, or otherwise resolved by the Debtors prior to entry of this Confirmation Order.  Any objections (including any reservations of rights contained therein) to Confirmation of the Plan (including the payment or amount of the cure amounts with respect to any Assumed Contract, or the assumption by the Debtors of any of the Assumed Contracts) that have not been withdrawn, waived, or settled prior to entry of this Confirmation Order, are not cured by the relief granted herein, or otherwise resolved as stated by the Debtors on the record of the Confirmation Hearing, all such objections are overruled on the merits.  For the avoidance of doubt, the foregoing shall not apply to any Executory Contract or Unexpired Lease as to which the date for objection to any purported assumption, assumption and assignment, or rejection has not passed as of the date of entry of this Order.

**C.**     **Amendment of the Plan.**

73.     Subject to certain restrictions and requirements set forth in Bankruptcy Code section 1127 and Bankruptcy Rule 3019 and subject to the limitations contained in the Plan, the Debtors (with the consent of the First Lien Lenders, the First Lien Agents, or the Committee, as applicable) expressly reserve their rights to alter, amend, or modify the Plan in accordance with the terms thereof, one or more times, after Confirmation, and may initiate proceedings in the Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Planor this Confirmation Order, in such manner as may be necessary to carry out the purposes and intent of the Plan.

74.     Subject to certain restrictions and requirements set forth in Bankruptcy Code section 1127 and Bankruptcy Rule 3019 and subject to the limitations contained in the Plan, but without need for further order or authorization of the Court, the Debtors (with the consent of the

28

First Lien Agents, First Lien Lenders, or the Committee, as applicable) are authorized and empowered to make any and all modifications to any and all documents included as part of the Plan Supplement, and any other document that is necessary to effectuate the Plan that does not materially modify the terms of such documents and are consistent with the Plan and this Confirmation Order.

**D.  Plan Classification Controlling.**

75.    The terms of the Plan shall solely govern the classification of Claims and Equity Interests for purposes of the distributions to be made thereunder.  The classifications set forth on the Ballots tendered to or returned by the holders of Claims in connection with voting on the Plan:  (a) were set forth thereon solely for purposes of voting to accept or reject the Plan; (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of Claims and Equity Interests under the Plan for distribution purposes; (c) may not be relied upon by any holder of a Claim or Equity Interest as representing the actual classification of such Claim or Equity Interest under the Plan for distribution purposes; and (d) shall not be binding on the Debtors or the Plan Administrator except for voting purposes.

**E.  General Settlement of Claims.**

76.    Pursuant to Bankruptcy Code section 1123 and Bankruptcy Rule 9019, and in consideration for the classification, distributions, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims of the First Lien Lenders and controversies relating to the First Lien Lenders that are resolved pursuant to the Plan.  All distributions made to holders of Allowed Claims in any Class are intended to be and shall be final.

**F.  [Intentionally omitted].**

77.    [Intentionally omitted.]

29

## G.    Vesting of Assets.

78.    Except as otherwise provided in the Plan, on the Effective Date, (i) the Litigation Claims shall vest in the Litigation Trust free and clear of all liens, Claims, charges, and other encumbrances and (ii) all other assets of the Debtors' bankruptcy estates shall vest in the each of the Reorganized Debtors, as applicable, free and clear of all liens, Claims, charges, and other encumbrances.  On and after the Effective Date, except as otherwise provided in the Plan, (x) the Reorganized Debtors may operate their businesses and implement the terms of the Plan, (y) the Plan Administrator may use, acquire, or dispose of property, and compromise or settle any Claims, and (z) the Litigation Trust may use, acquire, or dispose of property, and compromise or settle any Litigation Claims, each without supervision or approval by the Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.  For the avoidance of doubt, other than with respect to fees owed to the Debtors by contract, the funds at any time and from time to time on deposit in the Restricted Accounts (as such term is defined in the motion of the Debtors for entry of an order authorizing and approving, among other things, continued use of their cash management systems [D.I. 7], and, for the avoidance of doubt, including the Pass-Through Accounts, as that term is defined in the interim orders relating to such accounts [D.I. 55, 316, 537]) are not property of the Debtors' estates, are and will continue to be held and forwarded by the Debtors as a mere conduit for the accounts of others (including the insurance carriers entitled thereto) on whose behalf the funds are deposited into the Restricted Accounts.  Prior to the Petition Date, funds in the Restricted Accounts were held for the benefit of others (other than fees owed to the Debtors by contract), and the commencement of the Debtors' Chapter 11 Cases did not provide the Debtors with additional rights with respect to such funds.  As a result, no such funds on deposit in the Restricted Accounts (other than fees owed to the Debtors by contract) have vested or shall vest in the Reorganized Debtors.

