# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| PATRIOT NATIONAL, INC., *et al.*, | Case No. 18-10189 (KG) |
| Debtors.[1] | (Jointly Administered) |
|  | Hearing Date: May 15, 2018 at 2:00 pm EDT |
|  | Objections Due: May 8, 2018 at 4:00 pm EDT |
|  | **Re: D.I. 677** |

## HUDSON BAY MASTER FUND LTD'S OBJECTION TO DEBTORS' MOTION FOR AN ORDER (I) EXTENDING THE TEMPORARY STAY OF LITIGATION OF CLAIMS AGAINST THE DEBTORS' DIRECTORS AND OFFICERS AND (II) DETERMINING THAT THE DEBTORS HAVE SATISFIED ALTERNATIVE DISPUTE RESOLUTION REQUIREMENTS UNDER THE DEBTORS' DIRECTORS AND OFFICERS INSURANCE POLICIES

Hudson Bay Master Fund Ltd ("**Hudson Bay**"), by and through its undersigned counsel, files this objection (the "**Objection**") to the *Debtors' Motion for an Order (I) Extending the Temporary Stay of Litigation of Claims Against the Debtors' Directors and Officers and (II) Determining That the Debtors Have Satisfied Alternative Dispute Resolution Requirements Under the Debtors' Directors and Officers Insurance Policies* [Docket No. 677] (the "**Motion**")[2] filed by the above-captioned debtors and debtors-in-possession (collectively, the "**Debtors**"), and respectfully states as follows:

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtors' federal tax identification number, are: Patriot National, Inc. (1376), Patriot Services, LLC (1695); TriGen Insurance Solutions, Inc. (2501); Patriot Captive Management, LLC (2341); Patriot Underwriters, Inc. (0045); TriGen Hospitality Group, Inc. (6557); Patriot Risk Consultants, LLC (0844); Patriot Audit Services, LLC (5793); Patriot Claim Services, Inc. (9147); Patriot Risk Services, Inc. (7189); Corporate Claims Management, Inc. (6760); CWIBenefits, Inc. (0204); Forza Lien, LLC (7153); Contego Investigative Services, Inc. (0330); Contego Services Group, LLC (0012); Patriot Care Management, LLC (2808); Radar Post-Closing Holding Company, Inc. (2049); Patriot Technology Solutions, LLC (6855); and Decision UR, LLC (1826). The Debtors' headquarters are located at 401 East Las Olas Boulevard, Suite 1650, Fort Lauderdale, Florida 33301.

[2] Capitalized terms used in this Objection but not otherwise defined have the meaning ascribed to them in the Motion or the Initial Stay Objection (as defined below).

# PRELIMINARY STATEMENT

1.  By the Initial Stay Motion (defined below), the Debtors sought to stay litigation brought by and against non-Debtors, allegedly "to focus parties' efforts in participating in an organized mediation process for the benefit of all stakeholders." Initial Stay Motion, ¶ 4. Now, blaming "practical reality" for the lack of mediation progress and their failure to schedule more than one mediation session in 90 days, the Debtors have filed the Motion, seeking to extend the stay of litigation among non-Debtors an additional 60 days, for a total stay of 150 days.

2.  But the Motion seeks more than that; the Motion also seeks a declaration from the Court that the Court-ordered mediation process satisfies the Debtors' Alternative Dispute Resolution ("**ADR**") requirements under the D&O Policies. This request, and the facts which the Debtors have disclosed for the first time in connection with the request, demonstrate the following:

- First, that the Debtors are not as "optimistic" about the mediation process as the Motion suggests, as the relief sought with respect to the ADR requirements is only applicable in the event that the mediation is unsuccessful.

- Second, that while the Debtors decry the "race to get the first bite at the proceeds of the D&O Policies," the Debtors themselves are attempting to use the stay of litigation as both a sword and a shield, seeking a declaration from the Court that the clock has started running on their contractual waiting period to commence litigation with respect to the D&O Policies.

