# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re* <br><br> **PATRIOT NATIONAL, INC., *et al.*,**[1] <br><br> **Debtors.** | Chapter 11 <br><br> Case No. 18-10189 (KG) <br><br> (Jointly Administered) <br><br> Hearing Date: May 15, 2018 at 2:00 p.m. <br> Objection Deadline: May 8, 2018 at 4:00 p.m.[2] |

## DEBTORS' REPLY IN FURTHER SUPPORT OF MOTION FOR AN ORDER (I) EXTENDING THE TEMPORARY STAY OF LITIGATION OF CLAIMS AGAINST THE DEBTORS' DIRECTORS AND OFFICERS AND (II) DETERMINING THAT THE DEBTORS HAVE SATISFIED ALTERNATIVE DISPUTE RESOLUTION REQUIREMENTS UNDER THE DEBTORS' DIRECTORS AND OFFICERS INSURANCE POLICIES

Patriot National, Inc. ("Patriot National") and certain of its affiliates, the debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), hereby submit this reply (the "Reply") in further support of the *Motion for an Order (I) Extending the Temporary Stay of Litigation of Claims Against the Debtors' Directors and Officers and (II) Determining That the Debtors Have Satisfied Alternative Dispute Resolution Requirements Under the Debtors' Directors and Officers Insurance Policies* (Docket No. 677) (the "Motion")[3]

---

1. The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtors' federal tax identification number, are: Patriot National, Inc. (1376), Patriot Services, LLC (1695); TriGen Insurance Solutions, Inc. (2501); Patriot Captive Management, LLC (2341); Patriot Underwriters, Inc. (0045); TriGen Hospitality Group, Inc. (6557); Patriot Risk Consultants, LLC (0844); Patriot Audit Services, LLC (5793); Patriot Claim Services, Inc. (9147); Patriot Risk Services, Inc. (7189); Corporate Claims Management, Inc. (6760); CWIBenefits, Inc. (0204); Forza Lien, LLC (7153); Contego Investigative Services, Inc. (0330); Contego Services Group, LLC (0012); Patriot Care Management, LLC (2808); Radar Post-Closing Holding Company, Inc. (2049); Patriot Technology Solutions, LLC (6855); and Decision UR, LLC (1826). The Debtors' headquarters are located at 401 East Las Olas Boulevard, Suite 1650, Fort Lauderdale, Florida 33301.

2. Extended with respect to Douglas J. Von Allmen until May 11, 2018.

3. Capitalized terms used not otherwise defined herein shall have the meanings ascribed to them in the Motion.

and in response to the objections to the Motion,[4] and by and through their undersigned counsel, respectfully represent as follows:

## PRELIMINARY STATEMENT

1. The Motion is overwhelmingly supported by the Debtors' stakeholders and parties in interest. The only parties that objected to the Debtors' request for an order extending the temporary stay by an additional 60 days are two disgruntled hedge fund litigants—Hudson Bay and CVI (the "Hedge Funds")—that admittedly object because they want to have their prepetition claims against Patriot and its current and former officers and directors adjudicated first, before the other numerous litigants subject to the Mediation Order. Notably, the remaining parties ordered to the Mediation pursuant to the Mediation Order—the Insurers, the Committee, the Class Action Plaintiffs, the Prepetition Agent, and the remaining Prepetition Litigants—did *not* object to extension of the temporary stay to permit the Mediation to proceed. It is this very type of "race to the courthouse" conduct that supported the need for the stay in the first place and that establishes the need for it to continue if the Mediation stands a chance at succeeding, which the Debtors and, apparently based on their overwhelming support for the Motion, all other participants in the Mediation, believe it does. The interests of these two Hedge Funds should not be advanced over—and to the detriment of—the Debtors' other stakeholders and the competing litigants.