79.     After the Effective Date, the Reorganized Debtors, the Plan Administrator, or the Litigation Trustee may present court orders or assignments suitable for filing in the records of every county or governmental agency where the property vested in accordance with the foregoing paragraph is or was located, which provide that such property is conveyed to and vested in the Reorganized Debtors or the Litigation Trust, as applicable.  The court orders or assignments may designate all liens, Claims, encumbrances, or other interests which appear of record and/or from which property is being transferred, assigned, and/or vested free and clear of, except as otherwise provided in the Plan.  The Plan shall be conclusively deemed to be adequate notice that such lien, Claim, encumbrance, or other interest is being extinguished and no notice, other than by the Plan, shall be given prior to the presentation of such court orders or assignments.  Any Person having a lien, Claim, encumbrance, or other interest against any of the property vested in accordance with the foregoing paragraph shall be conclusively deemed to have consented to such transfer, assignment, and vesting of such property to or in the Reorganized Debtors or the Litigation Trust, as applicable, free and clear of all liens, Claims, charges, or other encumbrances by failing to object to confirmation of the Plan, except as otherwise provided in the Plan or this Confirmation Order.

**H.      Approval of Restructuring Transactions.**

80.     On or prior to the Effective Date, or as soon as reasonably practicable thereafter, the Debtors, the Reorganized Debtors, the First Lien Agent, the Committee, the Plan Administrator, and the Litigation Trustee are authorized and directed to take all actions necessary or appropriate to enter into, implement, and consummate any of the Restructuring Transactions as contemplated by the Plan.

31

**I.      Corporate Existence.**

81.    Except as otherwise provided in the Plan or any agreement, instrument, or other document incorporated in the Plan or the Plan Supplement, on the Effective Date, the Debtors shall continue to exist after the Effective Date as private legal entities, in accordance with applicable non-bankruptcy law and pursuant to the Reorganized Debtor Governing Documents. Notwithstanding the foregoing, the Debtors or Reorganized Debtors, as applicable, may engage in any corporate restructuring prior to, on, or after the Effective Date which may include the merger, liquidation, conversion or dissolution of one or more of the Debtors or the Reorganized Debtors.

**J.      Directors and Officers of the Debtors.**

82.    As of the Effective Date, the directors and officers named in the Plan Supplement shall be appointed the directors and officers of the Reorganized Debtors.  Other directors and officers of the Reorganized Debtors shall be selected by the parties to whom the New Equity Interests will be distributed pursuant to the Plan.  All officers and directors of the Debtors not listed in the Plan Supplement shall be deemed to have resigned on the Effective Date.

**K.      Cancellation of Existing Securities.**

83.    On the Effective Date, except as otherwise provided in the Plan, all notes, instruments, certificates, and other documents evidencing Claims or Equity Interests shall be deemed cancelled and of no further force and effect against the Debtors, without any further action on the part of the Debtors.  From and after the making of the applicable distributions pursuant to the Plan, the holders of such notes, instruments, certificates, and other documents shall have no rights against the Debtors, Reorganized Debtors, Plan Administrator, or the Litigation Trust arising from or relating to such notes, instruments, certificates, and other documents or the cancellation thereof, except the rights provided pursuant to the Plan.

32

**L.**     **Issuance of New Equity Interests.**

84.     The Reorganized Debtors shall be authorized, on the Effective Date, to issue the New Equity Interests, without the need for any further corporate action and without any further action by the holders of Claims or Equity Interests.

**M.**     **Approval of Consents and Authorization to Take Acts Necessary to Implement Plan.**

85.     Upon the Effective Date, or as soon thereafter as is reasonably practicable, all actions contemplated by the Plan shall be deemed authorized and approved by the Court in all respects, including, as applicable: (a) the issuance of the New Equity Interests; (b) selection of the directors and officers for the Reorganized Debtors; (c) the appointment of the Litigation Trustee; (d) the funding and establishment of the Litigation Trust; (e) the appointment of the Plan Administrator, and (f) all other actions contemplated by the Plan (whether to occur before, on, or after the Effective Date). Upon the Effective Date, all matters provided for in the Plan involving the corporate structure of the Reorganized Debtors, and any corporate action required by the Debtors or the Reorganized Debtors in connection with the Plan (including any items listed in the first sentence of this paragraph) shall be deemed to have occurred and shall be in effect, without any requirement of further action by the security holders, directors, or officers of the Debtors or the Reorganized Debtors. On or (as applicable) before the Effective Date, the appropriate officers of the Debtors or the Reorganized Debtors shall be authorized and (as applicable) directed to issue, execute, and deliver the agreements, documents, securities, and instruments contemplated by the Plan (or necessary or desirable to effect the transactions contemplated by the Plan) in the name of and on behalf of the Reorganized Debtors, including the Litigation Trust Agreement and any and all other agreements, documents, securities, and instruments relating to the foregoing, to the extent not previously authorized by the Court. Upon the Effective Date, any of the Debtors' remaining officers and members of its board of directors

shall be deemed to have resigned, if they have not already done so.   The authorizations and approvals contemplated by Article V of the Plan shall be effective notwithstanding any requirements under non-bankruptcy law.