- Third, that the Debtors have known since at least September 2017 that the Insurers asserted coverage arguments following the Prepetition Mediations, yet the Debtors failed to disclose such coverage disputes to the Court in the Initial Stay Motion, which cited preservation of proceeds of the D&O Policies as the primary, if not sole, justification for staying non-Debtor litigation. *See* Initial Stay Motion, ¶ 1 ("The Debtors are bringing this Motion in an attempt to preserve the value of the Debtors' directors and officers insurance policies…."). Only now, after this Court has already stayed the Prepetition Litigation among non-Debtors for 90 days, do the Debtors for the first time acknowledge that the

Insurers have disputed whether the D&O Policies even cover the Prepetition Litigation.[3]

3. Hudson Bay's ability to pursue claims and judgments against non-Debtors was stayed by this Court because the Debtors represented in the Initial Stay Motion that such stay was necessary "to slow the erosion of the D&O Policies and preserve the insurance proceeds." Initial Stay Motion, ¶ 23. The Debtors have now acknowledged that the proceeds of the D&O Policies may not be implicated by the stayed litigation, yet they seek an extension of the stay which will continue to prejudice Hudson Bay by preventing it from pursuing and collecting judgments against non-Debtors and by requiring it to incur costs associated with a mediation process that has shown no signs of progress.

4. When granting the Initial Stay Motion, the Court stated that "if the mediation is becoming successful and you need a little bit more time, of course I would be willing to extend the stay." *See* Feb. 28, 2018 Hr'g Tr. 144:8-12; Motion, ¶ 2. The Motion seeks to extend the stay but does not even suggest, let alone establish, that the Mediation is "becoming successful." Indeed, the Debtors point to no significant progress toward a global resolution of all stakeholders' claims (and Hudson Bay has seen no such progress). To the contrary, the Debtors implicitly acknowledge that a global resolution is unlikely by virtue of simultaneously seeking additional relief that is only applicable to the extent that the Mediation is unsuccessful.

5. In its Initial Stay Objection (defined below), Hudson Bay asserted that "the requested 'mediation' is plainly nothing more than a desperate attempt by the Debtors to avoid the otherwise unavoidable denial of their improper and unsupportable request for extension of the automatic stay to litigation between non-debtors." Initial Stay Objection, ¶ 2. Hudson Bay

---

[3] This is not the first time that the Debtors have failed to disclose to the Court key facts that do not support the stay of non-Debtor litigation. In the Initial Stay Motion, the Debtors failed to disclose the existence of the unsuccessful Prepetition Mediations.

maintains that view, which is supported by the Debtors' request for an extension of the stay without any suggestion in the Motion that progress is being made in the mediation process.

6. The Motion should be denied.

## BACKGROUND

7. On February 7, 2018, the Debtors filed their *Motion to (I) Compel Mediation of Claims Against the Debtors' Directors and Officers and (II) Temporarily Stay Related Litigation Pending the Outcome of Mediation* [Docket No. 93] (the "**Initial Stay Motion**") seeking to stay Hudson Bay's actions against non-Debtor directors and officers, including former directors and officers that have no ongoing relationship with the Debtors whatsoever.

8. On February 21, 2018, Hudson Bay filed its objection to the Initial Stay Motion [Docket No. 132] (the "**Initial Stay Objection**"). The Initial Stay Objection includes further background with respect to the Hudson Bay Actions. The Initial Stay Objection is incorporated as set forth fully herein.

9. On February 28, 2018, this Court entered an *Order (I) Compelling Mediation of Claims Against the Debtors' Directors and Officers and (II) Temporarily Staying Related Litigation* [Docket No. 256] (the "**Initial Stay Order**"), which among other things stayed the Hudson Bay Actions for 90 days, through May 29, 2018 (the "**Initial Stay Period**").

10. On March 1, 2018, after being informed of the Initial Stay Order at a status hearing, Judge George B. Daniels of the United States District Court for the Southern District of New York scheduled oral arguments with respect to Hudson Bay I for May 31, 2018, promptly following the expiration of the Initial Stay Period.

11. The Debtors did not contact Hudson Bay or its counsel with respect to scheduling the Court-ordered Mediation until over three weeks after the Initial Stay Order had been entered

(and after 21 days of the 90 day Initial Stay Period had passed), and then only in response to an inquiry from Hudson Bay's counsel.

12. A Mediation session was scheduled to take place over two days, on April 18-19, 2018 (commencing 49 days after entry of the Initial Stay Order, and thus over halfway through the Initial Stay Period). However, it quickly became apparent that the Mediation would not be successful, and Hudson Bay was not even asked to attend the planned second day.[4]

13. On April 26, 2018, only seven days after the unsuccessful Mediation, the Debtors filed the Motion, seeking to extend the stay of the Hudson Bay Actions, among others, for an additional 60 days.

14. On May 4, 2018, the Court entered an order confirming a the Debtors' joint plan of reorganization [Docket No. 705] (the "**Confirmation Order**").