2. The Insurers are the sole objectors to the Debtors' request for an order determining that the Mediation satisfies the ADR provisions in the Primary Policies. However,

---

4. Objections to the Motion were filed by: (i) Hudson Bay Master Fund Ltd. ("Hudson Bay") (Docket No. 712); (ii) National Union Fire Insurance Company of Pittsburgh, Pa., RSUI Indemnity Company, Argonaut Insurance Company, Sompo International f/k/a Endurance Reinsurance Corporation of America, and XL Specialty Insurance Company (collectively, the "Insurers") (Docket No. 716); and (iii) CVI Investments, Inc. ("CVI") (Docket No. 717). The response filed by Henry Wasik and Aric McIntire (together, the "Class Action Plaintiffs") (Docket No. 714), supports the Motion.

2

the Insurers mischaracterize the relief the Debtors are seeking. The Motion is not an attempt to ensnare an unwitting insurer into inadvertently waiving its ADR rights. Rather, the Motion merely seeks to confirm that subsequent sessions of the Mediation will satisfy the ADR requirements in the Primary Policies—obviating an entirely duplicative ADR session, which the Insurers appear to want because it will delay the day of reckoning when the Insurers must pay. Under the circumstances, this request is fair and equitable, as it avoids the need for an additional, duplicative ADR process, which will unnecessarily further deplete potential recoveries to the Debtors' stakeholders.

3. Accordingly, for the reasons stated in the Motion and herein, the Motion should be granted.[5]

## ARGUMENT

### I. EXTENSION OF THE TEMPORARY STAY IS APPROPRIATE.

4. The Hedge Funds primarily assert three arguments: (i) the Motion did not establish that "progress" had been made following the initial *confidential* mediation sessions; (ii) the existence of disputes between the Insurers and the Debtors as to the scope of coverage under the D&O Policies somehow negates the Debtors' purpose for seeking the mediation and stay; and (iii) the Hedge Funds would be prejudiced by a 60-day delay of prosecution of their claims. None of these arguments militates against the substantial benefits that would accrue to stakeholders if the stay is extended.

---

5. After filing the Motion, the Debtors learned that on April 25, 2018, Douglas J. Von Allmen commenced a case against Patriot's former officers, Steven Mariano and Thomas Shields, captioned *Douglas J. Von Allmen v. Steven M. Mariano and Thomas C. Shields*, Case Number CACE-18-009291 (Fla. Cir. Ct.) (the "Von Allmen Action"). Immediately after learning of the case, on May 2, 2018, the Debtors notified Mr. Von Allmen's counsel that the Debtors intended to add the Von Allmen Action to the proposed order annexed to the Motion. Annexed hereto as Exhibit A is a revised proposed order reflecting the addition of the Von Allmen Action to Exhibit 1 and other modifications to the proposed order. A blackline against the version of the proposed order filed with the Motion is annexed hereto as Exhibit B.

### A. The Progress of the Mediation is Confidential.

5. First, Hudson Bay argues that the stay should not be extended because Debtors "point to no significant progress toward a global resolution of all stakeholders' claims." (Hudson Bay Obj. ¶ 4). It would be inappropriate for the Debtors to provide more detail than what was disclosed in the Motion. The Mediation, governed by Local Rule 9019-5 pursuant to the Mediation Order, is a confidential proceeding and, as a result, the Debtors are expressly prohibited from:

> [R]ely[ing] on or introduc[ing] as evidence in any arbitral, judicial or other proceeding, evidence pertaining to any aspect of the mediation effort, including but not limited to: (A) views expressed or suggestions made by a party with respect to a possible settlement of the dispute; [and] (B) the fact that another party had or had not indicated willingness to accept a proposal for settlement made by the mediator.

*See* Local Rule 9019-5(d)(1). As stated in the Motion and without disclosing confidential information, the Debtors remain optimistic that the Mediation could be successful if given more time. Other participants in the Mediation share the Debtors' optimism. *See* Class Action Plaintiffs Response at ¶ 3 ("[T]he Class Action Plaintiffs believe that a possibility exists for an agreement to be reached among the parties if they are given additional time."). Indeed, of the numerous participants in the Mediation—including the Insurers, the Committee, the Prepetition Agent, and the other Prepetition Litigants—no participants in the Mediation other than the Hedge Funds objected to extension of the temporary stay to permit the Mediation to proceed. Thus, the Hedge Funds' self-serving, dim view of the prospects of a successful Mediation should be balanced against this overwhelming support from the other participants.