**N.**     **Approval of the Investment Transactions.**

86.     The Investment Funding Agreement, as well as the Litigation Proceeds Waterfall, and Investments contemplated therein are hereby authorized and approved in accordance with their respective terms.   Proceeds of any recovery on account of the Litigation Claims shall be distributed in accordance with the Investment Funding Agreement and the Litigation Proceeds Waterfall, as set forth in Section VI.D of the Plan.

**O.**     **Approval of the Litigation Trust and Appointment of the Litigation Trustee.**

87.     The establishment of the Litigation Trust in accordance with the terms of the Plan and the Litigation Trust Agreement is hereby authorized and approved in accordance with their respective terms.   The Litigation Trust shall be established on the Effective Date for the purpose of prosecuting the Litigation Claims.   Except as otherwise ordered, the Litigation Trust Expenses on or after the Effective Date shall be paid in accordance with the Litigation Trust Agreement without further order of the Bankruptcy Court.

**P.**     **Appointment of the Litigation Trustee and Litigation Oversight Committee.**

88.     The appointment of Peter Kravitz as the Litigation Trustee is hereby approved. The appointment of (i) Joseph Naccarato, (ii) Paul Lusardi, (iii) Barry Kasoff, (iv) Michael Krawitz and (v) Jessica Barad as the initial members of the Litigation Trust Oversight Committee is hereby approved.   On the Effective Date, the Litigation Trustee, and not the Reorganized Debtors, shall be the Estates' representative in accordance with Section 1123 of the Bankruptcy Code.   The Litigation Trustee shall have all the rights and powers set forth in the Litigation Trust Agreement and in the Plan.   The Litigation Trustee and Litigation Trust

Oversight Committee shall be authorized to retain and employ Professionals to assist it with and advise it with respect to its duties under the Plan. All fees and expenses of such Professionals shall be satisfied by the Litigation Trust.

**Q.**    **Appointment of Plan Administrator.**

89.    The appointment of Peter Kravitz as the Plan Administrator is hereby approved. On the Effective Date, the Plan Administrator shall have all the rights and powers to implement the provisions of the Plan pertaining to the Plan Administrator, including, without limitation, the right to (i) effect all actions and execute all agreements, instruments and other documents necessary to implement the provisions of the Plan; (ii) make distributions as contemplated in the Plan (other than those distributions to be made by the First Lien Agents), (iii) establish and administer any necessary reserves for Disputed Claims that may be required; and (iv) object to Disputed Claims and prosecute, settle, compromise, withdraw or resolve in any manner approved by the Bankruptcy Court such Disputed Claims. For the avoidance of doubt, the Plan Administrator shall have no obligation to object to or dispute (or expend funds to object to or dispute) any Claim where, in the Plan Administrator's sole judgment, the cost of such objection or dispute is not warranted in light of the potential incremental benefit to the remaining holders of Claims. The reasonable costs and expenses incurred by the Plan Administrator in performing the duties set forth in the Plan shall be paid by the Litigation Trust, subject to the approval of the Litigation Trust Oversight Committee.

**R.**    **The Injunction, Exculpation, and Related Provisions Under the Plan.**

90.    All release, exculpation, and injunction provisions in the Plan, including, without limitation, those contained in Article XI of the Plan, are approved and shall be effective and binding on all Persons, to the extent expressly provided herein.

35

**S.**      **Assumed Contracts and Assumed Liabilities; Cure Amounts;**
          **"Adequate Assurance."**

91.      The provisions governing the treatment of Executory Contracts and Unexpired

Leases set forth in Article VII of the Plan (including the procedures regarding the resolution of

any and all disputes concerning the assumption or rejection, as applicable, of such Executory

Contracts and Unexpired Leases) shall be, and hereby are, approved in their entirety.

92.      For the avoidance of doubt, on the Effective Date, except as otherwise provided in

the Plan, any Executory Contract or Unexpired Lease that (i) has not expired on its own terms

prior to the Confirmation Date, (ii) has not been assumed, assumed and assigned, or rejected with

Court approval prior to the Confirmation Date, (iii) is not the subject of a motion to assume or

reject which is pending at the time of the Confirmation Date, or (iv) is not listed in the

Assumption Schedule to be assumed, shall be deemed rejected on the Effective Date.

93.      Entry of this Confirmation Order shall constitute an order of this Court approving

the assumptions, assumptions and assignments, or rejections of such Executory Contracts or

Unexpired Leases as set forth in the Plan pursuant to Bankruptcy Code sections 365(a) and 1123.

Unless otherwise indicated, assumptions or rejections of Executory Contracts or Unexpired

Leases pursuant to the Plan are effective as of the Effective Date.