## OBJECTION

### I. THE COURT SHOULD NOT EXTEND THE TEMPORARY STAY OF PREPETITION LITIGATION AMONG NON-DEBTORS

**1. The Debtors' Actions and Assertions Contradict the Asserted Bases for Extending the Stay.**

15. The Motion asserts as purported justifications for the extension of the stay, that (i) "the Debtors remain optimistic that, if given sufficient time, the parties can reach a resolution acceptable to all parties through the Mediation," see Motion, ¶ 1,[5] and (ii) "[i]f the stay is not extended, the Prepetition Litigants will likely resume their race to get the first bite at the

---

[4] The Motion states that the Mediation session took place on both of the scheduled days, but fails to mention that Hudson Bay and other parties to the Mediation were not invited back for a second day. *See* Motion, ¶ 1 ("On April 18 and 19, 2018, pursuant to the Mediation Order, a two-day mediation session was held"), ¶ 15 ("At the close of the two-day mediation session, the parties had not yet reached a global resolution of the claims subject to the Mediation."). As far as Hudson Bay is aware, there were no discussions toward a global resolution that occurred on April 19.

[5] Notably, the Motion does not use the word "progress" or any similar term to describe the Mediation session. The best the Debtors' can say is that they "remain optimistic." Hudson Bay does not believe that any progress has been made toward a global resolution and is not optimistic that there is a realistic path to a global settlement.

proceeds of the D&O Policies." Motion, ¶ 2. However, the Debtors' course of conduct contradicts the first asserted justification, and new disclosures in the Motion call into question the second justification (which, even if true, would not provide a valid justification for the relief sought).

16. First, the Motion's suggestion that "sufficient time" is all that is needed in order for the Mediation to succeed is belied by the Debtors' utter failure to effectively work toward a resolution during the 90 day Initial Stay Period. The Debtors did not hold a Mediation session until seven weeks of the Initial Stay Period had passed, and that session did not yield significant progress toward a global resolution. Yet the Debtors now seek to extend the stay further, purportedly due to "the practical reality of coordinating the numerous necessary parties to the Mediation," as if scheduling difficulties are the problem here. *See* Motion, ¶ 2. If the "practical reality" is that the Debtors were able to schedule only one mediation session during a 90 day stay period, then the Debtors' "optimism" that a 60 day extension will lead to a global resolution can only be described as wishful thinking.

17. Second, as in the Initial Stay Motion, the Debtors rely heavily on the assertion that the Hudson Bay Actions should be stayed to prevent Hudson Bay from getting the "first bite at the proceeds of the D&O Policies." *See*, Motion, ¶ 2, *supra*; Initial Stay Motion, ¶ 23 ("The race to judgment in numerous pending and contemplated actions would substantially erode the D&O Policies' proceeds and the Non-Debtor Parties may not have sufficient resources to satisfy any judgment directly."). However, this argument assumes that the D&O Policies cover the Hudson Bay Actions. In fact, the Motion acknowledges that the Prepetition Mediations failed "in part, because the Insurers disputed that certain of the claims asserted by the Prepetition

Litigants were covered under the D&O Policies." Motion, ¶ 12. This fact directly contradicts the Debtors' "race to get the first bite at the proceeds of the D&O Policies" argument.

18. Moreover, this fact highlights, as was argued by Hudson Bay at the hearing on the Initial Stay Motion, that the stay imposed by the Initial Stay Order is preventing Hudson Bay from pursuing claims and judgments against non-Debtor defendants whose personal assets may prove more elusive with the passage of time. Whatever merit the Debtors' "race to judgment" argument may have had if a judgment would be satisfied from proceeds of the D&O Policies,[6] the existence of coverage disputes underscores the reality that the Debtors are asking this Court to provide breathing room (for at least 150 days, if the Motion is granted) for the benefit of their former CEO, Steven M. Mariano, a defendant in Hudson Bay I, who has absolutely no ongoing connection to the Debtors or their chapter 11 cases.

## 2. Extending the Stay of Actions Between Non-Debtors Is Not Essential to the Debtors' Reorganization.

19. The automatic stay of section 362 of the Bankruptcy Code is not generally extended to non-debtors, except in unusual circumstances, none of which are present here. *See In re Uni-Marts, LLC*, 404 B.R. 767, 780 (Bankr. Del. 2009). In the Initial Stay Motion, the Debtors relied on case law extending the automatic stay to non-debtors where "protection is essential to the debtor's efforts of reorganization." *McCartney v. Integra Nat. Bank North*, 106 F.3d 506, 510 (3d Cir. 1997). Whatever merit that argument may have had in connection with the Initial Stay Motion is no longer applicable now that the Confirmation Order has been entered.