### B. Coverage Disputes Do Not Justify Terminating the Stay.

6. Hudson Bay argues that the existence of coverage disputes contradicts the Debtors' argument that continuation of the Mediation will preserve proceeds of the D&O

4

Policies.[6] This argument is baseless. Notwithstanding the existence of coverage disputes, the insureds under the D&O Policies continue to incur significant defense costs, which are reimbursed by the Insurers using proceeds of the D&O Policies. The Insurers are permitted to continue to advance these defense costs during the Chapter 11 Cases pursuant to the *Order Granting Motions for Relief from the Automatic Stay to Allow Insurers to Pay Past and Future Defense Costs Under D&O Policies* (Docket No. 479) (the "D&O Policies Stay Relief Order"), which was entered without any opposition from the Insurers. The Debtors have been forthright with the Court that their motivation in seeking the Mediation was, in part, to stop the depletion of proceeds of the D&O Policies through payment of these defense costs.[7] Indeed, substantial defense costs continue to be incurred and tendered to the Insurers notwithstanding the temporary stay.

7. Moreover, the fact that coverage is disputed does not mean that coverage is foreclosed. As asserted in the Motion, the Debtors continue to assert that the D&O Policies provide coverage for the prepetition claims (*see* Motion ¶ 12). To the extent the Hedge Funds are willing to concede that the D&O Policies do not provide coverage for their claims, the Debtors' offer made at the hearing on the Mediation Order stands: if the Hedge Funds are willing

---

6. Hudson Bay's inflammatory suggestion that the Debtors are seeking the temporary stay for the benefit of Mr. Mariano (*see* Hudson Bay Obj. ¶ 18) is completely unsupported by the facts of this case. In fact, the Debtors have made clear that they intend to pursue claims against Mr. Mariano. *See, e.g.,* Third Amended Disclosure Statement of Patriot National, Inc. and Its Affiliated Debtors (Docket No. 383) at 18-19 ("After sufficient investigation, the Debtors believe there are viable causes of action against Mr. Mariano, including with respect to Mr. Mariano's separation from the Debtors in July 2017. As part of a separation agreement executed in July 2017, the Debtors transferred $6,000,000 to Mr. Mariano and granted a broad release of claims in favor of Mr. Mariano without consideration. The Debtors intend to challenge the validity of the $6,000,000 transfer to Mr. Mariano and the release of claims contained in the separation agreement as well as the validity of Mr. Mariano June 2017 employment agreement (described above) as part of these Chapter 11 Cases.").

7. *See* Mediation Motion ¶ 2 ("The relief sought in this motion addresses the Debtors' concern that continued prosecution of the Claims would quickly deplete the available proceeds of the D&O Policies *through payment of defense costs*.") (emphasis added); ¶ 3 ("There is a significant risk that the remaining proceeds will be largely, if not completely, exhausted by defense costs if an early settlement of the Claims is not reached.").

to stipulate that they are not entitled to any proceeds of the D&O Policies, the Debtors will no longer seek to stay their claims. (*See* Feb. 28, 2018 Hr'g Tr., 137:6-10.)[8] However, to the extent the Hedge Funds seek to recover any amounts against the D&O Policies, their claims should remain stayed to permit the Mediation to proceed. The Hedge Funds cannot have it both ways.