94.      Notwithstanding anything to the contrary in the Plan, the Debtors, the First Lien

Agent, and the First Lien Lenders each reserve the right prior to the Effective Date to amend the

Assumption Schedule to delete any contract or lease listed and thus provide for its rejection, or

add any Executory Contract or Unexpired Lease and thus provide for its assumption

**T.**      **Indemnification Obligations Regarding Prepetition Acts or Omissions.**

95.      Any obligation of the Debtors to indemnify, reimburse or limit the liability of any

person, including, but not limited to, any officer or director of the Debtors, or any agent,

36

professional, financial advisor, or underwriter of any securities issued by the Debtors, relating to any acts or omissions occurring before the Petition Date, whether arising pursuant to charter, bylaws, or contracts shall be terminated as of the Effective Date, and shall be deemed to be, and shall be treated as an Executory Contract, and shall be and hereby is deemed rejected pursuant to Article VII of the Plan.

U.     **Setoffs and Recoupment.**

96.     The Plan Administrator may, but shall not be required to, set off against any Claim, and the payments or other distributions to be made pursuant to the Plan in respect of such Claim, claims of any nature whatsoever that the Debtors or the Reorganized Debtors may have against the holder of such Claim; provided, however, that neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors or the Reorganized Debtors of any such claim that the Debtors or the Reorganized Debtors may have against such holder.

V.     **Release of Liens.**

97.     Except as otherwise specifically provided in the Plan or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, liens, pledges, or other security interests against any property of the estate shall be fully released and discharged, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, liens, pledges, or other security interests shall revert to the Reorganized Debtors or the Litigation Trust, as applicable, and their successors and assigns, in each case, without any further approval or order of the Court and without any action or filing being required to be made by the Debtors.

**W.    Provisions Governing Distributions.**

98.    The distribution provisions of Article VIII of the Plan shall be, and hereby are, approved in their entirety.  Except as otherwise set forth in the Plan or this Confirmation Order, the Plan Administrator shall make all distributions required under the Plan.  The timing of distributions required under the Plan or this Confirmation Order shall be made in accordance with and as set forth in the Plan or this Confirmation Order, as applicable.

**X.    Post-Confirmation Notices, Professional Compensation, and Bar Dates.**

**1.    Notice of Entry of the Confirmation Order.**

99.    In accordance with Bankruptcy Rules 2002 and 3020(c), the Debtors shall promptly cause the Notice of Confirmation, substantially in the form attached hereto as **Exhibit B**, to be served by United States mail, first class postage prepaid, by hand, or by overnight courier service to all parties served with the Confirmation Hearing Notice; *provided*, that no notice or service of any kind shall be required to be mailed or made upon any entity to whom the Debtors mailed a Confirmation Hearing Notice, but received such notice returned marked "undeliverable as addressed," "moved, left no forwarding address," or "forwarding order expired," or similar reason, unless the Debtors have been informed in writing by such entity, or are otherwise aware, of that entity's new address.  Mailing of the Notice of Confirmation in the time and manner set forth in this paragraph will be good, adequate, and sufficient notice under the particular circumstances and in accordance with the requirements of Bankruptcy Rules 2002 and 3020(c).  No further notice is necessary.

100.    The Notice of Confirmation will have the effect of an order of the Court, will constitute sufficient notice of the entry of this Confirmation Order to such filing and recording officers, and will be a recordable instrument.

### 2.    Administrative Expense Claims.

101.    The provisions governing the treatment of Allowed Administrative Expense Claims set forth in Section III.A.2 and Section XI.A.1. of the Plan, including, without limitation, the establishment of the Administrative Expense Claims Bar Date and the procedures set forth with respect to requesting for payment or objecting to Administrative Expenses Claims, are approved in their entirety.  Holders of Administrative Expense Claims that are or were required to, but did not or do not, file and serve a request for payment of such Administrative Expense Claims by such applicable dates shall be forever barred, estopped and enjoined from asserting such Administrative Expense Claims.  Notwithstanding the foregoing, neither the U.S. Trustee nr the Clerk of the Court shall be required to file a request for payment with respect to any Administrative Expense Claims.   For the avoidance of doubt, nothing in the Plan or this Confirmation Order allows or authorizes the Reorganized Debtors or the Plan Administrator to pay any amounts prohibited by section 503(c) of the Bankruptcy Code.

### 3.    Professional Compensation.

102.    The provisions governing Professional Fee Claims set forth in Section XI.A.2 of the Plan are approved in their entirety.

### 4.    Notice of Subsequent Pleadings.

103.    Except as otherwise may be provided in the Plan or herein, notice of all subsequent pleadings in the Chapter 11 Cases after the Effective Date shall be limited to the following parties: (a) the Reorganized Debtors and their counsel; (b) the Litigation Trustee and its counsel; (c) the Plan Administrator; (d) the United States Trustee; (e) counsel for the Committee; (f) any party known to be directly affected by the relief sought therein; and (g) any party that specifically requests additional notice in writing to the Debtors or the Reorganized Debtors, as applicable.