---

[6] As discussed in Hudson Bay's Initial Stay Objection, the proceeds of the D&O Policies are not property of the Debtors' estates. *See, e.g.*, *Miller v. McDonald (In re World Health Alternatives, Inc.)*, 369 B.R. 805, 809 (Bankr. D. Del. 2007). The mere fact that the Debtors seek to extend the stay to preserve the proceeds of the D&O Policies demonstrates that such proceeds are not property of the estate. *See* 2-105 Collier on Bankruptcy P 105.04 (16th 2017) ("If, however, the policy proceeds are estate assets, there is no need to resort to section 105 for an injunction; the automatic stay of section 362(a)(3) would apply directly.").

The resolution of the Prepetition Litigation is not a condition to the Effective Date of the Plan. *See* Plan, Article IX.B.

## II. THE DEBTORS' REQUEST WITH RESPECT TO ADR PROCEDURES UNDERSCORES THAT THEIR REQUEST TO EXTEND THE STAY IS MERITLESS

20. Hudson Bay takes no position as to the Debtors' request for an order determining that the Debtors have satisfied the ADR requirements in the D&O Policies. However, the Debtors' request itself further undermines the Debtors' credibility with respect to their request to extend the stay of litigation purportedly in furtherance of mediation. The fact that the Debtors are making contingency plans for a failed Mediation process belies the Debtors' assertion that they are "optimistic" that the Mediation will be successful.

21. Further, the request highlights a motivation for the Initial Stay Motion that was not disclosed in the Initial Stay Motion and that has nothing to do with reaching a global resolution of disputes: the Debtors hoped that the Court-ordered Mediation would absolve them of their contractual ADR requirements under the D&O Policies, allowing the Debtors to start the clock on the 60 day contractual waiting period for commencing litigation. By simultaneously requesting a stay extension and the ADR relief, the Debtors presuppose that other parties should be prohibited from pursuing recovery under the D&O Policies so that the Debtors are able to recover first.

22. Additionally, by seeking an order with respect to the ADR requirements, the Debtors have disclosed for the first time that coverage disputes with the Insurers have existed since at least September 2017.[7] Indeed, the Motion discloses that the Debtors' counsel sent the

---

[7] The Motion disclosed these coverage disputes only to counter the assertion by an Insurer that the D&O Policies' ADR requirements have not been satisfied. The Motion notes that one of the insurers, National Union, has asserted that the Mediation did not satisfy the D&O Policies' ADR provisions because "the Mediation Motion did not expressly mention any 'dispute or difference' with respect to the D&O Policies." Motion, ¶ 20.

Insurers a 14-page letter responding to coverage arguments asserted by the Insurers in September 2017. *See* Motion, ¶¶ 12, 26. The importance of this disclosure, and its omission from the Initial Stay Motion, cannot be overstated. The Initial Stay Motion, from the very first line of its preliminary statement, made clear that the proceeds of the D&O Policies were the primary, if not sole, justification for staying the Prepetition Litigation. Initial Stay Motion, ¶ 1 ("The Debtors are bringing this Motion in an attempt to preserve the value of the Debtors' directors and officers insurance policies…."). Now, for the first time, the Debtors have acknowledged that the Prepetition Litigation may not even implicate the D&O Policies.

23. The Initial Stay Motion's failure to mention any coverage disputes with the Insurers is perplexing, given that preservation of the proceeds of the D&O Policies was cited as the primary justification for both the extension of the stay and the compelled mediation. *See*, e.g. Initial Stay Motion ¶ 23 ("Extending the stay will act to slow the erosion of the D&O Policies and preserve the insurance proceeds while providing the opportunity to reach a consensual resolution of the Claims through mediation.").