### C. Any Prejudice to the Hedge Funds Will be Minimal.

8. Hudson Bay suggests that delaying oral argument on their summary judgment motions will "delay and likely impede Hudson Bay's ability to collect directly from Mariano" (Hudson Bay Obj. ¶ 24). This self-serving argument ignores the reality of civil litigation, as well as the interests of the other litigants participating in the Mediation and the Debtors' other stakeholders. As pointed out in the Debtors' reply to Hudson Bay's objection to entry of the Mediation Order, oral argument on a summary judgment is unlikely to provide the finality that Hudson Bay suggests. Even making the hefty assumption that Hudson Bay's summary judgment motion was successful, any decision by the District Court would likely be subject to appeals, and collection on any judgment would be delayed far beyond the additional 60-day stay requested by the Debtors. On the other hand, Mr. Mariano is a participant in the Mediation, and if a mediated settlement is reached, any payment to Hudson Bay would be paid without the attendant time and costs of appeals.

9. Moreover, prejudice to a party must be balanced against any countervailing prejudice to other parties. And as discussed above, the prejudice to other parties here would be significant if the Hedge Funds were permitted to be the only litigants exempted from the stay. Allowing the Hedge Funds to pursue a judgment first ahead of all of the other

---

8. In response to the Debtors' offer at the hearing, Hudson Bay's counsel stated "we're not going to stipulate that the D&O policy doesn't cover any judgment we win. I don't know if it does or does not." (*see id.* 142:25-143:1-2).

litigants subject to the stay would likely cause the Mediation to unravel and would thus defeat the entire purpose of the Motion and the existing stay. The Hedge Funds have failed to show why their interests should be advanced over all of these other competing interests. This is especially true given that the Hedge Funds' claims against the Debtors are subordinated by virtue of Section 510(b) of the Bankruptcy Code.

## II. THE MEDIATION SATISFIES THE ADR REQUIREMENTS UNDER THE PRIMARY POLICIES.

10. The Insurers do not object to extension of the temporary stay to permit the Mediation to continue, but solely object to the Debtors' request for an order determining that the Mediation satisfies the ADR requirements in the Primary Policies. The Insurers rely on three arguments: (i) the Debtors no longer have an interest in the Policies as an Insured, and therefore cannot invoke the ADR clause, (ii) the Court cannot issue an advisory opinion, and (iii) the Mediation does not comply with the requirements of the ADR clause. Each of these arguments fails.

### A. The Debtors Properly Invoked the ADR Clause.

11. The Insurers' argument that "[p]rior to the Mediation, no one had sought to invoke the ADR clause of the [Primary Policies]," (Insurer Obj. ¶¶ 4, 14), misses the mark for four reasons.

12. First, prior to the mediation sessions in April 2018, the relevant parties were aware of the coverage dispute, and knew (or at the very least should have known) that such disputes would be one of the subjects of the Mediation.

13. Second, even if the Insurers did not know at the commencement of the April 18 mediation session that the coverage disputes would be a subject of the Mediation, the

7

Debtors expressly invoked the ADR clause by a letter to the Insurers dated April 18, 2018 (the day of the first mediation session).

14. Third, even if that April 18 letter was somehow insufficient to invoke the ADR clause, the Motion undoubtedly made clear that the Debtors are invoking the ADR clause. The Insurers concede that the Mediation is ongoing. (Insurer Obj. ¶ 1). Accordingly, now that there can be no doubt that the Debtors are invoking the ADR clause, it should be determined that future sessions of the Mediation satisfy the ADR clause of the Primary Policies. Notably, the Insurers would not be prejudiced by such a result because the ADR clause provides that the relevant time period to initiate coverage litigation runs from the *termination* of the applicable ADR process.

15. Fourth, the Insurers' argument that the Debtors have no interest under the D&O Policies is belied by the plain language of the Primary Policies. Pursuant to the ADR clause, only the "Named Entity" (defined as Patriot) can elect the type of ADR and such "Named Entity" (i.e., Patriot) "shall act on behalf of each and every Insured under this [ADR Clause]." Thus, it is unclear how the ADR requirements under the Primary Policies could *ever* be satisfied if Patriot is unable to invoke the ADR clause. As the Insurers are disputing coverage of certain of the prepetition claims, the Debtors merely seek to exhaust any procedural hurdles in the Primary Policies so that coverage disputes can be litigated, to the extent necessary, efficiently and economically to preserve value for the Debtors' stakeholders. The Insurers have failed to show why any coverage disputes cannot be handled at the Mediation or why the Debtors or their stakeholders should be subjected to a burdensome and costly duplicative ADR process.