**Y.**   **Compliance with Tax Requirements.**

104.   The Plan Administrator shall, to the extent applicable, comply with all tax withholding and reporting requirements imposed by any federal, state, provincial, local, or foreign taxing authority, and all distributions made pursuant to the Plan shall be subject to any such withholding and reporting requirements.  The Plan Administrator shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements including, without limitation, requiring that, as a condition to the receipt of a distribution, the holder of an Allowed Claim complete the appropriate IRS Form W-8 or IRS Form W-9, as applicable to each holder.  Notwithstanding any other provision of the Plan, (a) each holder of an Allowed Claim that is to receive a distribution pursuant to the Plan shall have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed on such holder by any governmental unit, including income and other tax obligations, on account of such distribution, and (b) no distribution shall be made to or on behalf of such holder pursuant to the Plan unless and until such holder has made arrangements satisfactory to the applicable Plan Administrator to allow it to comply with its tax withholding and reporting requirements.  Any property to be distributed pursuant to the Plan shall, pending the implementation of such arrangements, be treated as an undeliverable distribution to be held by the Plan Administrator, as the case may be, until such time as the Plan Administrator is satisfied with the holder's arrangements for any withholding tax obligations.

**Z.**   **Exemptions from Taxation.**

105.   Pursuant to, and to the fullest extent permitted by, Bankruptcy Code section 1146, any transfers of property pursuant hereto shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, sales or use tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording

fee, regulatory filing or recording fee, or other similar tax or governmental assessment, and this Confirmation Order hereby directs and shall be deemed to direct the appropriate state or local governmental officials or agents to forgo the collection of any such tax, recordation fee, or governmental assessment and to accept for filing and recordation any instruments or other documents pursuant to such transfers of property without the payment of any such tax, recordation fee, or governmental assessment. Such exemption specifically applies, without limitation, to: (a) the creation of any mortgage, deed of trust, lien, or other security interest; (b) the making or assignment of any lease or sublease; (c) the issuance, distribution, and/or sale of the New Equity Interests and any other securities of the Debtors or the Reorganized Debtors; and (d) the making or delivery of any deed or other instrument of transfer in furtherance of or in connection with the Plan, including without limitation, (i) any merger agreements, (ii) agreements of consolidation, restructuring, disposition, liquidation, or dissolution, (iii) deeds, (iv) bills of sale, and (v) assignments executed in connection with any transaction occurring under the Plan.

AA.    **Exemption from Securities Laws.**

106.    Pursuant to Bankruptcy Code section 1145, the offering, issuance, and distribution of the New Equity Interests shall be exempt from, among other things, the registration and prospectus delivery requirements of section 5 of the Securities Act to the maximum extent permitted thereunder and any other applicable law requiring registration and/or prospectus delivery, prior to the offering, issuance, distribution or sale of securities. In addition, except as otherwise provided in the Plan, to the maximum extent provided under section 1145 of the Bankruptcy Code, the New Equity Interests will be freely tradable by the recipients thereof, subject to: (i) the provisions of section 1145(b)(1) of the Bankruptcy Code relating to the definition of an underwriter in section 2(a)(11) of the Securities Act, and compliance with any

rules and regulations of the United States Securities and Exchange Commission, if any, applicable at the time of any future transfer of New Equity Interests; (ii) the restrictions, if any, on the transferability of New Equity Interests; and (iii) applicable regulatory approval.

**BB.    Insurance Policies.**

107.    Nothing in the Plan, the Plan Supplement, or this Confirmation Order (including, without limitation, the provisions governing rejection of executory contracts and/or unexpired leases) shall diminish or impair the enforceability of any Insurance Policies, or any claims thereunder, covering current or former directors, officers, and managers of the Debtors.

**CC.    Preservation of Causes of Action.**

108.    In accordance with section Bankruptcy Code 1123(b)(3), except as otherwise provided in the Plan, any Litigation Claims that the Debtors may hold against any entity shall vest in the Litigation Trust.   The Litigation Trust, through its authorized agents or representatives, shall retain and may exclusively enforce any and all such Litigation Claims. The Litigation Trustee shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Litigation Claims, and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Court.

109.    No entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any causes of action against it as any indication that the Debtors, the Reorganized Debtors, or the Litigation Trust will not pursue any and all available causes of action against it.  The Debtors, the Reorganized Debtors, or the Litigation Trust, as applicable, expressly reserve all rights to prosecute any and all causes of action against any entity, except as otherwise expressly provided in the Plan.  Unless any causes of action

42

against an entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Court order, the Debtors, the Reorganized Debtors, or the Litigation Trust, as applicable, expressly reserve all causes of action, for later adjudication.