### III. HUDSON BAY WOULD BE PREJUDICED BY THE RELIEF REQUESTED IN THE MOTION

24. The Motion, like the Initial Stay Motion, asserts that plaintiffs such as Hudson Bay will not be prejudiced if they are forced to mediate their claims and in the meantime their actions against non-Debtors are stayed. That assertion, however, was and remains untrue. Hudson Bay has a pending summary judgment motion against Mariano in Hudson Bay I that has been fully briefed, following completion of all fact discovery (which was extensive and costly for Hudson Bay), and Judge Daniels has already set oral argument on the motion for May 31, 2018—two days after the expiration of the Initial Stay Period. Any delay in judgment against Mariano will delay and likely impede Hudson Bay's ability to collect directly from Mariano. As

such, extending the stay with respect to Hudson Bay's action against Mariano could severely prejudice Hudson Bay, particularly in light of the Debtors' new disclosure in the Motion that disputes exist with Insurers as to the scope of coverage. If the D&O Policies do not cover Hudson Bay's claims against Mariano, then Mariano could be Hudson Bay's only source of recovery.[8]

25. Moreover, the Motion argues that the oral arguments before Judge Daniels should be stayed because going forward with oral argument on May 31, 2018 would result in the parties to Hudson Bay I incurring additional litigation costs. To the contrary, Judge Daniels' decision to schedule oral argument promptly after the expiration of the Initial Stay Period can be seen as an acknowledgment that the bulk of such costs have already been expended and that a swift resolution of Hudson Bay I will be beneficial to the parties thereto as well as to the district court.

26. Additionally, Hudson Bay has now participated in two unsuccessful mediations with respect to Hudson Bay I. Requiring Hudson Bay to continue attending mediation sessions and objecting to extensions of the stay, rather than going forward on a motion that is fully briefed following completed discovery and for which oral argument has been scheduled promptly following expiration of the Initial Stay Period, would prejudice Hudson Bay and require Hudson Bay to unnecessarily incur additional expense and needlessly exacerbate Hudson Bay's already significant losses.[9]

---

[8] For this reason, extension of the stay would be extremely prejudicial to Hudson Bay. Moreover, as discussed above, the Motion's acknowledgment that the D&O Policies may not cover the Prepetition Litigation calls into question whether any basis exists for the stay in the first place, as the Initial Stay Motion's sole justification for extension of the stay was an equitable distribution of the proceeds of the D&O Policies.

[9] Ironically, the Motion asserts that the Debtors should not be required to engage in a duplicative ADR process if the Mediation is unsuccessful, as "there is no reason to believe that a further ADR process with a new mediator or arbitrator will be more successful." Motion, ¶ 29. Similarly, there is no reason to believe that the current Mediation will be more successful than the Prepetition Mediations. *See* Initial Stay Objection, ¶ 2 ("The Motion also fails to mention that Hudson Bay, the Debtors and certain of the non-debtor defendants have already unsuccessfully

## CONCLUSION AND RESERVATION OF RIGHTS

27. For the reasons set forth above, the Motion should be denied. Additionally, Hudson Bay reserves the right to supplement or amend this Objection to further address or object to the Motion and any related matter and to respond to any response or objection either by further submissions to this Court, at oral argument, or by testimony to be presented at any hearing.

[*Remainder of page intentionally left blank.*]

---

attempted mediation, let alone offer an explanation as to why a second attempt at such mediation might suddenly prove successful.").

**WHEREFORE**, Hudson Bay respectfully request that the Court enter an order (i) denying the Motion; and (ii) granting such other and further relief as may be just and proper.

| | |
|---|---|
| Dated: May 8, 2018 | /s/ Thomas M. Horan |
| | Thomas M. Horan (No. 4641) |
| | **SHAW FISHMAN GLANTZ & TOWBIN LLC** |
| | 300 Delaware Avenue, Suite 1370 |
| | Wilmington, Delaware 19801 |
| | Telephone: (302) 480-9412 |
| | Facsimile: (312) 980-3888 |
| | Email: thoran@shawfishman.com |
| | |
| | - and - |
| | |
| | Matthew L. Warren (admitted *pro hac vice*) |
| | **LATHAM & WATKINS LLP** |
| | 330 North Wabash Avenue, Suite 2800 |
| | Chicago, Illinois 60611 |
| | Telephone: (312) 876-7700 |
| | Facsimile: (312) 993-9767 |
| | Email: matthew.warren@lw.com |
| | |
| | - and – |
| | |
| | Serrin A. Turner (admitted *pro hac vice*) |
| | Jeffrey T. Mispagel (admitted *pro hac vice*) |
| | **LATHAM & WATKINS LLP** |
| | 885 Third Avenue |
| | New York, New York 10022 |
| | Telephone: (212) 906-1200 |
| | Facsimile: (212) 751-4864 |
| | Email: serrin.turner@lw.com |
| | jeffrey.mispagel@lw.com |
| | |
| | *Counsel for Hudson Bay Master Fund Ltd* |