## B. The Court Has Jurisdiction to Enter the Requested Relief.

16. The Insurers' assertion that this Court does not have jurisdiction to issue the proposed order with respect to the ADR clause mischaracterizes the relief requested by the

8
DOCS_DE:219415.1 69353/002

Debtors. The Debtors are *not* seeking adjudication of the underlying coverage dispute in the Motion.[9] The Debtors are only asking the Court to confirm that the Court-ordered Mediation satisfies the procedural requirements set forth in the ADR clause. The underlying merits of the disputes and differences arising under or in connection with the Primary Policies are not the subject of the Motion.

17. The Insurers do not dispute that the Primary Policies themselves are property of the Debtors' estates. Indeed, the Court has already entered relief in these cases relating to the Primary Policies when it entered the D&O Policies Stay Relief Order and the Mediation Order.[10] Accordingly, the Court has jurisdiction to enter an order determining that the Mediation conducted pursuant to the Mediation Order satisfies the requirements set forth in the Primary Policies.

### C. The Mediation Should Be Deemed to Satisfy the ADR Clause.

18. As stated in the Motion, the Insurers have waived strict compliance with the ADR clause by participating in the Mediation without objection. But even if participation in the initial sessions of the Mediation did not satisfy the ADR clause, any future mediation sessions in furtherance of the ongoing Mediation should satisfy the ADR clause as it is now abundantly clear that demand for mediation by the Named Entity (i.e., Patriot) has been made. The subject of the demand for mediation are those coverage disputes raised in the Debtors'

---

9. For that reason, the cases cited by the Insurers are inapposite. *See In re Stone & Webster, Inc.*, 367 B.R. 523, 524 (Bankr. D. Del. 2007) (adversary proceeding seeking a declaratory judgment stating, among other things, that the plaintiff's claims were covered by insurance policies was a non-core proceeding); *XL Speciality Ins. Co. v. WMI Liquidating Trust*, 93 A.3d 1208, 1220 (Del. 2013) (holding that "dispute about whether coverage exists" was not ripe for adjudication); *Fernstrom v. Trunzo*, No. 2017-0518-PWG, 2017 Del. Ch. LEXIS 832, at *4 (Ch. Dec. 5, 2017) (dismissing complaint seeking damages, declaratory judgment, and injunctive relief as unripe for adjudication where plaintiff did not follow ADR process in underlying agreement).

10. Pursuant to the Mediation Order, "[t]he Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation or enforcement of this Order." (Mediation Order ¶ 7).

prepetition letter to the Insurers dated September 28, 2017. The Debtors are willing to negotiate procedural rules, including clear guidance for determining when the mediation is terminated, in advance of the next Mediation session. The prospective relief requested by the Debtors should assuage any policy concerns raised by the Insurers that the Debtors' requested relief would "chill insurer participation in mediation of underlying claims," (Insurers Obj. ¶ 31).

## CONCLUSION

For the reasons set forth above and in the Motion, the Debtors request that this Court approve the Motion, and grant such other and further relief as is necessary and proper.

Dated: May 10, 2018
Wilmington, Delaware

PACHULSKI STANG ZIEHL & JONES LLP

/s/ *James E. O'Neill*
Laura Davis Jones (DE Bar No. 2436)
James E. O'Neill (DE Bar No. 4042)
Peter J. Keane (DE Bar No. 5503)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
Email: ljones@pszjlaw.com
  joneill@pszjlaw.com
  pkeane@pszjlaw.com

-and-

Kathryn A. Coleman
Christopher Gartman
Erin E. Diers
HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, NY 10004-1482
Telephone: (212) 837-6000
Facsimile: (212) 422-4726
Email: katie.coleman@hugheshubbard.com
  chris.gartman@hugheshubbard.com
  erin.diers@hugheshubbard.com

*Counsel for the Debtors*