**DD.**  **Procedures for Resolving Claims and Disputes.**

110.    The procedures for resolving contingent, unliquidated, and Disputed Claims contained in Article VIII of the Plan shall be, and hereby are, approved in their entirety.

**EE.**  **Effect of Confirmation on Modifications.**

111.    Entry of this Confirmation Order means that all modification or amendments to the Plan since the Solicitation thereof are approved pursuant to Bankruptcy Code section 1127(a) and do not require additional disclosure or re-solicitation under Bankruptcy Rule 3019.

**FF.**  **Documents and Instruments.**

112.    Each federal, state, commonwealth, local, foreign, or other governmental agency is hereby authorized to accept any and all documents and instruments necessary or appropriate to effectuate, implement or consummate the transactions contemplated by the Plan and this Order.

**GG.**  **Conditions to Effective Date.**

113.    The Plan shall not become effective unless and until the conditions set forth in Section IX.B of the Plan have been satisfied or waived pursuant to Section IX.C of the Plan.

**HH.**  **Vacatur of Order.**

114.    If this Confirmation Order is vacated or deemed vacated, then the Plan shall be deemed null and void in all respects, and nothing contained in the Plan shall (i) constitute a waiver or release of any Claims against or Equity Interests in the Debtors, (ii) prejudice in any manner the rights of the holder of any Claim against, or Equity Interest in, the Debtors, (iii) prejudice in any manner any right, remedy or claim of the Debtors, or (iv) be deemed an admission against interest by the Debtors or any other Person or Entity.

43

**II.**    **Effectiveness of All Actions.**

115.    All actions authorized to be taken pursuant to the Plan shall be effective on, prior to, or after the Effective Date pursuant to this Confirmation Order, without further application to, or order of the Court, or further action by the respective officers, directors, managers, members, or stockholders of the Debtors or Reorganized Debtors and with the effect that such actions had been taken by unanimous action of such officers, directors, managers, members, or stockholders.

116.    This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules, and regulations of all states and any other governmental authority with respect to the implementation or consummation of the Plan and any documents, instruments, or agreements, and any amendments or modifications thereto, and any other acts and transactions referred to in or contemplated by the Plan, the Plan Supplement, the Disclosure Statement, and any documents, instruments, securities, or agreements, and any amendments or modifications thereto.

**JJ.**    **Effect of Conflict Between Plan and Confirmation Order.**

117.    Except as set forth in the Plan, to the extent that any provision of the Disclosure Statement, the Plan Supplement, or any other order (other than this Confirmation Order) referenced in the Plan (or any exhibits, schedules, appendices, supplements, or amendments to any of the foregoing), conflicts with or is in any way inconsistent with any provision of the Plan, the Plan shall govern and control in all respects; *provided*, *however*, with respect to any conflict or inconsistency between the Plan and this Confirmation Order, this Confirmation Order shall govern and control.

**KK.**    **Reservation of Rights.**

118.    Prior to the Effective Date, neither the Plan, any statement or provision contained in the Plan, nor any action taken or not taken by the Debtors with respect to the Plan, the

Disclosure Statement, this Confirmation Order, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of the Debtors, the Reorganized Debtors, or the Litigation Trust with respect to the holders of Claims or Equity Interests.

**LL.    Injunctions and Automatic Stay.**

119.    Unless otherwise provided in the Plan or in this Confirmation Order, all injunctions or stays arising under or entered during the Chapter 11 Cases under Bankruptcy Code section 362 or otherwise in existence on the Confirmation Date shall remain in full force and effect until the later of the Effective Date and the date set forth in the order providing for such injunction or stay.

**MM.    Nonseverability of Plan Provisions upon Confirmation.**

120.    This Confirmation Order constitutes a judicial determination that each term and provision of the Plan, as it may have been altered or interpreted in accordance with Section XI.L. of the Plan, is:  (a) valid and enforceable pursuant to its terms; (b) integral to the Plan and may not be deleted or modified without the Debtor's consent; and (c) nonseverable and mutually dependent.

**NN.    [Intentionally omitted].**

121.    [Intentionally omitted.]

**OO.    Authorization to Consummate.**

122.    The Debtors are authorized to consummate the Plan at any time after the entry of this Confirmation Order subject to the satisfaction or waiver (by the required parties) of the conditions precedent to Consummation set forth in Section X.B of the Plan.

**PP.    Effect of Non-Occurrence of Conditions to the Effective Date.**

123.    If the Effective Date does not occur, then:  (a) the Plan shall be null and void in all respects; (b) any settlement or compromise embodied in the Plan (including the fixing or

45

limiting to an amount any Claim or Class of Claims or any liens securing any Claim), assumption or rejection of executory contracts or unexpired leases effected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (c) nothing contained in the Plan or the Disclosure Statement shall: (i) constitute a waiver or release of any Claims by, or Claims against, or Equity Interests in, the Debtors; (ii) prejudice in any manner the rights of the Debtors, any holders of a Claim or Equity Interest, or any other entity; (iii) constitute an admission, acknowledgement, offer, or undertaking by the Debtors, any holders of Claims or Equity Interests, or any other entity in any respect; or (iv) be used by the Debtors or any entity as evidence (or otherwise) in any litigation, including with regard to the strengths or weaknesses of any of the parties' positions, arguments, or claims.

## QQ.    Retention of Jurisdiction.

124.    The Court properly retains jurisdiction over the Chapter 11 Cases and all matters arising out of, or related to, the Chapter 11 Cases, the Plan, and this Confirmation Order, including those matters specifically set forth in Article X of the Plan. The Court's retention of jurisdiction is subject to objection by a party that believes its rights not to be named in claims or litigation before the Court, or its rights to institute claims or litigation in another forum, are being infringed upon.

## RR.    Forum for Actions.

125.    Without permission of the Court, no judicial, administrative, arbitral, or other action or proceeding shall be commenced against the Litigation Trustee (in its capacity as such) with respect to its status, duties, powers, acts or omissions in such capacity in any forum other than this Court.

**SS.    Governing Law.**

126.    Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of Delaware, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction and implementation of the Plan, any agreements, documents, instruments or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control); *provided, however*, that corporate governance matters relating to the Debtors and/or Reorganized Debtors shall be governed by the laws of their respective places of incorporation.

**TT.    Substantial Consummation.**

127.    On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

**UU.    Dissolution of Committee.**

128.    On the Effective Date, the Committee shall dissolve automatically in accordance with Section V.K of the Plan.

**VV.    [Intentionally omitted].**

129.    [Intentionally omitted.]

**WW.    Internal Revenue Service.**

130.    Notwithstanding anything to the contrary in the Plan, this Confirmation Order, or any documents implementing the Plan (collectively, the "Confirmation Documents"), nothing shall: (a) affect the ability of the Internal Revenue Service ("IRS") to pursue any non-Debtors to the extent allowed by non-bankruptcy law for any liabilities that may be related to any federal tax liabilities owed by the Debtors or the Debtors' Estates; (b) affect the rights of the United

47

States to assert setoff and recoupment and such rights are expressly preserved; (c) discharge any claim of the IRS described in section 1141(d)(6) of the Bankruptcy Code; (d) cause an amendment to an IRS claim without prior authorization from the Bankruptcy Court or the Litigation Trustee to result in that claim being deemed disallowed or expunged pursuant to Article VIII(M) of the Plan; (e) require the IRS to file an Administrative Expense Claim in order to receive payment for any liability described in section 503(b)(1)(B) and (C) of the Bankruptcy Code; or (f) confer exclusive jurisdiction over IRS claims and issues arising therefrom.  To the extent the IRS's Priority Tax Claims (including any penalties, interest, or additions to tax entitled to priority under the Bankruptcy Code), if any, are not paid in full in cash on the Effective Date, the IRS's Priority Tax Claims shall accrue interest commencing on the Effective Date at the rate and method set forth in 26 U.S.C. sections 6621 and 6622 and, at a minimum, shall be paid in full in equal quarterly installment payments in cash over a period not to exceed five years after the date of the order for relief under section 301 of the Bankruptcy Code, all as required by 11 U.S.C. § 1129(a)(9)(C).  Administrative Claims of the IRS allowed pursuant to the Plan or section 503 of the Bankruptcy Code, if any, shall be paid in full in cash as soon as practicable after the Effective Date and accrue interest and penalties as provided by non-bankruptcy law until paid in full.  Moreover, without limiting the foregoing, nothing in the Confirmation Documents shall:  (a) bind the IRS to any characterizations for tax purposes of any transaction or valuation of property as set forth in the Confirmation Documents and the Debtors and the Liquidation Trustee shall comply with the provisions of the Internal Revenue Code; (b) be construed as a compromise or settlement of any IRS claim or interest; (c) effect a release, discharge, or otherwise preclude any claim whatsoever against any Debtor by or on behalf of the IRS relating to any liability arising out of any unfiled prepetition or post-petition tax return or

48

any pending audit or audit which may be performed with respect to any prepetition or post-petition tax return; or (d) enjoin the IRS from amending any Claim against any Debtor with respect to any tax liability arising as a result of the filing of an unfiled return or a pending audit or audit that may be performed with respect to any prepetition or post-petition tax return. Further, any liability arising as a result of an unfiled return or final resolution of a pending audit or audit which may be performed with respect to any pre-petition or post-petition tax return shall be paid in accordance with sections 1129(a)(9)(A) and (C) of the Bankruptcy Code.

## XX.    **Former Directors & Officers.**

131.    Notwithstanding anything to the contrary in the Confirmation Order, the Plan, the DIP Order, the DIP Documents (as defined in the DIP Order), any other order or any related documents, nothing in the DIP Order, the DIP Documents, the Plan, this Confirmation Order, any other order, or any related documents shall release or impair any claims, remedies or rights, or any defenses, whether arising in law or equity, including but not limited to any right or defense of setoff, recoupment, contribution, reimbursement, indemnification or subrogation, now existing or hereafter arising, that any Person or Entity (other than the Releasing Parties), in its individual capacity but not derivatively, may have against any other Person or Entity including without limitation any Released Party or Exculpated Party. For clarity and notwithstanding the foregoing permitting defensive use of claims, no Person may seek an affirmative recovery against the Debtors on account of (i) claims that are discharged in accordance with Article XI.E of the Plan or (ii) claims that are Exculpated Claims against the Exculpated Parties pursuant to Article XI.H. of the Plan. For the avoidance of doubt, Austin Shanfelter, James O'Brien, Michael Purcell, Jeffrey Rohr, Quentin P. Smith, Jr., Charles H. Walsh, Michael J. Corey, Christopher A. Pesch and/or Steven M. Mariano, and any Person or Entity (other than the Reorganized Debtors, the Plan Administrator, the Litigation Trust, the Litigation Trustee and any

Person (including the Committee and the First Lien Agents) exercising the rights of the Debtors' estates, including, without limitation, any successor to the Debtors or any Estate representative appointed or selected pursuant to Bankruptcy Code Section 1123(b)(3), in each case on behalf of itself and its respective successors, assigns, and representatives and any and all other entities that assert any Cause of Action derivatively, by or through the foregoing Entities) are not Releasing Parties with respect to direct, non-derivative claims.

132.    For the sake of clarity and the avoidance of any ambiguity, nothing contained in the Plan, including, but not limited to, Articles I.A.61; I.A.122; XI.G.1; and XI.H, shall be construed to release, waive, exculpate or otherwise limit the liability of any current or former director and/or officer of the Debtors or any other person or entity that is an Exculpated Party (other than the Debtors), for his, her or its actions or inactions with respect to the Debtors prior to November 22, 2017 that, prior to the Petition Date, were asserted against certain of the Exculpated Parties in, or may be asserted in the future against certain of the Exculpated Parties based on the facts, circumstances, and transactions that are the subject of, the cases captioned: (i) *Hudson Bay Master Fund Ltd. v. Del Pizzo, et al.*, No. 1:17-CV-06204-GBD-AJP (S.D.N.Y.); (ii) *CVI Inv., Inc. v. Patriot Nat'l, Inc.*, No. 1:16-CV-02787-GBD-SDA (S.D.N.Y.); (iii) *Wasik v. Mariano, et al.* C.A. No. 12953-VCL (Del. Ch.); or (iv) *McIntire, et al. v. Mariano, et al.*, No. 0:18-cv-60075-BB (S.D. Fla.).

## YY.    **Fifth Third Bank**

133.    Notwithstanding anything to the contrary in this Confirmation Order or the Plan, including under Sections VI.G, VI.H and VI.I, nothing in this Confirmation Order or the Plan shall release, discharge, limit, exculpate, enjoin or otherwise impact or effect any claims, encumbrances, interests, damages, suits, judgments, demands, debts, rights, causes of action, losses, remedies, obligations or liabilities whatsoever, including any derivative claims, asserted

or assertable on behalf of or by Fifth Third Bank and any successors in interests or assignees, against Lady Sara, Ltd., Steven M. Mariano, Steven M. Mariano, as Trustee of the Steven M. Mariano Declaration of Trust U/A/D January 25, 2008, as subsequently amended and restated on August 24, 2009, and Guarantee Insurance Group, Inc.

134.    Claim No. 206 filed by Fifth Third Bank is deemed an allowed Secured Claim (the "Fifth Third Claim"). The Fifth Third Claim shall be classified and treated under the Plan in Class 2 (Other Secured Claim). Notwithstanding anything to the contrary in the Plan or this Order, and without further notice to the Debtors or leave from the Bankruptcy Court, Fifth Third Bank shall (i) retain all claims, rights and interests against Patriot Risk Services, Inc. in accordance with the Letter of Credit ("LOC") and Letter of Credit Reimbursement Agreement ("Agreement") attached to the Fifth Third Claim, (ii) retain its perfected, first priority security interest against Fifth Third Bank account no. xxxxxx4872, (iii) be entitled to exercise its rights of setoff and reimbursement against the Account pursuant to the Agreement, (iv) have no obligation to renew the LOC, and (v) not be precluded from providing notice of non-renewal to the beneficiary of the LOC.

Dated: **May 4**, 2018
Wilmington, Delaware

_____
THE HONORABLE KEVIN GROSS
UNITED STATES BANKRUPTCY JUDGE